UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

SAILORMEN, INC.,                                Case No. 26-10451-RAM

           Debtor.                              Chapter 11

_____/

**OBJECTION OF FLORIDA POWER & LIGHT COMPANY, ORLANDO UTILITIES COMMISSION, TAMPA ELECTRIC COMPANY AND PEOPLES GAS SYSTEM, INC. TO THE MOTION TO DETERMINE ADEQUATE ASSURANCE OF PAYMENT FOR UTILITY SERVICES AND PRECLUDE UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE**

Florida Power & Light Company ("FPL"), Orlando Utilities Commission ("OUC"), Tampa Electric Company ("TEC") and Peoples Gas System, Inc. ("Peoples Gas") (collectively, the "Utilities"), by counsel, hereby object to the *Motion To Determine Adequate Assurance of Payment For Utility Services and Preclude Utilities From Altering, Refusing, or Discontinuing Service* (the "Utility Motion") (Docket No. 83), and set forth the following:

**Introduction**

Section 366(c)(2), as amended, requires a Chapter 11 debtor to provide utilities with adequate assurance of payment that is satisfactory to the utility within 30 days of the Petition Date. If a debtor believes the amount of the utility's request pursuant to Section 366(c)(2) needs to be modified, the debtor can file a motion pursuant to Section 366(c)(3) seeking to modify the amount of the utility's request. Despite the foregoing, in complete contravention of the express provisions of Section 366(c) of the Bankruptcy Code, the Debtor filed the Utility Motion that sought, without evidence or supporting documentation, to establish that the Debtor should not have to provide any adequate assurance of payment whatsoever to its utility

providers.  Instead, the Debtor wants the Court to approve so-called "Adequate Assurance Procedures," not authorized by the express provisions of Section 366, as the form of adequate assurance of payment for the Debtor's utility providers.  Simply put, the Debtor's proposal to not provide any adequate assurance of payment whatsoever to its utilities, with proposed procedures as adequate assurance of payment, are contrary to the express provisions of Section 366(c) and should be rejected by this Court.

The Debtor, as a customer of the Utilities, is aware that: (1) the Utilities bill the Debtor on a monthly basis in arrears and provide the Debtor with generous trade terms; and (2) are allowed to obtain cash deposits to cover their billing exposure.  With the foregoing knowledge, the Debtor should be required, at a minimum, to set forth a factual and evidentiary basis why this Court should consider modifying the amounts of the cash deposits that the Utilities are entitled to request.

The Utilities are seeking the following two-month cash deposits from the Debtor, which are amounts that they are authorized to obtain pursuant to applicable state law:  (a) FPL - $338,184; (b) OUC - $51,500; (c) TEC - $58,659; and (d) Peoples Gas - $24,735.  Based on all the foregoing, this Court should deny the Utility Motion because the amounts of the post-petition deposit requests of the Utilities are reasonable under the circumstances and should not be modified.

## Facts

### Procedural Facts

1.      On January 15 ,2026 (the "Petition Date"), the Debtor commenced its case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") that is now

pending with this Court. The Debtor continues to operate its businesses and manage its properties as a debtor in possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

## The Utility Motion

2.      On January 26, 2026, the Debtor filed the Utility Motion.

3.      The *Renotice of Hearing* (Docket No. 96) reflects that a non-evidentiary hearing on the Utility Motion will take place on February 17, 2026 at 11:00 a.m.

4.      Pursuant to Local Rule 9013-1(L), responses to the Utility Motion must be filed by February 13, 2026.

5.      In the Utility Motion, the Debtor seeks to avoid the applicable legal standards under Sections 366(c)(2) and (3) by proposing to provide no adequate assurance whatsoever to its utilities. Instead, the Debtor seeks Court approval of so-called procedures not authorized by the express provisions of Section 366, that merely addresses the Debtor's non-payment of post-petition utility charges. Utility Motion at ¶ 12. The foregoing proposal is unacceptable to the Utilities and should not be considered relevant by this Court because Sections 366(c)(2) and (3) do not allow the Debtor to provide no adequate assurance of payment to its utilities. Under Sections 366(c)(2) and (3), this Court and the Debtor are limited to modifying, if at all, the amount of the security sought by the Utilities under Section 366(c)(2).

6.      The Utility Motion does not address why this Court should consider modifying, if at all, the amounts of the Utilities' adequate assurance requests pursuant to Section 366(c)(2). Rather, without providing any specifics, the Utility Motion merely states that supposed "procedures," in addition to the Debtor's anticipated post-petition cash flow, somehow constitutes adequate assurance of payment pursuant to Section 366 of the Bankruptcy Code. Utility Motion at ¶ 14.

