UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

SAILORMEN, INC.,                                          Case No. 26-10451-RAM

      Debtor.                                          Chapter 11

_____/

**OBJECTION AND RESERVATION OF RIGHTS OF POPEYES
LOUISIANA KITCHEN, INC. TO THE DEBTOR'S (I) PROPOSED FINAL CASH
COLLATERAL ORDER [ECF NO. 251], AND (II) PROPOSED FINAL CASH
COLLATERAL BUDGET [ECF NO. 260-3]**

Popeyes Louisiana Kitchen, Inc. ("Popeyes"), by and through its undersigned counsel, files this Objection and Reservation of Rights (this "Objection") to the Debtor's (i) proposed final cash collateral order [ECF No. 251], and (ii) proposed final cash collateral budget [ECF No. 260-3], and respectfully states as follows:

**PRELIMINARY STATEMENT**

On February 26, 2026, the Debtor filed a Notice of Filing (the "Notice of Filing") of its "*Initial Proposed Final Cash Collateral Order*" [ECF No. 251], including a redline showing changes proposed to the Second Interim Order [ECF No. 244] entered by the Court on February 24, 2026 (the "Proposed Final Order").   The Proposed Final Order included certain, but not all, of the revisions proposed by Popeyes to the Debtor in order to address the objections of Popeyes that were set forth in the *Objection and Reservation of Rights to the Debtor's (I) Proposed Final Cash Collateral Order, and (II) Proposed Cash Collateral Budget* [ECF No. 183] filed by Popeyes on February 17, 2026 (the "Popeyes' Initial Objection").

In the Notice of Filing, the Debtor advised the Court and all parties that the Debtor was still engaged in discussions with the Lenders, Popeyes and the Committee in connection with the

terms and conditions of the Proposed Final Order, and therefore it was subject to further revisions prior to the hearing set for March 3, 2026. Since the filing of the Proposed Final Order, Popeyes has been directly involved in on-going discussions with the Debtor (and indirectly with the Lenders) concerning further revisions to the Proposed Final Order to address the concerns raised by Popeyes. As of the filing of this Objection, the extent of any further revisions to the Proposed Final Order is uncertain and therefore Popeyes objects to the Proposed Final Order unless and until all of Popeyes' objections (including in Popeyes' Initial Objection) have been addressed to the satisfaction of Popeyes.

Thereafter, on February 27, 2026, the Debtor filed its Exhibit Register [ECF No. 260] in which it included a proposed "Cash Flow and Budget" as Exhibit 3 thereto [ECF No. 260-3] (the "Proposed Final Budget"). Among other things, the Proposed Final Budget provides that it is "subject to potential amendment if DIP financing is agreed to by the Debtor with" Popeyes and the Lender. In the Proposed Final Budget, the Debtor includes a line item for the payment of certain post-petition charges due to Popeyes under the Franchise Agreements commencing the week of March 8th. However, the amounts set forth in the Proposed Final Budget for Popeyes are only a fraction (approximately 25%) of the amounts that are actually accruing to Popeyes on a weekly basis.[1] To be clear, Popeyes did not and does not agree to any such partial payment and continues to require that all of its post-petition obligations be paid through the Proposed Final Budget, including in excess of $2.0 million that has already accrued and is unpaid since the Petition Date.

As a result of the above and assuming the issues and objections raised by Popeyes are not

---

[1] The Proposed Final Budget lacks transparency because it does not reflect the extent to which the Debtor is operating an administratively insolvent estate because the Debtor does not show the amount of accruing post-petition charges to Popeyes, which Popeyes estimates will be approximately $9.0 million through the end of the budget term.

resolved in a manner satisfactory to Popeyes, then Popeyes intends to proceed with the hearing on March 3, 2026 on its *Expedited Motion for Entry of an Order (i) Compelling Payment of Post Petition Obligations under Franchise Agreement, or Alternatively, (ii) For Relief from the Automatic Stay to Exercise Rights and Remedies* [ECF No, 184] (the "Popeyes' Motion to Compel").  The Debtor did not file an objection to the Popeyes' Motion to Compel by the deadline therefor.  However, the Committee filed its Reservation of Rights [ECF No. 256] (the "Committee Reservation"), which does not raise any legal or factual basis to deny the relief sought by Popeyes. Rather, the Committee seems to suggest that Popeyes should simply continue to provide involuntary financing to the Debtor's bankruptcy estate without any protections.  The Committee's position is untenable.

