UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                     CASE NO. 26-bk-10451-RAM


SAILORMEN, INC.                                            Chapter 11

        Debtor.

_____/

In re:                                                     Adversary Proceeding

MARK REINERI and                                           Adv. Case No.
JONATHAN MARMOLEJOS,

        Plaintiffs,

v.

SAILORMEN, INC. and
BMO BANK, N.A.,
as Administrative Agent of the Lender Parties,

        Defendants.

_____/

## ADVERSARY COMPLAINT[1] SEEKING DECLARATORY JUDGMENT THAT THE EMPLOYEE RETENTION TAX CREDITS ARE NOT PROPERTY OF THE ESTATE

Plaintiffs, Mark Reineri and Jonathan Marmolejos (collectively the "Sellers"), pursuant to

Federal Rule of Bankruptcy Procedure 7001 and 28 U.S.C. § 2201, file this Adversary Complaint

seeking a declaratory judgment regarding the ownership of and entitlement to certain Employee

Retention Tax Credits, against Defendant Debtor Sailormen, Inc. ("Sailormen") and BMO BANK,

N.A., as Administrative Agent of the Lender Parties ("BMO"), and states the following:

---

[1] As this is an Adversary Complaint by Sellers in their individual capacities, and not on behalf of the debtor or the estate in a derivative capacity, Sellers did not file a motion for standing as contemplated in the Challenge Procedures. In any event, Sellers do have standing to bring this action because Sellers' own personal property rights are at issue.

## JURISDICTION

1.      This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. Specifically, 28 U.S.C. § 1334(b) provides "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11.

2.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3.      This is a core proceeding under 28 U.S.C. § 157(b)(K) and (O).

4.      The statutory predicates in support of the relief requested herein are 11 U.S.C. §§ 105(a) and 541 and 28 U.S.C. § 2201.

5.      Defendants Sailormen and BMO are properly joined in a single action, pursuant to Bankruptcy Rule 7020, Fed. R. Civ. P. 20(2), and Bankr. L.R. 7003-1(D)(1), because the right to relief arises out of the same transaction, that is, the stock sale that occurred on September 3, 2021, and questions of law and fact common to both Defendants will arise in this action.

## PARTIES

6.      Plaintiff Mark Reineri is a resident of Monroe County, Florida.

7.      Plaintiff Jonathan Marmolejos is a resident of Miami-Dade County, Florida.

8.      Defendant, Sailormen, is a Florida corporation, with its primary place of business located at 9200 South Dadeland Boulevard, Suite 600, Miami, Florida 33156.

9.      Defendant BMO is a lender and also the successor and current Administrative Agent of the Lender Parties, pursuant to an Agency Transfer Agreement, dated September 3, 2021, as it relates to that certain Credit Agreement, dated as of September 3, 2020, and amended as of March 14, 2025 (the "BMO Credit Agreement").

2

## GENERAL ALLEGATIONS

### A.  Sailormen Prior to the September 3, 2021 Closing

10.    Form in or around 2019, through and until September 3, 2021, Sellers[2] owned a combined 60% of the stock of Interfoods of America, Inc. ("Interfoods"), which, in turn, owned 100% of Sailormen.

11.    At all relevant times, through present, Interfoods owned 100% of Sailormen as its wholly-owned subsidiary.

12.    Prior to the September 3, 2021 sale, Interfoods and Sailormen filed consolidated tax returns with Sailormen as a disregarded entity.

13.    Sailormen, as the operating company, filed IRS Form 941s.

14.    Prior to the sale, Sailormen had an existing debt facility and security agreement related to a prior version of the BMO Credit Agreement.

15.    Pursuant to the Security Agreement, BMO had a lien on, among other things, Sailormen's personal property, accounts receivables, and general intangibles, including "tax refunds."

16.    BMO subsequently recorded UCC-1 filing statements asserting its lien on among other things, Sailormen's personal property, accounts receivables, and general intangibles, including "tax refunds."

---

[2] There was a third seller who owned and also sold the remaining 40% through the same transaction, but who is not a party to this action.

3

**B. Sailormen Applied for ERTC for the First, Second, and Third Quarters of 2021**

17.     While the Sellers owned Sailormen during the first, second, and third (partial) quarters on 2021, via their ownership of Interfoods, Sailormen filed quarterly IRS Form 941s and paid quarterly employment taxes.

18.     For the first, second, and third quarters of 2021, Sailormen amended its IRS Form 941s to apply for certain tax credits, known as an Employee Retention Tax Credit ("ERTC"), for employment taxes that had been paid prior to the sale closing.

