

**ORDERED in the Southern District of Florida on March 20, 2026.**

**Robert A. Mark, Judge**
**United States Bankruptcy Court**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| SAILORMEN, INC., | Case No. 26-10451-RAM |
| Debtor.[1] | |
| _____ / | |

**ORDER (I) APPROVING BIDDING PROCEDURES FOR THE SALE OF ALL OR SUBSTANTIALLY ALL THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (II) APPROVING THE FORM OF ASSET PURCHASE AGREEMENT; (III) AUTHORIZING THE DEBTOR TO ENTER INTO STALKING HORSE AGREEMENTS AND APPROVING BID PROTECTIONS FOR STALKING HORSE BIDDERS; (IV) APPROVING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (V) SCHEDULING AN AUCTION FOR, AND HEARING TO APPROVE, THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (VI) APPROVING THE FORM AND MANNER OF SALE NOTICE; AND (VII) GRANTING RELATED RELIEF**

---

[1] The Debtor in this Chapter 11 case and the last four digits of its federal tax identification number are Sailormen, Inc. (5214). The location of the Debtor's corporate headquarters and the Debtor's service address in this chapter 11 case is Miami, Florida.

Upon consideration of the Motion [ECF No. 330] (the "**Motion**")[2] of the Debtor for entry of an order approving bidding procedures for the sale of all or substantially all of the Debtor's assets in one or multiple transactions (each, a "**Sale**," and collectively, the "**Sales**") and for related relief, and upon consideration of all pleadings related thereto, including the Baker Declaration; and it appearing that the Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2); and it appearing that venue of this proceeding and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in this Motion is in the best interests of the Debtor, its estate, and its creditors; and after due deliberation and good and sufficient cause appearing therefor;

**IT IS FOUND AND DETERMINED THAT:**

A.      The Debtor has articulated good and sufficient business reasons for the Court to (i) approve the Bidding Procedures attached to this Order; (ii) approve the Form APA; (iii) authorize the Debtor to enter into the Stalking Horse Agreement(s) and provide each Stalking Horse Bidder thereunder the following stalking horse bid protections: (a) a uniform Break-Up Fee of 2.5% of the Purchase Price set forth in each such Stalking Horse Bidder's Stalking Horse Agreement (the "**Break-Up Fee**"), plus (b) a maximum expense reimbursement of $1,000 per Store for substantiated expenses incurred in connection with each Stalking Horse Bidder's submission (the "**Expense Reimbursement**," and together with the Break-Up Fee, the "**Bid**

---

[2]     All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures. To the extent the same terms are defined in the Motion and the Bidding Procedures, the definition of those terms in the Bidding Procedures shall govern and control. To the extent of any conflict or inconsistency between defined terms in either the Motion or the Bidding Procedures, on the one hand, and this Order, on the other hand, the defined terms set forth in this Order shall govern and control.

**Protections**"); (iv) set dates for the Auction and Sale Hearing, as well as any other dates or deadlines set forth in the Bidding Procedures attached hereto; and (v) to authorize and approve the Assumption and Assignment Procedures, including the Cure Notice, and the form and manner of Sale Notice.

B.    In light of the circumstances and the nature of the relief requested, sufficient and adequate notice of the Bidding Procedures has been given, and no further notice thereof is required.

C.    The Bidding Procedures attached hereto as **Exhibit 1** and the Bid Protections contained herein, are fair, reasonable, appropriate, and appear to represent the best method for maximizing the value of the Debtor's estate, considering the size and nature of the proposed Sales, the expected marketing efforts of the Debtor and its professionals, and the efforts the Court anticipates will be expended by the potential Stalking Horse Bidders.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.    The Motion is granted with respect to the matters set forth herein, including approval of the Form APA, the Bidding Procedures, and Bid Protections.

**Stalking Horse Agreements**

2.    The Debtor is authorized, but not obligated or directed, in its sole discretion and business judgment and in consultation with the Creditors' Committee, the Prepetition Agent, and PLKI (collectively, the "**Consultation Parties**"), to enter into one or more Stalking Horse Agreements for the sale of the Purchased Assets or some portion thereof, using as a baseline the Form APA attached as **Exhibit B** to the Motion. The Debtor shall file any executed Stalking Horse Agreement(s) under notice with the Court, which notices shall include a marked copy of the

Stalking Horse Agreement reflecting any changes from the Form APA (the "**Stalking Horse Notice(s)**"). The deadline for the Debtor to select one or more Stalking Horse Bidders and file on the docket any Stalking Horse Notices shall be June 1, 2026 (the "**Stalking Horse Notice Deadline**").

**Form APA**

3.      The Form APA attached to the Motion as **Exhibit B** is approved for the Debtor's use in connection with soliciting and entering into one or more Stalking Horse Agreements and soliciting Qualified Bids pursuant to the Bidding Procedures.[3]

**PLKI's Franchisee Approval Process**

4.      The Debtor shall include a general description of the PLKI "Franchisee Approval Process" and general information on required remodels or other repair and maintenance requirements for the Debtor's restaurants (in each case to be provided by PLKI) in the data room maintained by the Debtor's advisors as part of the Sale Process. In order to ensure that PLKI is involved in the Sale Process as early as possible, the Debtor shall encourage all Potential Bidders to contact PLKI if they intend to seek to be an assignee of the PLKI franchise agreements in connection with any Bid, and work with PLKI to complete the PLKI "Franchisee Approval Process" as expeditiously as possible. PLKI shall be authorized to contact any such Potential Bidder to determine if they are interested in being an assignee of the PLKI franchise agreements and, if so, then to work with such Potential Bidder to advance and complete the Franchisee

---

[3]     Approval of the Form APA for use by Potential Bidders in accordance with this Order shall not constitute approval of any definitive APA or any sale transaction contemplated thereby. All rights of the parties to object to the approval of any Sale of the Debtor's assets and to the definitive APA or other transaction documents associated with any such Sale are preserved.

Approval Process, including to engage with Potential Bidders concerning any issues with the future operations of the Stores proposed to be included in any such Bid.

### PLKI's Reservation of Rights

5.      Nothing in this Order prejudices PLKI's rights to object to any Sale(s) or the assumption and/or assignment of its franchise agreements on any basis, including, but not limited to, based on or under section 365 of the Bankruptcy Code, the Lanham Trademark Act (codified in Chapter 22 of Title 15 of the United States Code), the PLKI franchise agreements (or the terms thereof), the PLKI Franchisee Approval Process (or the requirements thereof), or otherwise.

### The Bid Deadline

6.      In order to participate in the Auction, a Potential Bidder must submit a Qualified Bid (as defined in the Bidding Procedures), in writing or by email, so as to be actually received by the Bid Deadline, to the Notice Parties; provided, however, any credit bid by the Prepetition Agent shall be governed by the provisions set forth in the "Credit Bid" section below.

### Qualified Bids

7.      The Debtor may determine, in its sole discretion and business judgment and in consultation with the Consultation Parties, whether any Bids submitted by the Bid Deadline constitute Qualified Bids in connection with the standards set forth in the Bidding Procedures. For the avoidance of doubt, any existing rights of the Prepetition Agent, PLKI and the Creditors' Committee to object to the Debtor's determination of which Bids constitute Qualified Bids are hereby expressly preserved.

### Credit Bids

8.      On or before the Bid Deadline, creditors holding valid, perfected and unavoidable security interests in or liens on some or all of the Purchased Assets may submit a credit bid for the

assets that are the subject of their security interests or liens, to the fullest extent permitted under section 363(k) or section 1129(b)(2)(A) of the Bankruptcy Code (each, as may be modified in accordance with the Bidding Procedures and this Order, a "**Credit Bid**").

9. Notwithstanding the foregoing, the Prepetition Agent, on behalf of the Debtor's prepetition secured lenders (collectively, the "**Secured Lenders**," and together with the Prepetition Agent, the "**Prepetition Secured Parties**"), shall have the right in its sole discretion (at the direction of the Secured Lenders) to Credit Bid at the Auction, provided that it submits such credit bid in the form of a marked copy of the asset purchase agreement corresponding to the Starting Auction Bid(s) (defined below) prior to the commencement of the Auction. After submitting any such Credit Bid until such Credit Bid is irrevocably withdrawn by the Prepetition Agent on the record at the Auction, the Prepetition Agent will have the same rights as any other Qualified Bidder hereunder to make additional bids and amend the terms of any such bid during the Auction. If the Prepetition Agent submits a Credit Bid, the Prepetition Agent shall thereafter cease to be a consultation party hereunder solely with respect to the Purchased Assets subject to such Credit Bid until such Credit Bid is irrevocably withdrawn by the Prepetition Agent on the record at the Auction. Any Credit Bid submitted by the Prepetition Agent in accordance with this "Credit Bid" section shall automatically constitute a Qualified Bid, the Prepetition Agent shall automatically constitute a Qualified Bidder, and the Prepetition Agent shall not have to comply with any other requirements for Qualified Bids set forth in this Order or in the Bidding Procedures (other than clause C.(xii) of the Qualified Bid requirements in the Bidding Procedures), including the payment of any deposit in connection with such credit bid.