**The Debtor's Cash Collateral Motion**

7. On the Petition Date, the Debtor filed the *Debtor's Emergency Motion For Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection To the Lenders, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* (the "Cash Collateral Motion") (Docket No. 4).

8. Through the Cash Collateral Motion, the Debtor's sought Court approval for a carve-out for the payment of fees of the Debtor's professionals incurred prior to a Carve-Out Trigger Notice, plus an additional $200,000 incurred following delivery of a Carve-Out Trigger Notice (the "Carve-Out"). Cash Collateral Motion at pages 10-13.

9. On January 28, 2026, the Court entered the *Amended Interim Agreed Order (I) Authorizing the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* (the "Amended Interim Cash Collateral Order") (Docket No. 9).

10. The Amended Interim Cash Collateral Order approved the Carve-Out. Interim Cash Collateral Order at pages 21-23.

11. Attached as Exhibit "1" to the Amended Interim Cash Collateral Order is a 5-week budget through the week ending February 22, 2026 (the "Budget"). Although the Budget includes a line-item for "Utilities," it is not apparent from the Budget whether sufficient funds have in fact been budgeted for the timely (and full) payment of the Debtor's post-petition utility charges. The Budget also includes a line-item for "Utility Deposits" in the amount of $748,012. As such, the monies budgeted for "Utility Deposits" can be used to pay the Utilities' deposits requested herein as adequate assurance of payment for the Utilities pursuant to Section 366(c) of the Bankruptcy Code.

**The Debtor's Critical Vendor Motion**

12.     On January 20, 2026, the Debtor filed the *Emergency Motion of the Debtor and Debtor-In-Possession For An Order (I) Authorizing the Debtor To Pay Prepetition Claims of Certain Critical Vendors; and (II) Granting Related Relief* (the "Critical Vendor Motion") (Docket No. 33).  Through the Critical Vendor Motion, the Debtor sought authority to pay "Critical Vendor Claims" of up to $3,290.110.62.  Critical Vendor Motion at ¶ 14.

13.     On January 28, 2026, the Court entered the *Final Order Authorizing Debtor and Debtor-In-Possession (I) To Pay Prepetition Claims of Certain Critical Vendors, and (II) Granting Related Relief* (the "Critical Vendor Order") (Docket No. 998).  The Critical Vendor Order authorized the Debtor to pay supposed critical vendor claims set forth in Schedule "1" thereto totaling $3,290,110.62.  Critical Vendor Order at ¶ 2.

14.     The Critical Vendor Motion and the Critical Vendor Order do not reflect that the Debtor sought Court authority to pay prepetition utility charges.

**Facts Regarding the Utilities**

15.     Each of the Utilities provided the Debtor with prepetition utility goods and/or services, and has continued to provide the Debtor with utility goods and/or services since the Petition Date.

16.     Under the Utilities' billing cycles, the Debtor receives approximately one month of utility goods and/or services before the Utility issues a bill for such charges.  Once a bill is issued, the Debtor has approximately 20 to 30 days to pay the applicable bill.  If the Debtor fails to timely pay the bill, a past due notice is issued and, in most instances, a late fee may be subsequently imposed on the account.  If the Debtor fail to pay the bill after the issuance of the past due notice, the Utilities issue a notice that informs the Debtor that it must

cure the arrearage within a certain period of time or its service will be disconnected. Accordingly, under the Utilities' billing cycles, the Debtor could receive at least two months of unpaid charges before the utility could cease the supply of goods and/or services for a post-petition payment default.

17. To avoid the need to bring witnesses and have lengthy testimony regarding the Utilities regulated billing cycles, the Utilities request that this Court, pursuant to Rule 201 of the Federal Rules of Evidence, take judicial notice of the Utilities' billing cycles. Pursuant to the foregoing request and based on the voluminous size of the applicable documents, the Utilities' website links to their tariffs and/or state laws, regulations and/or ordinances are as follows:

FPL: http://www.fpl.com/customer/rates_and_bill/rules_tariffs.shtml

TEC: http://www.tampaelectric.com/company/ourpowersystem/tariff/

Peoples Gas: https://www.peoplesgas.com/company/ournaturalgassystem/tariff/

OUC: The OUC Electric Service Policies, which sets forth the OUC billing cycle, will be provided upon request.