## RELEVANT BACKGROUND

1.      On January 15, 2026 (the "Petition Date"), Sailormen, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor operates its business and manages its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      Popeyes is the Debtor's franchisor.  As of the Petition Date, the Debtor operated 136 POPEYES® restaurants (the "Restaurants") in the states of Florida and Georgia under separate franchise agreements (the "Franchise Agreements") with Popeyes.  Subsequent to the Petition Date, the Debtor closed 17 of its Restaurants.

3.      On January 15, 2026, the Debtor filed its *Emergency Motion for Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to the Lenders, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [ECF Nos. 4 and

5] (the "<u>Cash Collateral Motion</u>").[2]

4.      On January 20, 2026, Popeyes filed its *Limited Objection and Reservation of Rights to the Cash Collateral Motion* [ECF No. 32].

5.      Prior to the hearing on the Cash Collateral Motion, counsel to the Debtor, Popeyes and the Administrative Agent collaborated and reached agreement on the terms of a proposed interim order granting the Cash Collateral Motion on an interim basis.

6.      On January 28, 2026, the Court entered an *Amended Interim Agreed Order* [ECF No. 99] granting the Cash Collateral Motion on an interim basis pursuant to the terms thereof, including the interim budget attached thereto (the "<u>Agreed Interim Order</u>"), and setting a final hearing for February 23, 2026 (the "<u>Final Hearing</u>").

7.      The Court scheduled a hearing on final approval of the Cash Collateral Motion for February 23, 2026 at 10:00 a.m., but treated such hearing as a second interim hearing, and on February 24, 2026, the Court entered the *Second Interim Agreed Order (I) Authorizing the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Modifying Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [Docket No. 244] ("<u>Second Interim Order</u>").  The Second Interim Order set a final hearing for March 3, 2026.

8.      For the reasons set forth below, Popeyes objects to the terms of the Proposed Final Order and the Proposed Final Budget and requests that the Court condition the Debtor's continued use of Cash Collateral on making the revisions to the Proposed Final Order and the Proposed Final Budget set forth herein so as to address and resolve Popeyes' objections.

## **POPEYES' OBJECTIONS**

9.      As set forth above, the final terms and conditions of the Proposed Final Order are

---

[2] All capitalized terms used herein and not otherwise defined shall have the meaning set forth in the Cash Collateral Motion.

the subject of on-going discussions between the parties, including discussions that have already resulted in changes made to the form of the Proposed Final Order filed with the Court on February 26, 2026. Because the form of the Proposed Final Order is in flux and subject to further discussion, Popeyes outlines below its general concerns with and objections that need to be resolved as to any final form of Proposed Final Order and Proposed Final Budget in order for Popeyes to consent thereto.

10.    Popeyes objects to the Proposed Final Budget because it fails to provide for the payment to Popeyes of substantial post-petition royalty, advertising and other charges that have already accrued and that will continue to accrue throughout the budget period. As Popeyes has advised the Court and all parties-in-interest, Popeyes offered to provide debtor-in-possession financing to the Debtor pursuant to a certain Debtor-in-Possession Loan Commitment Term Sheet (the "DIP Loan Term Sheet") whereby Popeyes would agree to defer the payment of royalty and advertising charges under its Franchise Agreements, which approximate $1.6 million per month or approximately $9.2 million during the period covered by the Proposed Budget. The Proposed Final Order does not include any of the protections that Popeyes (or any lender) would require to make such financial accommodations to the Debtor. In addition, the Debtor has not sought this Court's approval of any such financing.