19.     The ERTC is a refundable tax credit for certain eligible businesses and tax-exempt organizations that had employees and were affected during the COVID-19 pandemic.

**C. BMO Had Knowledge of, Consented to, Authorized, and Ratified the Transfer of the Pre-Closing ERTC to Sellers Pursuant to the September 3, 2021 Stock Purchase Agreement**

20.     On September 3, 2021, Sellers sold their stock of Interfoods pursuant to a Stock Purchase Agreement ("SPA") by and among the Sellers, Interfoods, and Chicken Run Holdings, LLC ("Buyer"), a copy of which is attached here as **Exhibit A.**

21.     Sailormen was not a signatory to the Stock Purchase Agreement.

22.     However, every person or entity that owned Interfoods and, therefore owned and controlled Sailormen, pre- and post-closing were parties to the Stock Purchase Agreement.

23.     Pursuant to the Stock Purchase Agreement, subject to certain terms and conditions, the Sellers agreed to indemnify Interfoods and Sailormen for losses associated with any Pre-Closing Taxes and retained the ability to exercise sole control over pre-closing tax matters and contests for both Interfoods and Sailormen. *See* SPA, Section 9.1(a) & 9.4.

24.     In turn, as consideration, the Stock Purchase Agreement stated that "Sellers shall be entitled to any refund or credit with respect to Pre-Closing Taxes of [Interfoods of America,

4

Inc.] or [Sailormen, Inc.] to extent attributable to Taxes overpaid on or behalf of [Interfoods of America, Inc.] or [Sailormen, Inc.] for a Pre-Closing Tax Period." *See* SPA, Section 9.8(a).

25. The Stock Purchase Agreement stated that "[Interfoods of America, Inc.] shall pay, or cause to be paid, to the Sellers the amount of any such Tax Refund received (including any interest paid thereon), net of any reasonable out-of-pocket costs or expenses that are attributable to obtaining and receiving such Tax Refund, within ten (10) days after receipt thereof." *See* SPA, Section 9.8(a).

26. Pursuant to the Stock Purchase Agreement, the Sellers sold, among other things, Business Assets, defined as "all of the properties and assets required to be used by them in connection with the Business or otherwise shown on the Latest Balance Sheet or acquired thereafter." *See* 3.9(a).

27. As of September 3, 2021, the date of the execution of the Stock Purchase Agreement, the ERTC were not reflected on the Latest Balance Sheet, dated May 16, 2021, as account receivables. *See* Financial Statements, at Schedule 3.6(a).

28. As of September 3, 2021, the date of the execution of the Stock Purchase Agreement, neither Interfoods nor Sailormen was in default on the BMO Credit Agreement or on any other loan or Material Contract. *See* SPA ¶ 3.13(b).

29. The Stock Purchase Agreement gave the Buyer the option to obtain new third-party financing or to assume the BMO Credit Agreement, which was referred to as the "Existing Sailormen Debt Facility." *See* SPA, Section 5.7 & Schedule 3.7(a).

30. The Buyer ultimately assumed the BMO Credit Agreement.

31.    BMO's predecessor administrative agent and the lenders of the BMO Credit Agreement had to consent—and did consent—to the transactions contemplated in the Stock Purchase Agreement. *See* SPA, Section 3.5 & Schedule 3.5(a)(iii)(3).

32.    At the time BMO's predecessor administrative agent consented to the transactions contemplated in the Stock Purchase Agreement, BMO's predecessor administrative agent was aware of—and indeed consented—to the provision entitling the Sellers to any pre-closing tax refunds and credits, such as the ERTC.

33.    The knowledge of BMO's processor administrative agent is imputed onto BMO, as the current administrative agent, and BMO is bound by the consent, authorization, and ratification by BMO's predecessor administrative agent to the provision entitling the Sellers to any pre-closing tax refunds and credits, such as the ERTC.

34.    As such, as of the September 3, 2021 closing, BMO knew, consented to, authorized, and ratified that pre-closing tax refunds and credits were not assets being transferred to the Buyer as part of the Stock Purchase Agreement and would not remain assets and property of Sailormen.

35.    As of the September 3, 2021 closing, Interfoods and its wholly-owned subsidiary Sailormen no longer had property rights in the pre-closing tax refunds and credits sufficient to pledge pre-closing tax refunds and credits as collateral for the BMO Credit Agreement.

36.    As such, as of the September 3, 2021 closing, BMO knew, consented to, authorized, and ratified that Sailormen no longer had property rights in the pre-closing tax refunds and credits sufficient to pledge pre-closing tax refunds and credits as collateral for the BMO Credit Agreement.