10. If the Prepetition Agent or any other secured creditor becomes the Successful Bidder or Back-Up Bidder with respect to any Purchased Assets pursuant to a Credit Bid (the

"**Successful Credit Bidder**," and such Credit Bid, the "**Successful Credit Bid**"), then the Successful Credit Bidder(s) shall be obligated to pay the Debtor cash equal to the amount of such Successful Credit Bid that is ultimately determined by final, non-appealable order to be invalid as a result of any successful Challenge (as defined in the Final Cash Collateral Order[4]) to the security interests or liens held by such Successful Credit Bidder, or the obligations which they secure (such invalid amount, the "**Invalidated Credit Bid Amount**"). Any such Invalidated Credit Bid Amount shall be due and payable by the Successful Credit Bidder(s) within five (5) business days of a final, non-appealable order being entered that upholds such Challenge and establishes the Invalidated Credit Bid Amount. The Debtor's acceptance of a Successful Credit Bid from a Successful Credit Bidder shall not be deemed to be an admission that such creditor has an allowed secured claim, or otherwise impact the determination of its claim in this case, which shall remain subject to the terms of the Final Cash Collateral Order.

**The Auction**

11.    If the Debtor, in its sole discretion and business judgment, in consultation with the Consultation Parties, pursuant to the Bidding Procedures, determines that at least one Qualified Bid is received before the Bid Deadline for Purchased Assets subject to a Stalking Horse Agreement, the Debtor will conduct an Auction for the Sale(s) of the Purchased Assets (the "**Auction**"), which shall take place on **June 15, 2026 at 10:00 am** (**Eastern Time**). In the event that there are no Stalking Horse Bidders, the Debtor will conduct the Auction if at least two Qualified Bids are received before the Bid Deadline. Only Stalking Horse Bidders and Qualified Bidders, as well as their respective advisors, may participate in the Auction.

---

[4]    The "Final Cash Collateral Order" shall mean the *Final Order (I) Authorizing the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Modifying Automatic Stay; and (IV) Granting Related Relief* entered on March 13, 2026 [ECF No. 327].

12.     The Stalking Horse Bidders, if any, and each Qualified Bidder will be entitled to make Bids at the Auction. The Debtor and its professionals shall direct and preside over the Auction and the Auction shall be transcribed. Any Stalking Horse Bidder (in its capacity as a Qualified Bidder, if applicable) and each Qualified Bidder participating in the Auction must confirm that (a) it has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein and (b) it has reviewed, understands, and accepts the Bidding Procedures.

**Successful Bidder(s) and Back-Up Bidders(s)**

13.     The Debtor may (I) designate, in its sole discretion and in consultation with the Consultation Parties, in the Debtor's business judgment, pursuant to these Bidding Procedures, the Qualified Bidder(s) that submitted the highest or otherwise best Bid(s) (the "**Successful Bidder(s)**" and such Bid, the "**Successful Bid(s)**") and, at the Debtor's discretion, the Qualified Bidder(s) that submitted the second highest or otherwise best Bid(s) (the "**Back-Up Bidder(s)**" and such Bid, the "**Back-Up Bid(s)**"), and (II) reject, without liability, any Bid that the Debtor, in its reasonable discretion and after consultation with the Consultation Parties, determines to be (a) inadequate or insufficient, (b) not in conformity with the Bidding Procedures, the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules, or (c) contrary to the best interests of the Debtor and its estate. For the sake of clarity, the terms "consult" or "consultation," as used herein, shall not give the Prepetition Agent, the Creditors' Committee, PLKI, or any other party the right to veto the Debtor's decisions concerning the Bidding Procedures and Sale Process.

14.     The Debtor shall file notice with the Court of the identity of the Successful Bidder(s) and Back-Up Bidder(s), and the amount(s) of their Successful Bids, by 11:59 p.m. (Eastern Time) on the date of the Auction (the "**Notice of Successful Bidder(s)**"). The following

day, the Debtor shall serve the Notice of Successful Bidder(s) by fax or email (where known to the Debtor) to all parties that are counterparties to any executory contracts and/or unexpired leases scheduled to be assumed and assigned in the Successful Bid(s), and to all creditors who have requested such notice in writing and provided their fax number or email address, as applicable, to Debtor's counsel on or before that date and time. The Debtor may not designate a Stalking Horse Bidder or the Prepetition Agent as a Back-Up Bidder unless the Prepetition Agent or such Stalking Horse Bidder, as applicable, consents to serving as Back-Up Bidder.

### Sale Hearing and Notice

15.    By no later than three (3) business days after entry of this Order, the Debtor shall serve, or cause to be served, this Order, the Bidding Procedures attached hereto as **Exhibit 1** and the Sale Notice attached hereto as **Exhibit 2**, by first-class mail, postage prepaid, or by email where available, upon (a) all known creditors of the Debtor, (b) all equity holders of the Debtor, (c) entities known to have expressed an interest in a transaction with respect to some or all of the Purchased Assets; (d) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon any of the Purchased Assets; (e) the Internal Revenue Service and all state and local taxing authorities in the states in which the Debtor has or may have any tax liability; (f) the Securities and Exchange Commission; (g) counsel to the Prepetition Agent; (h) counsel to PLKI; (i) counsel to the Creditors' Committee; (j) the Office of the Attorney General for the State of Florida; (k) the Office of the United States Trustee for Region 21; and (l) those parties who have filed the appropriate notice requesting notice of all pleadings filed in this chapter 11 case.

16.    The Court will conduct a hearing to approve the Sale(s) of the Purchased Assets on **June 18, 2026 at 9:30 a.m.** at the **U.S. Bankruptcy Court, C. Clyde Atkins United States Courthouse, 301 North Miami Avenue, Courtroom 4, Miami, FL 33128,** or such other location

as the Bankruptcy Court may determine (the "**Sale Hearing**")**.** The Debtor's representative, Debtor's counsel, counsel for BMO Bank, N.A., in its capacity as agent for the senior secured lenders, counsel for Popeyes Louisiana Kitchen, Inc. and counsel for the Official Committee of Unsecured Creditors, all witnesses (subject to paragraph 17 below), and any attorney presenting testimony or cross-examining witnesses, must appear in person in the courtroom. Any other party or counsel may appear remotely using the services of Zoom Video Communications, Inc. ("**Zoom**"), which permits remote participation by video or by telephone. To participate in the hearing remotely via Zoom (whether by video or by telephone), you **must register in advance no later than 3:00 p.m., one business day before the date of the hearing**. To register, click on the following registration link or manually by entering the registration link in a browser:

https://www.zoomgov.com/meeting/register/vJIsduqrrTIsGwLENmZWZhscEHry3et9jXQ

17.     By **June 16, 2026**, any party wishing to present remote witness testimony must file a motion under Fed. R. Civ. P. 43(a), made applicable here by Bankruptcy Rule 9017, setting forth the good cause, compelling circumstances and appropriate safeguards in place required for the Court to permit remote witness testimony.

18.     Objections, if any, to any Sale of the Purchased Assets ("**Sale Objections**") must be filed with the Clerk of the United States Bankruptcy Court for the Southern District of Florida, Miami Division, at the C. Clyde Atkins United States Courthouse, 301 North Miami Avenue, Room 150, Miami, Florida 33128 or electronically via the Court's CM/ECF system at or before **12:00 p.m. (Eastern Time) on June 17, 2026** (the "**Sale Objection Deadline**") and served on counsel for the Debtor, Gary H. Leibowitz, Esq., Cole Schotz, P.C., 1201 Wills Street, Suite 320, Baltimore, MD 21231, gleibowitz@coleschotz.com, Luis Salazar, Esq., Cole Schotz, P.C., 2121 SW 3rd Avenue, Suite 200, Miami, FL 33129, lsalazar@coleschotz.com, Bradley Shraiberg, Esq.,

Shraiberg Page P.A., 2385 NW Executive Center Drive, Suite 300, Boca Raton, FL 33421, bss@slp.law.com; the Prepetition Agent, c/o counsel for the Prepetition Agent, Paul Singerman, Esq., singerman@bergersingerman.com and Jordi Guso, Esq., jguso@bergersingerman.com, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131, and Peter P. Knight, Esq. and Terence G. Banich, Esq., Katten Muchin Roseman LLP, 525 W. Monroe Street, Chicago, IL 60661, peter.knight@katten.com and terence.banich@katten.com; counsel to PLKI, Paul J. Battista, Esq. and Glenn D. Moses, Esq., Venable LLP, 801 Brickell Avenue, Suite 1500, Miami, FL 33131, pjbattista@venable.com and gmoses@venable.com; proposed counsel for the Creditors' Committee, Eric. J Silver, Esq., Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Museum Tower, Suite 2200, 150 West Flagler Street, Miami, FL 33130, esilver@stearnsweaver.com and Daniel Besikof, Esq., and Gianfranco Finizio, Esq., Lowenstein Sandler LLP, 1251 Avenue of the Americas, 17th Floor, New York, New York 10020, dbesikof@lowenstein.com and gfinizio@lowenstein.com (together, the "**Notice Parties**"). Failure to file a Sale Objection on or before the Sale Objection Deadline shall be deemed to be consent for purposes of Section 363(f).