18. Subject to a reservation of the Utilities' right to supplement their post-petition deposit requests if additional accounts belonging to the Debtor are subsequently identified, the Utilities' estimated prepetition debt and post-petition deposit requests are as follows:

| **Utility** | **No. of Accts.** | **Est. Prepetition Debt** | **Deposit Request** |
| --- | --- | --- | --- |
| FPL | 60 | $406,173.51 | $338,184 (2-month) |
| OUC | 1 | $29,169.42 | $51,500 (2-month) |
| TEC | 11 | $67,057.76 | $58,659 (2-month) |
| Peoples Gas | 19 | $11,812.10 | $24,735 (2-month) |

19. FPL held prepetition deposits totaling $265,356 that it recouped against the prepetition debt owing to FPL from the Debtor pursuant to Section 366(c)(4) of the Bankruptcy Code. No prepetition deposit amount remains after recoupment.

20. TEC holds a surety bond in the amount of $49,000 that it will make a claim upon for payment of the prepetition debt that the Debtor owes to TEC.

21. Peoples Gas holds prepetition deposits totaling $15,283 that it will recoup against the prepetition debt owing to Peoples Gas from the Debtor pursuant to Section 366(c)(4) of the Bankruptcy Code. Any prepetition deposit amount remaining after recoupment can be applied to the Peoples Gas post-petition deposit request.

22. OUC held a prepetition deposit in the amount of $40,258.81 that it recouped against the prepetition debt owing to OUC from the Debtor pursuant to Section 366(c)(4) of the Bankruptcy Code. Any prepetition deposit amount remaining after recoupment can be applied to the OUC post-petition deposit request.

### Discussion

**A.    THE UTILITY MOTION SHOULD BE DENIED AS TO THE UTILITIES.**

Sections 366(c)(2) and (3) of the Bankruptcy Code provide:

> (2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility;

> (3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

As set forth by the United States Supreme Court, "[i]t is well-established that 'when the statute's language is plain, the sole function of the courts--at least where the disposition

required by the text is not absurd--is to enforce it according to its terms.'" *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) (*quoting Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.,* 530 U.S. 1, 6, 120 S. Ct., 1942, 147 L. Ed. 2d 1 (2000)). *Rogers v. Laurain (In re Laurain)*, 113 F.3d 595, 597 (6th Cir. 1997) ("Statutes . . . must be read in a 'straightforward' and 'commonsense' manner."). A plain reading of Section 366(c)(2) makes clear that a debtor is required to provide adequate assurance of payment satisfactory to its utilities on or within thirty (30) days of the filing of the petition. If a debtor believes the **amount** of the utility's request needs to be modified, then the debtor can file a motion under Section 366(c)(3) requesting the court to modify the **amount** of the utility's request under Section 366(c)(2).

In this case, the Debtor filed the Utility Motion to improperly shift the focus of its obligations under Section 366(c)(3) from modifying the amount of the adequate assurance of payment requested under Section 366(c)(2) to setting the form of the adequate assurance of payment acceptable to the Debtor, which is to provide its utility companies with no adequate assurance of payment. Accordingly, this Court should not reward the Debtor for its failure to comply with the requirements of Section 366(c) and deny the Utility Motion as to the Utilities.

Moreover, in the Utility Motion, the Debtor fails to address why this Court should modify the amounts of the Utilities' requests for adequate assurance of payment. Under Section 366(c)(3), the Debtor has the burden of proof as to whether the amounts of the Utilities' adequate assurance of payment requests should be modified. *See In re Stagecoach Enterprises, Inc.*, 1 B.R. 732, 734 (Bankr. M.D. Fla. 1979) (holding that the debtor, as the petitioning party at a Section 366 hearing, bears the burden of proof).

However, the Debtor do not provide the Court with any evidence or factually supported documentation to explain why the amounts of the Utilities' adequate assurance requests should be modified. Accordingly, the Court should deny the relief requested by Debtor in the Utility Motion and require the Debtor to comply with the requirements of Section 366(c) with respect to the Utilities.

**B.     THE COURT SHOULD ORDER THE DEBTOR TO PROVIDE THE ADEQUATE ASSURANCE OF PAYMENT REQUESTED BY THE UTILITIES PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE.**

Section 366(c) was amended to overturn decisions such as *Virginia Electric and Power Company v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997), that held that an administrative expense, without more, could constitute adequate assurance of payment in certain cases. Section 366(c)(1)(A) specifically defines the forms that assurance of payment may take as follows:

> (i) a cash deposit;
> (ii) a letter of credit;
> (iii) a certificate of deposit;
> (iv) a surety bond;
> (v) a prepayment of utility consumption; or
> (vi) another form of security that is mutually agreed upon between the utility and the debtor or the trustee.