11.    Because the Proposed Final Budget does not provide for the payment to Popeyes of all on-going post-petition royalties, advertising and other charges due to Popeyes under the Franchise Agreements, Popeyes objects to certain findings of fact that the Debtor has requested in the Proposed Final Order. For example, the Debtor seeks a finding that the Debtor has a need to fund and "pay their operating expenses," yet one of the most important of those operating expenses is not included in or otherwise appropriately dealt with by the Proposed Final Order or the

Proposed Budget.  *See* Proposed Final Order at Recital ¶ L.  The Debtor also asks the Court to find

that the Debtor's proposed use of Cash Collateral is "fair and reasonable" and the terms "reflect

the Debtor's exercise of prudent business judgment consistent with their fiduciary duties…."  *Id.*

The Debtor also seeks a finding from the Court that the continued use of Cash Collateral as set

forth in the Proposed Final Order is "in the best interest of the Debtor and its estate, its creditors

and other parties in interest."  *Id.*   It is incomprehensible that the Debtor would request (or that

the Court could make) the above findings in the face of the Debtor not dealing with or proposing

to pay one of the most important (and substantial) ordinary and necessary administrative

obligations of the Debtor's estate, namely the obligations to Popeyes.

12.      Second, the Debtor proposes to grant the Administrative Agent a waiver of (i) the

Debtor's surcharge rights under section 506(c) of the Bankruptcy Code, and (ii) the "equities of

the case" exception under section 552(b) of the Bankruptcy Code.  *Id.* at Recital ¶ K and Ordered

¶ 5.  While Popeyes does not have an issue with secured lenders receiving a section 506(c)

surcharge waiver or a waiver of the "equities of the case exception," Popeyes does not believe that

granting such waivers is appropriate in light of the Debtor's admitted accumulation and non-

payment of millions of dollars of post-petition ordinary and necessary obligations of the Debtor's

estate.

13.      The focus of section 506(c) is to prevent secured creditors from receiving a windfall

while requiring the estate and unsecured creditors to bear the cost. *In re NETtel Corp.*, 2017 Bankr.

LEXIS 3363, at *10 (Bankr. D.D.C. Sep. 29, 2017)("the purpose of § 506(c)… 'is to prevent a

windfall to a secured creditor at the expense of the estate.'"); *Southwest Sec., FSB v. Segner (In re*

*Domistyle, Inc.)*, 811 F.3d 691, 696 (5th Cir. 2015) ("a secured creditor should not reap the benefit

of actions taken to preserve the secured creditor's collateral without shouldering the cost" (citation

omitted)); *Kivitz v. CIT Group/Sales Fin.*, Inc., 272 B.R. 332, 334 (D. Md. 2000) (stating that "[t]he reason for [section 506(c)] is that unsecured creditors should not be required to bear the cost of protecting property that is not theirs"). Any recovery under 506(c) is for the benefit of the estate. *Ungaretti & Harris, LLP v. Steinberg (In re Res. Tech. Corp.)*, 356 B.R. 435, 446 (Bankr. N.D. Ill. 2006) (506(c) recovery is for the benefit of the estate); *In re Dinsmore Tire Ctr., Inc.*, 81 B.R. 136, 138 (Bankr. S.D. Fla. 1987) (same); *see In re JKJ Chevrolet, Inc.*, 26 F.3d 481, 484 (4th Cir. 1994) ("When a trustee recovers post-petition costs and expenses from a secured creditor pursuant to § 506(c), the recovered funds become available as an unencumbered asset for distribution to the unsecured creditors."). Because section 506(c) protects unsecured creditors from being forced to carry the cost of preserving collateral for a secured creditor and any recovery under section 506(c) is for the benefit of the estate, permitting a surcharge waiver in the context of an administratively insolvent estate is particularly harmful as the unsecured creditors are already facing a significant reduction in payment of any amounts that they are owed and doing so goes against the purpose underlying section 506(c).