**D. Sailormen Defaults on the BMO Credit Agreement**

37.     Throughout 2022 to 2025, Sailormen suffered various events of default under the BMO Credit Agreement.

38.     According to BMO, since September 2024, the Lender Parties and their professional advisors had engaged in regular discussions with Sailormen, its representatives and CapitalSpring, Sailormen's controlling shareholder and equity sponsor, in an effort to resolve or otherwise address the ongoing Events of Default.

39.     On December 8, 2025, BMO sued Sailormen.

40.     According to BMO, Sailormen and the Lender Parties entered into a Third Amendment to Sixth Amended and Restated Credit Agreement on September 3, 2021, the same date as the closing.

**E. Sailormen Petitions for Chapter 11 Bankruptcy**

41.     On January 15, 2026, Sailormen petitioned for Chapter 11 bankruptcy.

42.     On the bankruptcy schedules, filed February 12, 2026, the only "Tax refunds" identified were Net Operating Losses in the approximate amount of $760,301 for tax year 2025.

43.     The bankruptcy schedules also identified that BMO had a secured claim in the approximate amount of $129,982,639.00 secured by a lien on "All Owned Assets."

44.     According to statements made at the February 20, 2026 meeting of creditors, in or around February 2026 (post-petition), Sailormen apparently received an ERTC check in the approximate amount of $12,823,455 for the second quarter of 2021 that was being held in a locked cabinet.

45.     At time of the bankruptcy petition and receipt of the ERTC check, Sailormen, of course, was well aware of the SPA and its provision entitling the Sellers to the pre-closing ERTC.

46.     BMO was well aware, too, having had knowledge of, consented to, approved, and ratified the Stock Purchase Agreement's provision entitling the Sellers to the ERTC.

47.     Nevertheless, Sailormen did not identify the Sellers as creditors.

48.     Sailormen did not reference the SPA in its schedules or in any other filing.

49.     Sailormen's Chief Restructuring Officer did not even mention the 2021 sale in the recounting of Sailormen's history in the Declaration in Support of First-Day Motions. ECF No. 9.

50.     Neither Interfoods nor Sailormen gave the Sellers notice that an ERTC check had been received for the Pre-Closing Tax Period.

51.     Sailormen did not remit the ERTC check to Interfoods for payment to Sellers.

52.     Instead, Sailormen and BMO struck a deal that Sailormen and BMO would treat the pre-closing ERTC as property of Sailormen's estate, subject to an adequate protection lien in favor of BMO, on the condition that Sailormen could use some of those funds.

53.     The briefing and proposed order on the use of cash collateral states that BMO had a prepetition lien on "tax refunds and credits" and includes "employee retention tax credits" in a parenthetical regarding use of Cash Collateral.

**F.  The Sellers Are Entitled to the Pre-Closing ERTC Funds**

54.     The $12,823,455 ERTC check was issued for the second quarter of 2021 to Sailormen, which is a time period prior to the September 3, 2021 closing.

55.     ERTC funds for the first and third quarters of 2021 are under consideration by the IRS. To the extent the IRS approves and issues those additional ERTC funds, Sellers also are entitled to any additional ERTC funds for time periods prior to the September 3, 2021 closing.

**G. The Pre-Closing ERTC Funds Are Not Property of the Estate**

56.     The pre-closing ERTC were not assets or property sold to the Buyer or retained by Sailormen as part of the Stock Purchase Agreement.

57.     Rather, the plain language of the SPA entitles the Sellers to pre-closing ERTC.

58.     It was not the intent of the Stock Purchase Agreement to create a contractual or debtor/creditor relationship between Sailormen and Interfoods regarding the remittance of pre-closing ERTC to satisfy the terms of the Stock Purchase Agreement.

59.     Rather, it was the intent of the Stock Purchase Agreement that if Sailormen received any pre-closing ERTC, Sailormen was to hold the pre-closing ERTC in trust for the Sellers until such time as Interfoods either caused Sailormen to pay the ERTC to the Sellers or as Interfoods received possession of the ERTC from Sailormen, and, in turn, paid the Sellers.

60.     Because Sailormen holds the ERTC in trust for the Sellers, Sailormen does not have an equitable interest in the ERTC funds.

61.     As such, the ERTC funds are not property of the Sailormen bankruptcy estate, pursuant to 11 U.S.C. § 541(d).

62.     To the extent the Sailormen bankruptcy estate retains the ERTC funds, it is being unjustly enriched at the expense of the property rights of the Sellers who paid the pre-September 3, 2021 employment taxes for which Sailormen wants to keep the credits.