**Assumption and Assignment Procedures**

19.    As part of the Sale Process, not fewer than 30 days prior to the Cure Objection Deadline (defined below), the Debtor will serve on each counterparty to an executory contract or unexpired lease of the Debtor (each, a "**Potential Assumed Contract**")[5], including without limitation each contract proposed to be assumed and assigned to any Stalking Horse Bidder pursuant to any Stalking Horse Agreement, by e-mail, if known, and by first-class mail, postage

---

[5]    For the avoidance of doubt, the nine Stores under that certain Master Lease Agreement dated January 31, 2014 (as may have been amended from time to time) as between the Debtor and SVC ABS LLC (the "**SVC Master Landlord**") shall not be severable in any sale or assignment without the prior consent of the SVC Master Landlord.

prepaid, a cure notice substantially in the form attached hereto as **Exhibit 3** (the "**Cure Notice**"). The Cure Notice shall, for each such Potential Assumed Contract, (i) state the cure amount that the Debtor believes is necessary to assume such executory contract or unexpired lease (the "**Cure Amount**"); (ii) notify the non-Debtor party that such party's contract or lease, including any amendments and subordination, non-disturbance, and attornment agreements related to the leases, may be assumed and assigned to a purchaser of the Purchased Assets at the conclusion of the Auction; (iii) state the applicable deadline, which will be **June 17, 2026 at 12:00 p.m**. (Eastern Time) (the "**Cure Objection Deadline**"), by which the non-Debtor party must file an objection to the Cure Amount (a "**Cure Amount Objection**") or to the assumption and assignment of any Potential Assumed Contract (an "**Assumption Objection**"), and that the deadline to file an objection to any Sale (a "**Sale Objection**") is **June 17, 2026 at 12:00 p.m.** (Eastern Time); and (iv) state the date of the Sale Hearing and that Cure Amount Objections, Assumption Objections, and Sale Objections will be heard at the Sale Hearing; provided, however, that the inclusion of a contract, lease, or agreement on the Cure Notice shall not constitute an admission that such contract, lease, or agreement is an executory contract or unexpired lease (as more fully described herein and including the process set forth in the Cure Notice, the "**Assumption and Assignment Procedures**"). The Cure Notice will further state that the Debtor reserves all rights, claims, and causes of action with respect to the contracts, leases, and agreements listed on or appended to the Cure Notice or pertaining to the Potential Assumed Contracts.

20.    Any Cure Amount Objections and Assumption Objections must be filed in accordance with the Cure Notice, so as to actually be received by the parties listed on the Cure Notice, at or before **12:00 p.m. (Eastern Time) on June 17, 2026**.

21. Unless a non-Debtor counterparty to any executory contract or unexpired lease files a Cure Amount Objection by the Cure Objection Deadline, then the Cure Amount set forth in the Cure Notice shall be binding upon the non-Debtor counterparty to such agreement for all purposes, will constitute a final determination of the Cure Amount required to be paid in connection with the assumption and assignment of such agreement, and the Debtor, each Successful Bidder or Back-Up Bidder (as applicable) (including any Stalking Horse Bidder, as applicable) shall be entitled to rely solely upon the Cure Amount set forth in the Cure Notice. In addition, all counterparties to the Potential Assumed Contracts who fail to file a Cure Amount Objection or Assumption Objection will be, as applicable, (a) forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Potential Assumed Contracts and (b) forever barred and estopped from asserting or claiming against the Debtor, any Stalking Horse Bidder, any Successful Bidder or Back-Up Bidder (as applicable), or any other assignee of the Potential Assumed Contracts that any additional amounts are due, that defaults exist, or conditions to assumption and assignment must be satisfied with respect to such Potential Assumed Contracts.

22. In the event that the Debtor and a counterparty to an executory contract or unexpired lease cannot resolve such counterparty's Cure Amount Objection, the Debtor shall segregate any disputed Cure Amounts ("**Disputed Cure Amounts**") pending the resolution of any such disputes by the Court or mutual agreement of the parties (provided that the Debtor consults with the Consultation Parties and that parties-in-interest may object to any such resolution).

23. The Debtor shall, by no later than 11:59 p.m. (Eastern Time) on June 15, 2026 (the "**Adequate Assurance Deadline**"), provide the necessary financial information to demonstrate that each Successful Bidder and/or Back-Up Bidder (as defined in the Bidding Procedures), as

applicable, can provide adequate assurance of future performance under Section 365 of the Bankruptcy Code (the "**Adequate Assurance Information**") to those counterparties to the Potential Assumed Contracts (or their counsel) who have (x) submitted a written request (by e-mail to Debtor's counsel is acceptable) for Adequate Assurance Information and (y) confirmed in writing to the Debtor's counsel (by e-mail is acceptable) their agreement to keep such Adequate Assurance Information strictly confidential and use it solely for the purpose of evaluating whether any Stalking Horse Bidder or other Qualified Bidder has provided adequate assurance of future performance under the applicable Potential Assumed Contract; provided, however, that such Stalking Horse Bidder or other Qualified Bidder, as applicable, may require the counterparties to the applicable Potential Assumed Contracts to execute nondisclosure agreements prior to the remittance of any confidential, non-public information to such counterparty.

24.     Any objection to the provision of adequate assurance of future performance (an "**Adequate Assurance Objection**") must be filed and served in accordance with the Cure Notice, so as to actually be received by the parties listed on the Cure Notice, at or before **12:00 p.m. (Eastern Time) on June 17, 2026** (the "**Assumption Objection Deadline**").

25.     Any such Adequate Assurance Objection must also state the basis therefor. If a non-Debtor party to any executory contract or unexpired lease fails to object to the assumption or assignment and provision of adequate assurance of future performance by the Assumption Objection Deadline, such counterparty shall be forever barred from raising any such objection and shall be deemed to have received adequate assurance of future performance on its Potential Assumed Contract in satisfaction of section 365 of the Bankruptcy Code. Assumption Objections may be resolved by the Court at the Sale Hearing, or at a separate hearing either before the Sale Hearing or after the Sale Hearing. Any counterparty to an executory contract or unexpired lease

14

that fails to timely file and serve an Assumption Objection shall be forever barred from disputing the assumption and assignment of such Potential Assumed Contract to any Successful Bidder or Back-Up Bidder and from seeking adequate assurance of future performance with respect to such Potential Assumed Contract.

26.     Notwithstanding anything to the contrary herein, at any time before the Auction, any Stalking Horse Bidder or Qualified Bidder, as the case may be, shall have the right to exclude any Potential Assumed Contract from the Purchased Assets (an "**Excluded Contract**") to the extent permitted in the applicable Stalking Horse Agreement or Bidder Purchase Agreement, and any such Excluded Contract shall constitute an Excluded Asset (as defined in the applicable Stalking Horse Agreement or Bidder Purchase Agreement) and shall not constitute, for any purpose whatsoever, a Purchased Asset; provided, that in no event shall the Purchase Price in respect of such Stalking Horse Agreement or Bidder Purchase Agreement be reduced as a result of removing such Excluded Contract from the Purchased Assets. Notwithstanding the foregoing, any Excluded Contract nevertheless may be assumed and assigned, at a Successful Bidder's written request to Debtor's counsel, with notice to any counterparties to such contract, made no later than the Sale Hearing (the "**Subsequently Added Contracts**") unless alternative mutual arrangements are made between the Debtor and the Stalking Horse Bidder or Successful Bidder; and provided that any Excluded Contract that does not become a Subsequently Added Contract shall be deemed rejected pursuant to section 365(a) of the Bankruptcy Code effective (i) in the case of an unexpired lease, as of the date the subject premises is turned over to the applicable landlord[6] and (ii) for any other Excluded Contracts, as of the date of the Sale Hearing. Neither the

---

[6]   For the avoidance of doubt, the effective date of rejection set forth in this Order shall have no effect on the effective date of rejection for any executory contract that does not qualify as an Excluded Contract, including without limitation, leases that are the subject of the *First Omnibus Motion of the Debtor and Debtor-in-Possession for Entry of an Order (I) Authorizing Rejection of Unexpired Leases and (II) Setting a Deadline for the Filing of*

Stalking Horse Bidders nor any Successful Bidders, as applicable, shall incur any liability, obligation, or debt in connection with or related to any such Excluded Contract that constitutes an Excluded Asset.