Section 366 of the Bankruptcy Code was enacted to balance a debtor's need for utility services from a provider that holds a monopoly on such services, with the need of the utility to ensure for itself and its rate payers that it receives payment for providing these essential services. *See In re Hanratty*, 907 F.2d 1418, 1424 (3d Cir. 1990). The deposit or other security "should bear a reasonable relationship to expected or anticipated utility consumption by a debtor." *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883 (Bankr. E.D.N.Y.

1986).  In making such a determination, it is appropriate for the Court to consider "the length of time necessary for the utility to effect termination once one billing cycle is missed." *In re Begley*, 760 F.2d 46, 49 (3d Cir. 1985).

The Utilities bill the Debtor on a monthly basis for the charges already incurred by the Debtor in the prior month.  The Utilities then provide the Debtor with 20 to 30 days to pay the bill, the timing of which is set forth in applicable state laws, tariffs or regulations.  Based on the foregoing state-mandated billing cycles, the minimum period of time the Debtor could receive service from the Utilities before termination of service for non-payment of post-petition bills is approximately two (2) months.  Moreover, even if the Debtor timely pays its post-petition utility bills, the Utilities still have potential exposure of approximately 60 days or more based on their billing cycles.  Furthermore, the forms and amounts of the Utilities' adequate assurance requests are the forms and amounts that the applicable public service commission, which is a neutral third-party entity, permit the Utilities to request from their customers.  The Utilities are not taking the position that the cash deposits that they are entitled to obtain under applicable state law are binding on this Court, but instead are introducing those forms and amounts as evidence of the forms and amounts that the applicable regulatory entity permit the Utilities to request from their customers.

In contrast, the Debtor failed to address in the Utility Motion why this Court should modify, if at all, the amounts of the Utilities' adequate assurance of payment requests, which is the Debtor's statutory burden.  Instead, the Debtor merely asked this Court to approve its proposed form of adequate assurance, which is to provide the Debtor's utility providers with no adequate assurance of payment whatsoever.  The Debtor did not provide an objective, much less an evidentiary, basis for its proposed adequate assurance in the form of supposed

10

"procedures." Moreover, in contrast to the improper treatment proposed to the Debtor's utilities, the Debtor has made certain that supposed "critical vendors" and post-petition professionals are favored creditors over the Utilities by ensuring (i) the payment of critical vendors claims of up to $3,290.110.62, and that (ii) the post-petition bills/expenses of Debtor's counsel are paid, even in the event of a post-petition default on the use of cash collateral, by obtaining a professionals' carve-out of $200,000 for the payment of their fees/expenses after a default and a guarantee of payment for fees incurred up to a default. Despite the fact that the Utilities continue to provide the Debtor with admittedly essential post-petition utility goods/services on the same generous terms that were provided prepetition, with the possibility of non-payment, the Debtor is seeking to deprive the Utilities of any adequate assurance of payment for which they are entitled to be paid for continuing to provide the Debtor with post-petition utility goods/services. Against this factual background, it is reasonable for the Utilities to seek and be awarded the full security they have requested herein.

WHEREFORE, the Utilities respectfully request that this Court enter an order:

1. Denying the Utility Motion as to the Utilities;

2. Awarding the Utilities post-petition adequate assurance of payment pursuant to Section 366 in the forms and amounts satisfactory to the Utilities, which are forms and amounts requested herein; and

3. Providing such other and further relief as the Court deems just and appropriate.

Dated:  February __, 2026

By:  /s/ Brian K. McMahon
BRIAN K. McMAHON
Brian K. McMahon, P.A.
1401 Forum Way, Suite 730
West Palm Beach, Florida 33401
Telephone:  (561) 478-2500
Facsimile:  (561) 478-3111
Email:  briankmcmahon@gmail.com
Florida Bar No. 853704

and

Russell R. Johnson III
John M. Craig
Law Firm of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia  23103
Telephone: (804) 749-8861
E-mail:  russell@russelljohnsonlawfirm.com
john@russelljohnsonlawfirm.com

*Counsel For Florida Power & Light Company, Orlando Utilities Commission, Tampa Electric Company and Peoples Gas System, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 6th day of February, 2026, a true and correct copy of the foregoing *Objection* was filed via electronic filing using the CM/ECF system with the Clerk of Court which sent email notification of such filing to all CM/ECF participants in the above-referenced bankruptcy case.

By:  /s/ Brian K. McMahon
BRIAN K. McMAHON

12