14. The Debtor has not offered any legitimate reason that would support such a waiver without addressing the existing and on-going unpaid post-petition obligations to Popeyes. *In re Sports Authority Holdings, Inc. et al.*, Case No. 16-10527(MFW), Hr'g Tr. (Docket No. 1463) at 194-195 (Bankr. D. Del. Apr. 26, 2016) (In "a case where the landlords and other administrative claims are clearly not budgeted or being paid…while the secured lenders' collateral is being liquidated and their secured claim is being paid, I have a serious problem with that. I think the fix is no 506(c) waiver for anybody.").

15. In fact, it appears as though the Debtor has agreed to these waivers because the Administrative Agent has agreed to "carve-out" from its collateral in excess of $3.3 million for the

payment of the Debtor's and Committee's professional fees.  Popeyes is very concerned about and questions the Debtor's business judgment on this issue.

16.     Third, the Debtor has agreed to grant the Administrative Agent an Adequate Protection Lien in Ordered ¶3(a) and an Adequate Protection Superpriority Claim in Ordered ¶3(b) of the Proposed Final Order.  At Popeyes' request, the Debtor made certain revisions to the language of the Proposed Final Order at the end of each such section that makes clear that the Adequate Protection Lien and the Adequate Protection Superpriority Claim do not attach to and are not payable from the "Excluded Assets" as defined in paragraph 15 of the Proposed Final Order.  Popeyes is not sure whether such language will remain in the Proposed Final Order based on comments from other parties.  However, as set forth in detail in the Popeyes' Initial Objection,[3] the Lenders do not have a pre-petition lien on any of the Excluded Assets and therefore the Proposed Final Order should not grant any Adequate Protection Lien or Adequate Protection Superpriority Claim on or against any such Excluded Assets (many of which are actually assets of Popeyes and not the Debtor).

17.     In addition, Popeyes objects to the proposed Adequate Protection Superpriority Claim in favor of the Lenders, specifically the provision of the Proposed Final Order that states "[o]ther than the Carve-Out, no cost of expense of administration of the Chapter 11 Case shall be senior to, or *pari passu* with, the Adequate Protection Superpriority Claim.  *Id*. at Ordered ¶ 3(b). Once again, Popeyes does not have a general objection to granting an Adequate Protection Superpriority Claim to a secured lender, but as drafted, such Adequate Protection Superpriority Claim, combined with the proposed section 506(c) surcharge waiver, is inappropriate and should not be granted when the Debtor is admittedly not paying a substantial amount of on-going post-

---

[3] Popeyes incorporates by reference herein the arguments contained in the Popeyes' Initial Objection in connection with these issues.

petition ordinary and necessary administrative expense claims.

18.    Fourth, the Carve-Out set forth in the Proposed Final Order includes more than $3.3 million in professional fees for the Debtor's professionals during the term of the Proposed Final Budget.  *Id.* at Ordered ¶ 7(c).  In addition, the Proposed Final Order contains provisions for the on-going deposit into a Carve-Out Reserve Account of such budgeted professional fees.  *Id.* at Ordered ¶ 9(a).  Still further, the Proposed Final Order provides that "[f]or avoidance of doubt, the Carve-Out Reserve Account and Carve-Out, and the rights to pay Allowed Professional Fees from the Carve-Out Reserve Account and Carve-Out, shall be senior to the Administrative Agent's Adequate Protection Liens and Adequate Protection Superpriority Claim."  *Id.* at Ordered ¶ 9(c).

19.    Lastly, the Proposed Final Order provides that the "Carve-Out and the subordination of the Lender Parties' claims and liens thereto as provided in the Interim Orders and this Final Order, **shall solely be for the benefit of the Debtor's Professionals and the Committee's Professionals** respectively, … and **shall not be for the benefit of, or otherwise used by, any other claimant, professional or party-in-interest** …."  *Id*. at Ordered ¶ 9(c) (emphasis added).