**H. There Is a Live, Actual Controversy over the ERTC Funds**

63.     Sailormen and BMO struck a deal that Sailormen and BMO would treat the pre-closing ERTC as property of Sailormen's estate on the condition that Sailormen could use some of those funds.

9

64.     Sailormen and BMO have petitioned the Court, and the Court has an Order, that deem "employee retention tax credits" to be cash collateral subject to adequate protection liens.

65.     On March 3, 2026, Sellers, through counsel, alerted Sailormen and BMO of their entitlement to the ERTC check.

66.     Sellers since have attempted to confer with Sailormen, but Sailormen maintains that BMO has a valid lien on the ERTC funds and has refused to give Sellers any assurances about the ERTC funds.

67.     In addition to the $12,823,455 in ERTC funds for the second quarter of 2021, Sailormen may be receiving two additional ERTC checks for the first and third quarters of 2021, each in the approximate amount of $11 million, to which the Sellers are entitled through and until September 3, 2021.

## COUNT I
### Declaratory Judgment
### (Fed. R. Bankr. P. 7001 and 28 U.S.C. § 2201)

68.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 67 as though fully set forth herein.

69.     Plaintiffs seek a declaratory judgment, pursuant to 28 U.S.C. Section 2201, to determine the relative rights of, and resolve an actual and justifiable controversy between, the parties regarding the Sellers' rights to the pre-closing ERTC funds.

70.     At present, Sailormen and BMO have struck a deal that Sailormen and BMO will treat the pre-closing ERTC as property of Sailormen's estate, subject to an adequate protection lien in favor of BMO, on the condition that Sailormen can use some of those funds.

71.     Pursuant to the Stock Purchase Agreement, however, Sellers are entitled to 60% of the pre-closing ERTC funds.

10

72.     As of September 3, 2021, BMO had knowledge, consented to, approved, and ratified the provision of the Stock Purchase Agreement that entitled Sellers to the pre-closing ERTC.

73.     As of September 3, 2021 and through and beyond receipt of the ERTC funds in February 2026, Sailormen did not have rights to the pre-closing ERTC funds to pledge them as collateral for the BMO Credit Agreement and for BMO's liens to attach to the pre-closing ERTC funds.

74.     As of September 3, 2021 and through and beyond receipt of the ERTC funds in February 2026, BMO knew that Sailormen did not have rights to the pre-closing ERTC funds to pledge them as collateral for the BMO Credit Agreement and for BMO's liens to attach to the pre-closing ERTC funds.

75.     Sailormen holds the pre-closing ERTC funds, and any pre-closing ERTC funds received in the future, in an implied trust for the benefit of Sellers.

76.     Pursuant to 11 U.S.C. § 541(d), the pre-closing ERTC funds are not the property of Sailormen's bankruptcy estate.

WHEREFORE, the Plaintiffs, Mark Reineri and Jonathan Marmolejos, respectfully request that the Court:

(1) enter judgment declaring that 60% of the $12,823,455 in ERTC funds for the second quarter of 2021, as well as any future receipt of ERTC funds for pre-closing tax quarters, are not property of Sailormen's bankruptcy estate, pursuant to Section 541 of the Bankruptcy Code;

(2) enter judgment declaring that 60% of the $12,823,455 in ERTC funds for the second quarter of 2021, as well as any future receipt of ERTC funds for pre-closing tax quarters, are not properly designated as cash collateral;

(3) enter judgment declaring that 60% of the $12,823,455 in ERTC funds for the second quarter of 2021, as well as any future receipt of ERTC funds for pre-

11

closing tax quarters, are not properly part of the package of adequate protection for the benefit of BMO;

(4) enter judgment declaring that Sailormen holds 60% of $12,823,455 in ERTC funds for the second quarter of 2021, as well as any future receipt of ERTC funds for pre-closing tax quarters, in an implied trust for the benefit of Sellers; and

(5) grant Sellers such other and further relief as is just and proper under the circumstances.

Dated: March 13, 2026

Respectfully submitted,

**LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP**
Miami Tower, 36th Floor
100 Southeast Second Street
Miami, Florida 33131
Tel: (305) 403-8788
Fax: (305) 403-8789
*Attorneys for Mark Reineri and Jonathan Marmolejos*

By: /s/ *Stephanie Hauser*
    STEPHANIE L. HAUSER
    Florida Bar No. 92765
    Primary: slh@lklsg.com;
    Secondary: ame@lklsg.com