### Stalking Horse Bid Protections

27.     The Bid Protections are approved. The Debtor shall be required to pay the Bid Protections to a Stalking Horse Bidder in the event that the Debtor completes a Sale of the Purchased Assets designated in a Stalking Horse Bidder's Bid to a Successful Bidder other than the Stalking Horse Bidder. If applicable, the Debtor shall pay the Break-Up Fee and Expense Reimbursement to such Stalking Horse Bidder(s) three (3) business days after the closing of the Sale of the applicable Purchased Assets to the Successful Bidder(s) or Back-Up Bidder(s) (if applicable), to the extent due and payable.

### Weekly Meetings Concerning the Sale Process

28.     The Debtor and its investment banker shall host weekly update calls or video conferences at mutually convenient times with principals and advisors of the Consultation Parties to discuss the Sale Process, including, without limitation, the Potential Bidders that have requested to participate in the Sale Process, such Potential Bidders' diligence, the status of the Debtor's bidder qualification process and the status, timing and any identified impediments concerning such Potential Bidders' Franchisee Approval Process

### Modification of Bidding Procedures

29.     The Debtor may modify the Bidding Procedures (except the Bid Protections), in its sole discretion and after consultation with the Consultation Parties, without the need for any further

---

*Rejection Claims* [ECF No. 82], the *Debtor's Second Omnibus Motion for Entry of an Order Authorizing Rejection of Unexpired Leases* [ECF No. 313], or the *Order (I) Authorizing Rejection of Certain Unexpired Leases and (II) Setting a Deadline for the Filing of Lease Rejection Claims* [ECF No. 328].

order of this Court, including, without limitation, (i) extending the deadlines set forth in the Bidding Procedures, (ii) adjourning the Auction, and (iii) withdrawing any Purchased Assets from the Sale Process at any time prior to or during the Auction; provided, however, that any changes to the dates and deadlines set forth in this Order or the Bidding Procedures shall comply with any milestones and other provisions set forth in the Final Cash Collateral Order. The Debtor must file notice of any such modifications with the Court and serve such notice within two days after such modification upon (a) all known creditors of the Debtor; (b) all equity holders of the Debtor, (c) entities known to have expressed current interest in a transaction with respect to some or all of the Purchased Assets; (d) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon any of the Purchased Assets; (e) the Internal Revenue Service and all state and local taxing authorities in the states in which the Debtor has or may have any tax liability; (f) the Securities and Exchange Commission; (g) counsel to the Prepetition Agent; (h) counsel to PLKI; (i) counsel to the Creditors' Committee; (j) the Office of the Attorney General for the State of Florida; (k) counsel for the Stalking Horse Bidders; (l) the Office of the United States Trustee for Region 21; and (m) those parties who have filed the appropriate notice requesting notice of all pleadings filed in this chapter 11 case.

30.     The requirements of Bankruptcy Rule 6003(b) have been satisfied.

31.     The requirements of Bankruptcy Rule 6004(a), to the extent applicable, are waived.

32.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

33.     The Court shall retain jurisdiction to hear and determine all matter arising from the implementation of this Order.

### 

17

Submitted by:

Luis Salazar, Esq.
COLE SCHOTZ P.C.
2121 SW 3rd Ave., Suite 200
Miami, Florida 33129
Telephone: 305-374-4848
Email: lsalazar@coleschotz.com

-and-

Gary H. Leibowitz, Esq. (admitted *pro hac vice*)
Irving Walker, Esq. (admitted *pro hac vice*)
H.C. Jones, III, Esq. (admitted *pro hac vice*)
Natalie Gibson, Esq. (admitted *pro hac vice*)
COLE SCHOTZ P.C.
1201 Wills Street, Suite 320
Baltimore, MD 21231
Telephone: 410-230-0660

*Luis Salazar is directed to serve copies of this Final Order upon all interested parties and to file a certificate of service with the Court.*

# EXHIBIT 1

## TO BIDDING PROCEDURES ORDER

**SUMMARY OF BIDDING PROCEDURES**

A. **Due Diligence.** Upon execution of a valid nondisclosure agreement in form and substance reasonably acceptable to the Debtor, the Debtor will afford interested parties such due diligence access or additional information as the Debtor, in consultation with its advisors, deems appropriate. The Debtor will limit access to due diligence to those parties it believes, in the exercise of the Debtor's business judgment, are pursuing the transaction in good faith and are capable of submitting a Qualified Bid (as defined below) ("**Potential Bidders**"), as well as the Consultation Parties and each of their respective professionals.

B. **Bid Deadline** – **June 11, 2026, 5:00 pm (Eastern).** Other than as set forth herein, in order to participate in the Auction, a Potential Bidder must submit a Qualified Bid (defined below), in writing or by email, so as to be actually received by the Bid Deadline, to:

   i.   the Debtor, c/o Aurora Management Partners, 112 South Tryon Street, Suite 1770, Charlotte, NC 28284, Attention David Baker, CRO, dbaker@auroramp.com;

   ii.  counsel for the Debtor, Gary H. Leibowitz, Esq., Cole Schotz P.C., 1201 Wills Street, Baltimore, MD 21231, gleibowitz@coleschotz.com; Luis Salazar, Esq., Cole Schotz, P.C., 2121 SW 3rd Avenue, Suite 200, Miami, FL 33129, lsalazar@coleschotz.com; and Bradley Shraiberg, Esq., Shraiberg Page P.A., 2385 NW Executive Center Drive, Suite 300, Boca Raton, FL 33421, bss@slp.law.com;

   iii. Peak Franchise Capital LLC, 4100 Spring Valley Road, Suite 535, Dallas, TX 75244, Attention: Michael Elliott, Managing Partner, mike.elliott@peakfranchisecapital.com;

   iv.  the Prepetition Agent, c/o counsel for the Prepetition Agent, Paul Singerman, Esq., singerman@bergersingerman.com, and Jordi Guso, Esq., jguso@bergersingerman.com, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131,; Peter P. Knight, Esq. and Terence G. Banich, Esq., Katten Muchin Roseman LLP, 525 W. Monroe Street, Chicago, IL 60661, peter.knight@katten.com and terence.banich@katten.com; and

   v.   proposed counsel for the Creditors' Committee, Eric. J Silver, Esq., Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Museum Tower, Suite 2200, 150 West Flagler Street, Miami, FL 33130, esilver@stearnsweaver.com; Daniel Besikof, Esq. and Gianfranco Finizio, Esq., Lowenstein Sandler LLP, 1251 Avenue of the Americas, 17th Floor, New York, New York 10020, dbesikof@lowenstein.com, and gfinizio@lowenstein.com;

vi.  counsel to PLKI, Paul J. Battista, Esq. and Glenn D. Moses, Esq., Venable LLP, 801 Brickell Avenue, Suite 1500, Miami, FL 33131, pjbattista@venable.com and gmoses@venable.com (together, the "**Notice Parties**").

If the Prepetition Agent intends to submit a credit bid, the Prepetition Agent shall provide the Debtor and the Notice Parties with a marked copy of the asset purchase agreement corresponding to the Starting Auction Bid (defined below) prior to the commencement of the Auction, provided that Prepetition Agent will have the same rights as any other Qualified Bidder (defined below) hereunder to amend such terms during the Auction. If the Prepetition Agent submits a credit bid, the Prepetition Agent shall thereafter cease to be a consultation party hereunder with respect to the Purchased Assets subject to its credit bid. Any Credit Bid submitted by the Prepetition Agent shall automatically constitute a Qualified Bid, the Prepetition Agent shall automatically constitute a Qualified Bidder, and the Prepetition Agent shall not have to comply with any other requirements for Qualified Bids set forth herein (other than clause C.(xii) of the Qualified Bid requirements set forth below), including the payment of any deposit in connection with such credit bid.