20.    The effect of the Carve-Out provisions set forth above is to grant priority to the Debtor's and Committee's professionals in and to, and for the payment of, in excess of $3.3 million in proposed fees over the payment of post-petition ordinary and necessary obligations that the Debtor owes to Popeyes and that pursuant to the Proposed Final Budget will continue to accumulate through the end of July.  This chapter 11 case should not, and cannot, be run for the benefit of the Debtor's and the Committee's professionals while legitimate and important post-petition administrative expense claims are unabashedly accumulating.  As a result, these Carve-Out provisions should not be approved by the Court, or in the alternative the obligations owed to

Popeyes should have priority over the rights of the Debtor's and Committee's professionals in and to such Carve-Out (although $3.3 million will only cover a fraction of the post-petition amounts that are expected to be owed to Popeyes and that will be accumulating under the Proposed Final Budget).[4]

21.     Fifth, in the Popeyes' Initial Objection, Popeyes raised several objections to those provisions of the Proposed Final Order that are contained in Recital paragraph H(iii) and Ordered paragraph 15 thereof.   As Popeyes stated, each of these provisions improperly granted to the Administrative Agent liens and rights in and to the "Franchise Assets" that (i) the Administrative Agent and the Debtor previously agreed were not granted to the Administrative Agent, (ii) are actually owned by Popeyes and not the Debtor, and (iii) violate applicable law, namely Section 9-408 of the Uniform Commercial Code.[5]

22.     In the Proposed Final Order filed by the Debtor on February 26, 2026, the Debtor included several provisions proposed by Popeyes designed to address Popeyes' Objections.   While Popeyes will be proposing certain "clean-up" wording changes to the revised language, Popeyes is not sure whether the language inserted into Ordered paragraph 15 of the Proposed Final Order will remain as drafted or will be further modified by the Debtor.   As set forth in detail in Popeyes' Initial Objection,[6] the Lenders do not have a pre-petition lien on any of the Excluded Assets and therefore the Proposed Final Order should reflect the limited extent of the Lenders' rights therein and should re-affirm the pre-petition agreement of the Lenders, Popeyes and the Debtor contained

---

[4] The last provision of Ordered paragraph 9(c) establishing priority to the Debtor's and Committee's professionals is inconsistent with and in fact violates the terms of the Interim Compensation Motion [ECF No. 131] which provides that no interim payments can be made to estate professionals unless the Debtor is current on all administrative expense obligations.

[5] Section 9-408 of the Uniform Commercial Code limits a lender's rights in connection with the enforcement of a security interest in a franchise agreement.

[6] Popeyes incorporates by reference herein the arguments contained in the Popeyes' Initial Objection in connection with these issues.

in the Amended and Restated Tri-Party Agreement, dated as of October 18, 2026, by and among Popeyes, the Debtor and the Administrative Agent, as successor (the "<u>Tri-Party Agreement</u>"), a copy of which is attached to the Popeyes' Initial Objection.

23.    Popeyes reserves its rights to raise further objections at the final hearing on the Cash Collateral Motion, including to supplement this Objection prior to and at the final hearing on the Cash Collateral Motion.

**WHEREFORE**, Popeyes Louisiana Kitchen, Inc., as the Debtor's franchisor, respectfully requests that this Court require that the Proposed Final Order and the Proposed Final Budget be revised in accordance with the terms hereof, and for such further relief as the Court deems appropriate.

Dated: March 2, 2026.

**VENABLE LLP**
*Attorneys for Popeyes Louisiana Kitchen, Inc.*
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
Telephone: 305.349.2300
Facsimile: 305.349.2310

By: */s/ Glenn D. Moses*
    Paul J. Battista, Esq.
    Florida Bar No. 884162
    Email: PJBattista@venable.com
    Glenn D. Moses, Esq.
    Florida Bar No. 174556
    Email: GMoses@venable.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 2, 2026, a true and correct copy of the foregoing document has been furnished via electronic mail by virtue of the Court's CM/ECF Filing System upon all interested parties registered to receive electronic notice on this matter.

By: */s/ Glenn D. Moses*
    Glenn D. Moses, Esq.