## C.  Qualified Bid Requirements.

To constitute a Qualified Bid, a Bid must:

i.  fully disclose the identity of the Potential Bidder and include contact information for the specific person(s) the Debtor should contact if they have any questions about the Potential Bidder's Bid;

ii.  if the Debtor has entered into one or more Stalking Horse Agreements, identify the Stalking Horse Agreement(s) that the Potential Bidder seeks to overbid, including the specific Store numbers and locations the Potential Bidder proposes to purchase, along with any Stores included in the Stalking Horse Agreement(s) that are excluded from the Bid, and any other Stores not included in the Stalking Horse Agreement(s) that are included in the Bid, as well as any liabilities proposed to be assumed as part of the Bid's Purchase Price;

iii.  if the Debtor has not entered into one or more Stalking Horse Agreements, identify the specific Store numbers and locations the Potential Bidder proposes to purchase;

iv.  include a signed writing that the Potential Bidder's offer is formal, binding, unconditional, and irrevocable until (i) the closing of the transaction with the Successful Bidder (as defined below) and (ii) for two (2) business days after the earlier of the closing of the sale transaction with the Successful Bidder or the termination of the Successful Bid, if such bidder is designated the Back-Up Bidder (as defined below) at the conclusion of the Auction;

v.  confirm that there are no conditions precedent to the Potential Bidder's ability to enter into a definitive agreement and that all necessary internal and shareholder approvals have been obtained prior to the Bid;

2

vi.    include a duly authorized and executed copy of an asset purchase agreement, including the purchase price (the "**Purchase Price**") for the Stores and other Purchased Assets for which the Bid is submitted (a "**Bidder Purchase Agreement**"), together with all exhibits and schedules thereto and copies marked to show any amendments and modifications to the applicable Stalking Horse Agreement(s) the Bid seeks to overbid or to the Form APA, as the case may be; provided, however, that such Bidder Purchase Agreement shall not include any financing or diligence conditions and that such exhibits and schedules may be provided after submission of the Bid;

vii.    include written evidence (which may include bank deposit statements and capital commitment letters) of sufficient cash on hand to fund the Purchase Price or sources of immediately available funds that are not conditioned on further third party approvals or commitments, that will allow the Debtor to make a reasonable determination, in consultation with the Consultation Parties, as to the Potential Bidder's financial and other capabilities to consummate the transaction contemplated by the Bidder Purchase Agreement, and such other financial information of the Potential Bidder as may be acceptable to the Debtor in its reasonable discretion in consultation with the Consultation Parties (collectively, the "**Financials**"), or, if the Potential Bidder is an entity formed for the purpose of acquiring the Purchased Assets, the Financials of the Potential Bidder's equity holder(s) or other financial backer(s);

viii.    if the Debtor has entered into one or more Stalking Horse Agreements:

(a)    where a Potential Bidder seeks to submit a Bid for the purchase of the same Stores contemplated in a particular Stalking Horse Agreement or multiple Stalking Horse Agreements, provide for a cash Purchase Price of at least 2.5% more than the value of the total combined Purchase Price offered in the respective Stalking Horse Agreement or Stalking Horse Agreements, as the case may be, *plus* an additional $1,000 per Store included in the Potential Bidder's Bid, along with an additional $100,000 overbid, and/or otherwise have a Purchase Price and value to the Debtor that, in the Debtor's business judgment, is greater or otherwise better than the Purchase Price and value offered under the Stalking Horse Agreement(s); and

(b)    where a Potential Bidder seeks to submit a Bid for a portion of the Purchased Assets that is not the same as that contemplated in one or more Stalking Horse Agreements, and includes a different combination of Stores than those designated in any or all of the Stalking Horse Agreements, provide greater or otherwise better value than the value offered under the Stalking Horse Agreement(s), in the Debtor's business judgment, in consultation with the Consultation Parties, including consideration of the total combined sale price of the Purchased Assets, the specific Restaurants' marketability, practical matters concerning Restaurant-level issues, and such other considerations as the Debtor may deem appropriate in its business judgment in consultation with the Consultation Parties (together or separately, as the case may be, a "**Minimum Overbid**");

3

ix. provide a commitment to close the transactions contemplated by the Bidder Purchase Agreement within 5 business dates, but in no event later than **June 30, 2026**;

x. identify with particularity the unexpired leases and executory contracts the Potential Bidder wishes to assume and have assigned to it;

xi. contain sufficient information concerning the Potential Bidder's ability to provide adequate assurance of future performance with respect to unexpired leases and executory contracts to be assumed and assigned;

xii. include either (a) written approval and consent of PLKI to the assignment of the PLKI franchise agreements from the Debtor to the Potential Bidder or (b) sufficient information, including copies of all information submitted to PLKI for obtaining PLKI's approval and consent, to satisfy the Debtor that the Potential Bidder has obtained the PLKI's approval and consent to become a franchisee for the Stores included in the Bid or, as determined by the Debtor in its sole discretion, after consultation with the Consultation Parties, that the Potential Bidder is reasonably likely to be able to obtain such approval and consent, prior to Closing or otherwise is willing and able to complete Closing without such prior approval and consent, in either case for avoidance of doubt because the written approval and consent of PLKI is a required condition precedent to such assignment of the PLKI franchise agreement;

xiii. include an acknowledgement and representation by the Potential Bidder that it: (A) has had an opportunity to conduct any and all required due diligence regarding the Purchased Assets prior to making its offer; (B) has relied solely on its own independent review, investigation, and/or inspection of any documents and/or the Purchased Assets in making its Bid; (C) did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Purchased Assets or the completeness of any information provided in connection therewith or with the Auction (defined below), except as expressly stated in the Bidder Purchase Agreement; and (D) is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its Bid;

xiv. be accompanied by a good faith deposit in the form of a wire transfer, certified check, or such other form that is acceptable to the Debtor, payable to the order of the escrow agent designated by the Debtor in an amount no less than ten percent (10%) of the Purchase Price;

xv. state that the Potential Bidder agrees to serve as a Back-Up Bidder (as defined below) if such bidder's Qualified Bid is selected as the next highest or otherwise next best bid after the Successful Bidder (as defined below) with respect to the applicable Purchased Assets;

xvi. state that the Potential Bidder consents to the jurisdiction of the Bankruptcy Court; and

4

xvii.  contain such other information reasonably requested by the Debtor.

D. **Credit Bids.** On or before the Bid Deadline, parties holding a valid lien on some or all of the Debtor's assets that secures a bona fide claim (a "**Credit Bidder**") may submit a credit bid for some or all of such assets to the fullest extent permitted under section 363(k) or section 1129(b)(2)(A) of the Bankruptcy Code (a "**Credit Bid**"). Notwithstanding the foregoing, the Prepetition Agent shall be entitled to submit a Credit Bid for any portion of its outstanding obligations pursuant to section 363(k) or section 1129(b)(2)(A) of the Bankruptcy Code with respect to any assets on which it holds liens. If the Prepetition Agent or any other secured creditor becomes a Successful Credit Bidder with respect to any Purchased Assets pursuant to a Credit Bid, then the Successful Credit Bidder(s) shall be obligated to pay the Debtor cash equal to the amount of such Successful Credit Bid that is ultimately determined by final, non-appealable order to be invalid as a result of any successful Challenge (as defined in the Final Cash Collateral Order) to the security interests or liens held by such Successful Credit Bidder, or the obligations which they secure (such invalid amount, the "**Invalidated Credit Bid Amount**"). Any such Invalidated Credit Bid Amount shall be due and payable by the Successful Credit Bidder(s) within five (5) business days of a final, non-appealable order being entered that upholds such Challenge and establishes the Invalidated Credit Bid Amount. The Debtor's acceptance of a Successful Credit Bid from a Successful Credit Bidder shall not be deemed to be an admission that such creditor has an allowed secured claim, or otherwise impact the determination of its claim in this case, which shall remain subject to the terms of the Final Cash Collateral Order.

E. **Auction.** If at least one Qualified Bid is received before the Bid Deadline for Purchased Assets subject to a Stalking Horse Agreement, the Debtor will conduct an Auction for the Sale(s) of the Purchased Assets (the "**Auction**"), commencing on **June 15, 2026 at 10:00 a.m. (Eastern)**, at the **JW Marriott Miami, 1109 Brickell Avenue, Miami, Florida 33131**. In the event that there are no Stalking Horse Bidders, the Debtor will conduct the Auction if at least two Qualified Bids are received before the Bid Deadline. The Auction may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Auction, or before the Auction, by notice provided in the best efforts of the Debtor to all interested parties and to the Court; provided, however, that any changes to the dates and deadlines of the Bidding Procedures shall comply with any milestones contained in any order for the use of cash collateral entered by the Court in this case. The Debtor must file notice of any such modifications with the Court and serve such notice within two days after such modification upon the Notice Parties. The Debtor reserves the right to cancel the Auction (in consultation with the Consultation Parties) if the requisite Bids described above are not received as of the Bid Deadline.

F. **Auction Procedures.** Only any Stalking Horse Bidders and a person or entity that has submitted a Qualified Bid (including a Prepetition Credit Bid) (a "**Qualified Bidder**") to the Notice Parties and such person's or entity's respective advisors are eligible to participate in the Auction. For the avoidance of doubt, the Consultation Parties and their advisors are entitled to attend the Auction in person or via video conference. All participants shall appear in person, by telephone (with prior written authorization by the Debtor, in the Debtor's sole discretion after consultation with the Consultation Parties), or through a duly authorized representative. Prior to the Auction, the Debtor, after consultation with the Consultation Parties, shall select

5

the Qualified Bids that, in the Debtor's business judgment, reflect the highest or otherwise best value for the Debtor's estate and the portion of the Purchased Assets contemplated by each Qualified Bid as the starting Bid or Bids (as the case may be, the "**Starting Auction Bid(s)**"), and advise all participants in the Auction of the terms of the Starting Auction Bid(s).

(i)    Where Qualified Bidders seek to submit Bids at the Auction for the purchase of the same portion of the Purchased Assets contemplated in a particular Starting Auction Bid or multiple Starting Auction Bids—including the same Restaurant locations—Qualified Bidders may submit Bids that are higher and better than the total combined Purchase Price of the Starting Auction Bid(s) in an initial increment equal to the aggregate amount of the Starting Auction Bid(s) plus $100,000, and in subsequent increments of at least $100,000, unless and until the Debtor, in its sole discretion and in consultation with the Consultation Parties, lifts or modifies this requirement.

(ii)   Where Qualified Bidders wish to submit Bids for a portion of the Purchased Assets that is not the same as that contemplated in one or more of the Starting Auction Bids, and includes a different combination of Restaurant locations than those designated in any or all of the Starting Auction Bids, Qualified Bidders may submit Bids that provide higher or otherwise better value than the Starting Auction Bid(s), in the Debtor's business judgment, in consultation with the Consultation Parties, including consideration of the total combined sale price of the Purchased Assets, the specific Restaurants' marketability, practical matters concerning Restaurant-level issues, and such other considerations as the Debtor may deem appropriate, and in subsequent increments as are set by the Debtor for each applicable combination of Purchased Assets and/or Restaurant locations (together with subsection (i), the "**Overbid Increments**"). The Debtor, in consultation with the Consultation Parties, may adjourn, continue, re-open, or terminate the Auction, and reserves the right to adopt other and further rules and procedures for the Auction that, in its business judgment, will better promote the goals of the Auction.

Each Qualified Bidder participating in the Auction will be required to confirm on the record at the Auction that it has not engaged in any collusion with respect to the bidding and sale process and that it has reviewed, understands, and accepts the Bidding Procedures.

G. **Selection of Successful Bidder and Back-Up Bidder.** The Debtor may designate, in its sole discretion and in consultation with the Consultation Parties, in the Debtor's business judgment, pursuant to these Bidding Procedures, the highest or otherwise best Bid(s) and the Successful Bidder or Bidders and the second highest or otherwise best Bid(s) as the Back-Up Bidder(s).

H. **Reservation of Rights.** The Debtor reserves the right to reject, without liability, any Bid that the Debtor, in its sole discretion and business judgment, after consultation with the Consultation Parties, determines to be (a) inadequate or insufficient, (b) not in conformity with the Bidding Procedures, the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules, or (c) contrary to the best interests of the Debtor and its estate. The Debtor also reserves the right to modify these Bidding Procedures, in its sole discretion and after consultation with the Consultation Parties, without the need for any further order of the Bankruptcy Court, including, without limitation, (i) extending the deadlines set forth in the Bidding Procedures, (ii) adjourning the Auction, and

(iii) withdrawing any Purchased Assets from the Sale Process at any time prior to or during the Auction; provided, however, that any changes to the dates and deadlines set forth herein shall comply with any milestones contained in any order for the use of cash collateral entered by the Court in these cases.

# EXHIBIT 2

## TO BIDDING PROCEDURES ORDER

### SALE NOTICE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| SAILORMEN, INC., | Case No. 26-10451-RAM |
| Debtor.[1] | **Deadline for Objections: June 17, 2026 at 12:00 p.m.** |
| / | **Sale Hearing: June 18, 2026 at 9:30 a.m.** |

**NOTICE OF HEARING ON APPROVAL OF (I) THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**PLEASE TAKE NOTICE** that on March [**], 2026, the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "**Debtor**"), by its undersigned counsel, filed the *Motion of the Debtor and Debtor-in-Possession for Entry of an Order Authorizing and Approving (I) the Sale of All or Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, and (II) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [ECF No. [**]] (the "**Sale Motion**").[2]

By the Motion, the Debtor seeks, among other things, an order authorizing the sale of substantially all its assets (the "**Purchased Assets**," as further defined in the Stalking Horse Agreements or Bidder Purchase Agreements, as applicable), as a going concern, to the Stalking Horse Bidders, as further designated in each Stalking Horse Agreement—or, alternatively, to any Successful Bidders designated following an Auction, as described below, on the terms contained in each applicable Bidder Purchase Agreement—free and clear of all liens, claims, encumbrances, and interests, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code (the "**Sale**").

**PLEASE TAKE FURTHER NOTICE** that, prior to the Sale Motion, on March 13, 2026, the Debtor, by its undersigned counsel, filed the *Motion of the Debtor and Debtor-in-Possession for Entry of an Order (I) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Approving the Form of Asset Purchase Agreement; (III) Authorizing the Debtor to Enter into*

---

[1]  The Debtor in this Chapter 11 case and the last four digits of its federal tax identification number are Sailormen, Inc. (5214). The location of the Debtor's corporate headquarters and the Debtor's service address in this chapter 11 case is Miami, Florida.

[2]  All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion or the Bidding Procedures Motion (defined below).

*Stalking Horse Agreements and Approving Bid Protections for Any Stalking Horse Bidders; (IV) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases; (V) Scheduling an Auction for, and Hearing to Approve, the Sale of All or Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (VI) Approving the Form and Manner of Sale Notice; and (VII) Granting Related Relief* [ECF No. 330] (the "**Bidding Procedures Motion**"). The Bankruptcy Court entered an order on March [\*\*], 2026 granting the Bidding Procedures Motion, setting a date for the Auction (as defined below) and other key deadlines for the Sale, as well as authorizing the Debtor to enter into one or more Stalking Horse Agreements for the sale of the Debtor's assets [ECF No. [\*\*]] (the "**Bidding Procedures Order**"). All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures. To the extent that there are any inconsistencies between the Bidding Procedures Order and the summary description of its terms and conditions contained in this Notice, the terms of the Bidding Procedures Order shall control.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures Order, if at least one Qualified Bid is duly submitted before the Bid Deadline, an auction to sell the Purchased Assets will be conducted on **June 15, 2026, at 10:00 am (Eastern Time)** (the "**Auction**")[3] at the **JW Marriott Miami, 1109 Brickell Avenue, Miami, Florida 33131**. Only those who submit a Qualified Bid to the Notice Parties on or before the Bid Deadline may participate in the Auction.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures Order, if an Auction is conducted, the Debtor is authorized to designate the highest or otherwise best Bid(s) and the Successful Bidder(s) and the second highest or otherwise best Bid(s) and the Back-Up Bidder(s). If Successful Bidder(s) or Back-Up Bidder(s) are designated, the Debtor will file with the Court, by 11:59 p.m. on June 15, 2026, a notice of the identity of any Successful Bidder(s) and Back-Up Bidder(s) and the amount(s) of their Bid(s).

**PLEASE TAKE FURTHER NOTICE** that, on **June 18, 2026 at 9:30 a.m. (Eastern Time)**, the Bankruptcy Court will conduct a hearing to approve the Sale (the "**Sale Hearing**"). The Sale Hearing will take place before the Honorable Robert A. Mark, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of Florida, Miami Division, at the **C. Clyde Atkins United States Courthouse, 301 North Miami Avenue, Miami, Florida 33128, in Courtroom 4**, or such other location as the Bankruptcy Court may determine. The Debtor, its representative(s), counsel for the Consultation Parties, all witnesses, and any attorney presenting testimony or cross-examining witnesses must appear in person in the courtroom; provided that, by **June 16, 2026**, any party wishing to present remote witness testimony must file a motion under Fed. R. Civ. P. 43(a) setting forth the good cause, compelling circumstances and appropriate safeguards in place required for the Court to permit remote witness testimony. Any other party or counsel may appear remotely via Zoom by registering in advance **no later than 3:00 p.m., one business day before the date of the hearing**. To register, click on the following registration link or manually by entering the registration link in a browser:

---

[3] The Bidding Procedures Order authorizes the Debtor to modify certain deadlines set forth therein and to adjourn the Auction.

https://www.zoomgov.com/meeting/register/vJIsduqrrTIsGwLENmZWZhscEHry3et9jXQ

**PLEASE TAKE FURTHER NOTICE** that objections to the Sale or relief requested in connection with the Sale (a "**Sale Objection**") must (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedures; (c) set forth the specific basis for the Sale Objection; and (d) be filed with the Clerk of the United States Bankruptcy Court for the Southern District of Florida, Miami Division, at the C. Clyde Atkins United States Courthouse, 301 North Miami Avenue, Room 150, Miami, Florida 33128 or electronically via the Court's CM/ECF system and served so as to actually be received by the following parties, at or before **12:00 pm (Eastern Time) on June 17, 2026**.

(a)     Undersigned Counsel for the Debtor;

(b)     The Prepetition Agent, c/o counsel for the Prepetition Agent, Paul Singerman, Esq., Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131, singerman@bergersingerman.com; Peter P. Knight, Esq. and Terence G. Banich, Esq., Katten Muchin Roseman LLP, 525 W. Monroe Street, Chicago, IL 60661, peter.knight@katten.com and terence.banich@katten.com;

(c)     Proposed Counsel for the Creditors' Committee, Eric. J Silver, Esq., Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Museum Tower, Suite 2200, 150 West Flagler Street, Miami, FL 33130, esilver@stearnsweaver.com; Daniel Besikof, Esq. and Gianfranco Finizio, Esq., Lowenstein Sandler LLP, 1251 Avenue of the Americas, 17th Floor, New York, New York 10020, dbesikof@lowenstein.com, and gfinizio@lowenstein.com;

(d)     counsel to PLKI, Paul J. Battista, Esq. and Glenn D. Moses, Esq., Venable LLP, 801 Brickell Avenue, Suite 1500, Miami, FL 33131, pjbattista@venable.com and gmoses@venable.com; and

(e)     Counsel for the Stalking Horse Bidder(s) or Qualified Bidder(s), as the case may be, to whom the Sale Objection pertains.

> **IF NO SALE OBJECTION IS PROPERLY FILED AND SERVED BEFORE THE DEADLINE, THE BANKRUPTCY COURT MAY ENTER THE SALE ORDER PERMITTING THE SALE OF THE PURCHASED ASSETS WITHOUT FURTHER NOTICE.**

The Debtor encourages interested parties to review the Sale Motion, Bidding Procedures Motion, and Bidding Procedures Order in their entireties. Parties interested in receiving more information regarding the Sale or copies of related documents may make a written request to undersigned counsel. In addition, copies of the Sale Motion, Bidding Procedures Motion, Bidding Procedures Order, and the Proposed Sale Order can be found online at https://cases.stretto.com/sailormen/, through PACER, at https://ecf.alnb.uscourts.gov (registration

required), and are on file with the Clerk of the Bankruptcy Court, at the C. Clyde Atkins United States Courthouse, 301 North Miami Avenue, Room 150, Miami, Florida 33128,

Dated: March ___, 2026                              Respectfully submitted,

**COLE SCHOTZ, P.C.**
*Attorneys for the Debtor Sailormen, Inc.*
2121 SW 3rd Ave, Suite 200
Miami, FL 33129
Telephone: 305-374-4848
Email: lsalazar@coleschotz.com
Secondary Email: Alee-Sin@coleschotz.com
Secondary Email: CS-eservice-miami@coleschotz.com

By: */s/ Luis Salazar*
        Luis Salazar
        Florida Bar No. 147788

-and-

1201 Wills Street, Suite 320
Baltimore, MD 21231
Telephone: 410-230-0660
Facsimile: 410-406-6067
Gary H. Leibowitz, Esq. (admitted *pro hac vice*)
Maryland Bar No. 24717
Email: GLeibowitz@coleschotz.com
Irving Walker, Esq. (admitted *pro hac vice*)
Maryland Bar No. 00179
Email: IWalker@coleschotz.com
H.C. Jones, III, Esq. (admitted *pro hac vice*)
Maryland Bar No. 20064
Email: HJones@coleschotz.com
Natalie Gibson (admitted *pro hac vice*)
Maryland Bar No. 31350
Email: Ngibson@coleschotz.com

4

# EXHIBIT 3

## TO BIDDING PROCEDURES ORDER

## CURE NOTICE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                              Chapter 11

SAILORMEN, INC.,                                    Case No. 26-10451-RAM

      Debtor.[1]

_____ /

**NOTICE OF POSSIBLE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES IN CONNECTION WITH SALE**

> **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU MAY BE A COUNTERPARTY TO A CONTRACT OR LEASE WITH SAILORMEN, INC., THE DEBTOR AND DEBTOR-IN-POSSESSION IN THE ABOVE-CAPTION CHAPTER 11 CASE. PLEASE READ THIS NOTICE CAREFULLY AS YOUR RIGHTS MAY BE AFFECTED BY THE TRANSACTIONS DESCRIBED HEREIN.**

**PLEASE TAKE NOTICE** that on March [**], 2026, Sailormen, Inc., the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "**Debtor**"), by its undersigned counsel, filed the *Motion of the Debtor and Debtor-in-Possession for Entry of an Order Authorizing and Approving (I) the Sale of All or Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, and (II) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [ECF No. [**]] (the "**Sale Motion**").[2]

By the Motion, the Debtor seeks, among other things, an order authorizing the sale of substantially all its assets (the "**Purchased Assets**," as further defined in the Stalking Horse Agreements or Bidder Purchase Agreements, as applicable), as a going concern, to the Stalking Horse Bidders, as further designated in each Stalking Horse Agreement—or, alternatively, to any Successful Bidder designated following an Auction, as described below, on the terms contained in each applicable Bidder Purchase Agreement—free and clear of all liens, claims, encumbrances, and interests, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code (the "**Sale**").

**PLEASE TAKE FURTHER NOTICE** that, prior to the Sale Motion, on March 13, 2026, the Debtor, by its undersigned counsel, filed the *Motion of the Debtor and Debtor-in-Possession for Entry of an Order (I) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II)*

---

[1]    The Debtor in this Chapter 11 case and the last four digits of its federal tax identification number are Sailormen, Inc. (5214). The location of the Debtor's corporate headquarters and the Debtor's service address in this chapter 11 case is Miami, Florida.

[2]    All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures Motion (defined below).

*Approving the Form of Asset Purchase Agreement; (III) Authorizing the Debtor to Enter into Stalking Horse Agreements and Approving Bid Protections for Any Stalking Horse Bidders; (IV) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases; (V) Scheduling an Auction for, and Hearing to Approve, the Sale of All or Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (VI) Approving the Form and Manner of Sale Notice; and (VII) Granting Related Relief* [ECF No. 330] (the "**Bidding Procedures Motion**"). The Bankruptcy Court entered an order on March [**], 2026 granting the Bidding Procedures Motion, setting a date for the Auction (as defined below) and other key deadlines for the Sale, as well as authorizing the Debtor to enter into one or more Stalking Horse Agreements for the sale of the Debtor's assets [ECF No. [**]] (the "**Bidding Procedures Order**"). All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures. To the extent that there are any inconsistencies between the Bidding Procedures Order and the summary description of its terms and conditions contained in this Notice, the terms of the Bidding Procedures Order shall control.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures Order, if at least one Qualified Bid is duly submitted before the Bid Deadline, an auction to sell the Purchased Assets will be conducted on **June 15, 2026, at 10:00 am (Eastern Time)** (the "Auction")[3] at the **JW Marriott Miami, 1109 Brickell Avenue, Miami, Florida 33131**. Only those who submit a Qualified Bid to the Notice Parties on or before the Bid Deadline may participate in the Auction.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures Order, if an Auction is conducted, the Debtor is authorized to designate the highest or otherwise best Bid(s) and the Successful Bidder(s) and the second highest or otherwise best Bid(s) and the Back-Up Bidder(s). If Successful Bidder(s) or Back-Up Bidder(s) are designated, the Debtor will file with the Court, by 11:59 p.m. on June 15, 2026, a notice of the identity of any Successful Bidder(s) and Back-Up Bidder(s) and the amount(s) of their Bid(s) (the "**Notice of Successful Bidder(s)**").

**PLEASE TAKE FURTHER NOTICE** that, on **June 18, 2026 at 9:30 a.m. (Eastern Time)**, the Bankruptcy Court will conduct a hearing to approve the Sale (the "**Sale Hearing**"). The Sale Hearing will take place before the Honorable Robert A. Mark, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of Florida, Miami Division, at the **C. Clyde Atkins United States Courthouse, 301 North Miami Avenue, Miami, Florida 33128, in Courtroom 4**, or such other location as the Bankruptcy Court may determine. The Debtor, its representative(s), counsel for the Consultation Parties, all witnesses, and any attorney presenting testimony or cross-examining witnesses must appear in person in the courtroom; provided that, by **June 16, 2026**, any party wishing to present remote witness testimony must file a motion under Fed. R. Civ. P. 43(a) setting forth the good cause, compelling circumstances and appropriate safeguards in place required for the Court to permit remote witness testimony. Any other party or counsel may appear remotely via Zoom by registering in advance **no later than 3:00 p.m., one**

---

3   The Bidding Procedures Order authorizes the Debtor to modify certain deadlines set forth therein and to adjourn the Auction.

**business day before the date of the hearing**. To register, click on the following registration link or manually by entering the registration link in a browser:

https://www.zoomgov.com/meeting/register/vJIsduqrrTIsGwLENmZWZhscEHry3et9jXQ

**PLEASE TAKE FURTHER NOTICE** that the deadline to file an objection to the Sale(s) is **June 17, 2026 at 12:00 p.m. (Eastern Time).**

**PLEASE TAKE FURTHER NOTICE** that, to facilitate the Sale, the Debtor is seeking to assume and assign to the Stalking Horse Bidder(s) or Successful Bidder(s), as applicable, certain of the Potential Assumed Contracts (as designated in the Stalking Horse Agreement(s) or Bidder Purchase Agreement(s), as applicable, and attached thereto as **Schedule 1**). A list of the Potential Assumed Contracts, including the amounts the Debtor believes are necessary to be paid to each counterparty (the "**Counterparties**" and, each, a "**Counterparty**") to cure any applicable payment arrearages (the "**Cure Amount(s)**"), if any, is attached hereto as **Schedule 1**. If the Court grants the Sale Motion and approves the Sale, each Counterparty's contract or lease, including any amendments or subordination, non-disturbance, and attornment agreements, may be assumed and assigned to the applicable Stalking Horse Bidder or Successful Bidder. Following the conclusion of the Auction, the Debtor will file a Notice of Successful Bidder(s), which will identify the Proposed Assumed Contracts designated to be assumed and assigned pursuant to the Successful Bid(s), in accordance with the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that Counterparties to the Potential Assumed Contracts identified on **Schedule 1** may request financial information demonstrating that each Successful Bidder and/or Back-Up Bidder can provide adequate assurance of future performance under section 365 of the Bankruptcy Code (the "**Adequate Assurance Information**"); provided that such Counterparty (a) submits a written request (by e-mail to Debtor's counsel is acceptable) for Adequate Assurance Information and (b) confirms in writing to the Debtor's counsel (by e-mail is acceptable) their agreement to keep such Adequate Assurance Information strictly confidential and use it solely for the purpose of evaluating whether any Stalking Horse Bidder or other Qualified Bidder has provided adequate assurance of future performance under the applicable Potential Assumed Contract. The Successful Bidder and/or Back-Up Bidder may require the Counterparty to execute a nondisclosure agreement prior to the remittance of any confidential, non-public information to such Counterparty. The Debtor shall provide such Adequate Assurance Information to the requesting Counterparty by 11:59 p.m. on June 15, 2026.

**PLEASE TAKE FURTHER NOTICE** that objections to the Cure Amount ("**Cure Amount Objections**"), to the assumption or assignment of a Potential Assumed Contract (an "**Assumption Objection**"), or to the provision of adequate assurance of future performance (an "**Adequate Assurance Objection**") must be filed with the Clerk of the United States Bankruptcy Court for the Southern District of Florida, Miami Division, at the C. Clyde Atkins United States Courthouse, 301 North Miami Avenue, Room 150, Miami, Florida 33128 or electronically via the Court's CM/ECF system and served so as to actually be received by the following parties, at or before **12:00 pm (Eastern Time) on June 17, 2026** (the "**Objection Deadline**"):

        (a)     Undersigned Counsel for the Debtor;

(b)     The Prepetition Agent, c/o counsel for the Prepetition Agent, Paul Singerman, Esq., Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131, singerman@bergersingerman.com; Peter P. Knight, Esq. and Terence G. Banich, Esq., Katten Muchin Roseman LLP, 525 W. Monroe Street, Chicago, IL 60661, peter.knight@katten.com and terence.banich@katten.com;

(c)     Proposed Counsel for the Creditors' Committee, Eric. J Silver, Esq., Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Museum Tower, Suite 2200, 150 West Flagler Street, Miami, FL 33130, esilver@stearnsweaver.com; Daniel Besikof, Esq. and Gianfranco Finizio, Esq., Lowenstein Sandler LLP, 1251 Avenue of the Americas, 17th Floor, New York, New York 10020, dbesikof@lowenstein.com, and gfinizio@lowenstein.com;

(d)     counsel to PLKI, Paul J. Battista, Esq. and Glenn D. Moses, Esq., Venable LLP, 801 Brickell Avenue, Suite 1500, Miami, FL 33131, pjbattista@venable.com and gmoses@venable.com; and

(e)     Counsel for the Stalking Horse Bidder or Bidders, as the case may be, to whom the objection pertains.

Subject to the Bidding Procedures Order, any unresolved objections, based on any grounds, shall be heard at the Sale Hearing unless otherwise agreed by the parties.

**PLEASE TAKE FURTHER NOTICE** that, at the Sale Hearing, the Debtor will seek Court approval of the assumption and assignment to the Stalking Horse Bidder(s) or Successful Bidder(s), as applicable, of only those Potential Assumed Contract that have actually been selected by the Stalking Horse Bidder(s) or Successful Bidder(s), as applicable, to be assumed and assigned. The Debtor and its estate reserve any and all rights with respect to any Potential Assumed Contracts that are not ultimately designated for assumption and/or assignment.

**PLEASE TAKE FURTHER NOTICE** that nothing contained in this Notice shall constitute a waiver of any rights of the Debtor or its estate or an admission with respect to the Debtor's chapter 11 case, including, but not limited to, any issues involving objections to claims, setoff or recoupment, equitable subordination or recharacterization of debt, defenses, characterization or re-characterization of contracts, leases and claims, assumption or rejection of contracts and leases and/or causes of action arising under the Bankruptcy Code or any other applicable laws. The Debtor reserves all rights to amend this notice, including but not limited to any Cure Amount or any Potential Assumed Contract set forth on **Schedule 1** hereto.

**Unless a non-Debtor party to any executory contract or unexpired lease files a Cure Amount Objection by the Objection Deadline, then the Cure Amount set forth in the Cure Notice shall be binding upon the Counterparty to such agreement for all purposes and will constitute a final determination of the Cure Amount required to be paid in connection with the assumption and assignment of such agreement. In addition, all Counterparties to the Potential Assumed Contract(s) who fail to file a Cure Amount Objection or an Assumption**

**Objection by the Objection Deadline will, as applicable, (a) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Potential Assumed Contract, and the Debtor, a Stalking Horse Bidder, or a Successful Bidder (as applicable) shall be entitled to rely solely upon the Cure Amount set forth in this Cure Notice, and (b) be forever barred and estopped from asserting or claiming against the Debtor, a Stalking Horse Bidder, or a Successful Bidder (as applicable), or any other assignee of the Potential Assumed Contract, that any additional amounts are due or that defaults exist, or conditions to assumption and assignment must be satisfied with respect to such Potential Assumed Contract. All Counterparties to the Potential Assumed Contract who fail to file an Adequate Assurance Objection by the Objection Deadline will be forever barred from raising any such objection and shall be deemed to have received adequate assurance of future performance on its Potential Assumed Contract in satisfaction of section 365 of the Bankruptcy Code.**

The Debtor encourages interested parties to review the Sale Motion, Bidding Procedures Motion, and Bidding Procedures Order in their entireties. Parties interested in receiving more information regarding the Sale or copies of related documents may make a written request to undersigned counsel. In addition, copies of the Sale Motion, the Bidding Procedures Order, and the Proposed Sale Order can be found online at https://cases.stretto.com/sailormen/, through PACER, at https://ecf.alnb.uscourts.gov (registration required), and are on file with the Clerk of the Bankruptcy Court, C. Clyde Atkins United States Courthouse, 301 North Miami Avenue, Room 150, Miami, Florida 33128.

Dated: March ___, 2026

Respectfully submitted,

**COLE SCHOTZ, P.C.**
*Attorneys for the Debtor Sailormen, Inc.*
2121 SW 3rd Ave, Suite 200
Miami, FL 33129
Telephone: 305-374-4848
Email: lsalazar@coleschotz.com
Secondary Email: Alee-Sin@coleschotz.com
Secondary Email: CS-eservice-miami@coleschotz.com

By: */s/ Luis Salazar*
        Luis Salazar
        Florida Bar No. 147788

-and-

1201 Wills Street, Suite 320
Baltimore, MD 21231
Telephone: 410-230-0660
Facsimile: 410-406-6067
Gary H. Leibowitz, Esq. (admitted *pro hac vice*)
Maryland Bar No. 24717

Email: GLeibowitz@coleschotz.com
Irving Walker, Esq. (admitted *pro hac vice*)
Maryland Bar No. 00179
Email: IWalker@coleschotz.com
H.C. Jones, III, Esq. (admitted *pro hac vice*)
Maryland Bar No. 20064
Email: HJones@coleschotz.com
Natalie Gibson (admitted *pro hac vice*)
Maryland Bar No. 31350
Email: Ngibson@coleschotz.com