UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                          Chapter 11

SAILORMEN, INC.,                                Case No. 26-10451-RAM

Debtor.[1]

_____/

## ***EXPEDITED* MOTION TO APPROVE KEY EMPLOYEE INCENTIVE PLAN**

### **Basis for Expedited Hearing:**

**Through this Motion, the Debtor request approval of a key employee incentive plan (the "KEIP"). The KEIP will, among other things, drive performance at a time when employees have stretched to meet the concurrent demands of running the Debtor's operations and administering the Debtor's bankruptcy. Accordingly, the Debtor request a hearing on May 7, 2026, when other matters are set for hearing in this case.**

Sailormen, Inc. (the "Debtor"), pursuant to 11 U.S.C. §§ 105, 363(b), & 503(c), requests the Court enter an order, substantially in the form attached hereto as **Exhibit A**, approving the Debtor's key employee incentive plan (the "KEIP"). In support of this Motion, the Debtor states:

### **JURISDICTION AND VENUE**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are Sections 105(a) and 365(a) of the Bankruptcy Code and Bankruptcy Rule 6006.

---

[1] The Debtor in this Chapter 11 case and the last four digits of its federal tax identification number are Sailormen, Inc. (5214). The location of the Debtor's corporate headquarters and the Debtor's service address in this chapter 11 case is Miami, Florida.

## BACKGROUND

1. On January 15, 2026 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code (this "Chapter 11 Case").

2. The Debtor continues to manage and operate its business as a debtor-in- possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. An official committee of unsecured creditors (the "Committee") was appointed on February 12, 2026.

4. No request for a trustee or examiner has been made in this Chapter 11 Case.

4. Information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of this Chapter 11 Case is set forth in the Baker Declaration.[2] Those facts are incorporated herein by reference.

5. The Debtor intends to conduct a prompt sale process. As of the Petition Date, the Debtor operated 136 Popeyes restaurants in Florida and Georgia. Seventeen of those restaurants have been closed.  The Debtor now turns its eyes towards a sale process for the remaining 119 restaurants.

6. While the Debtor has just begun the sale process, the Debtor seeks approval of the KEIP in connection with the sale process to ensure that the Debtor's key employees are incentivized to deliver their best performance throughout the sale process. The Debtor has selected 16 employees for participation in the KEIP (the "KEIP Participants"). The KEIP Participants include two officers: CEO David Damato and CFO Christine Borrack.

7. David Damato (the "CEO") as chief executive officer and Christine Borrack (the "CFO") as chief financial officer bring a wealth of experience to the Debtor. In those positions,

---

[2] *See* ECF No. 9.

70949/0001-52242284v7

they have a unique knowledge of the Debtor's day-to-day operations, the market for the Debtor's products, and the Debtor's current and historical financial condition. While the Debtor has employed David Baker (the "CRO") as its chief restructuring officer to aid the Debtor in the conduct of these chapter 11 cases, the CEO remains in charge of day-to-day operations. In fact, during the sale process, the CEO and CFO will have to continue to meet the extraordinary demand of maintaining the Debtor's daily operations while also coordinating responses to diligence requests and meeting with potential purchasers.

8. The KEIP Participants also include the Debtor's HR Director Helen Quinones, Controller Glen Corrediera, Interim COO Leslie Arnold, IT Director Alexander Comas, Regional Managers Brad Octave, Jai Miller, Nicholas Van Orden, and Frank Centeno, Regional Training Managers Travis Ohler, Wanda Vargas, and Raven Kirkland, Lease Administrator Amanda Rich, and Facilities Manager Erin Schwin. Each of these persons has experienced an increased workload in conjunction with the Debtor's chapter 11 filing. In response, each KEIP Participant has stretched to meet the Debtor's operational needs while also attending to the administrative necessities of a large chapter 11 bankruptcy.

9. Accordingly, the Debtor proposes the KEIP to incentivize the KEIP Participants to preserve enterprise value, maintain operational stability, and execute a value-maximizing transaction during the sale process. The KEIP is performance-based and has a primarily incentivizing effect.

10. Under the KEIP, the KEIP Participants shall be entitled to payment of up to $750,000.00 (the "KEIP Pool") upon the Debtor reaching certain milestones (the "KEIP Milestones"). The KEIP Participants shall be entitled to 50% ($375,000) of the KEIP Pool if the Debtor exceeds $3.90 million in average net weekly store level sales through the closing of the auction of the Debtor's assets (the "Sales Milestone"). The Sales Milestone does not account for

70949/0001-52242284v7

any rebates and may be adjusted for any store closures which occur prior to the auction. The KEIP Participants shall further be entitled to 50% ($375,000) of the KEIP Pool if the Debtor maintains a combined prime cost—defined as the sum of cost of goods sold and labor costs as a percentage of net sales—at or below 57.0% through the closing of the auction of the Debtor's assets (the "Prime Cost Milestone"). For the purposes of the Prime Cost Milestone, cost of goods shall include the cost of chicken, other food, vendor discounts, shortening, and paper, consistent with the Debtor's financial statements. Labor costs shall include all restaurant-level hourly and management labor costs. The Prime Cost Milestone shall be measured on a cumulative basis through the closing of the auction of the Debtor's assets.

11.    For the avoidance of doubt, the Sales Milestone and Prime Cost Milestone are independent of one another. The KEIP Participants shall be entitled to the amounts linked to each milestone upon the achievement of that milestone, regardless of whether the other milestone has been achieved.

12.    The run rate of weekly net sales during the bankruptcy has been $3.80-3.86 million. The run rate of prime costs has been 57.5%.

13.    Each KEIP Participant shall be entitled to receive up to the amounts listed on the KEIP Term Sheet attached hereto as **Exhibit B,** with half of such amounts awarded upon the achievement of the Sales Milestone and half upon achievement of the Prime Cost Milestone.

## RELIEF REQUESTED

14.    Pursuant to 11 U.S.C. § 105, 363, and 503(c), the Debtor requests the Court approve the KEIP.

## BASIS FOR RELIEF REQUESTED

15.    Section 363(b) of the Bankruptcy Code governs the use of estate property outside the ordinary course of business. However, § 503(c) places restrictions on certain types of

transactions. Section 503(c)(1) places strict limitations to payment for the benefit of insiders "for the purpose of inducing such person to remain with the debtor's business." Section 503(c)(2) restricts severance payments. Section 503(c)(3) prohibits transfers to officers outside the ordinary course of business unless "justified by the facts and circumstances of the case." The CEO and CFO are officers of the Debtor.

16.    While § 503(c)(1) applies to employee retention plans and § 503(c)(2) applies to severance payments, § 503(c)(3) "gives the court discretion as to bonus and incentive plans, which are not primarily motivated by retention or in the nature of severance." *In re Dana Corp.*, 358 B.R. 567, 576 (Bankr. S.D.N.Y. 2006). "[T]he test in section 503(c)(3) appears to be no more stringent a test than the one courts must apply in approving any administrative expense under section 503(b)(1)(A) … Accordingly, section 503(c)(3) give the court discretion as to bonus and incentive plans, which are not primarily motivated by retention or in the nature of severance." *Id.* A mere retentive effect does not necessitate finding a plan retentive rather than incentivizing. *Id.* at 571. "Courts have held that the 'facts and circumstances' language of section 503(c)(3) creates a standard no different from than the business judgment standard under section 363(b)." *In re Velo Holdings Inc.*, 472 B.R. 201, 212 (Bankr. S.D.N.Y. 2012).

17.    Courts consider a variety of factors to determine whether an incentive plan arises out of the debtor's sound business judgment. Those factors include: whether the plan is calculated to achieve the desired performance; whether the costs are reasonable in light of the debtor's finances; industry standards; diligence efforts in investigating the need for a plan; and whether independent counsel reviewed and authorized the plan. *In re Dana Corp.* 358 B.R. at 576-577.

18.    Here, the KEIP meets each of the *Dana Corp.* factors. The KEIP's metrics are tied to the Debtor's performance and, thus, will incentive the KEIP Participants' performance. A KEIP Pool of $750,000 is reasonable in light of KEIP Milestones and the Debtor's finances. Roughly

70949/0001-52242284v7

[nine] weeks remain between the filing of this Motion and the auction for the Debtor's assets. If the Debtor reaches the Sales Milestone, that performance would require total sales of at least [$30.6] million between the filing of this Motion and the auction, entitling the KEIP Participants to roughly 2.5% of sales if the Debtor also met the Prime Cost Milestone. The Debtor also submits that the KEIP meets or exceeds industry standards given the foregoing comparison of the KEIP Pool to the KEIP Milestones. Finally, the Debtor's professionals, including counsel, the CRO, and the Investment Banker, independently performed diligence and believe the KEIP is in the best interests of the Debtor's estate and will maximize returns.

19.     The Debtor is marketing its stores both as a whole as well as by region. If sold by region, the resulting companies may not need the services of the CEO or be large enough to justify retaining a manager with his experience and expertise. In other words, the KEIP incentivizes the CEO to maximize the value of the Debtor's assets while he knows that he is unlikely to continue to be employed post-sale. Finally, while all parties retain their right to object, the Debtor's cash collateral budget anticipated this request and has budgeted for the KEIP.

**WHEREFORE**, the Debtor respectfully requests that the Court enter the Proposed Order attached hereto as **Exhibit A**, granting the relief requested herein, and such other and further relief as the Court deems just and proper.

Dated: April 30, 2026

Respectfully submitted,

**SHRAIBERG PAGE P.A.**
*Attorneys for the Debtor Sailormen, Inc.*
2385 NW Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: bss@slp.law
Email: shess@slp.law

By: */s/ Bradley S. Shraiberg*
        Bradley S. Shraiberg
        Florida Bar No. 121622

70949/0001-52242284v7

Samuel W. Hess
Florida Bar No. 1044184

-and-

**COLE SCHOTZ, P.C.**
*Attorneys for the Debtor Sailormen, Inc.*
2121 SW 3rd Ave, Suite 200
Miami, FL 33129
Telephone: 305-374-4848
Email: lsalazar@coleschotz.com
Secondary Email: Alee-Sin@coleschotz.com
Secondary Email: CS-eservice-miami@coleschotz.com

By: */s/ Luis Salazar*
    Luis Salazar
    Florida Bar No. 147788

-and-

1201 Wills Street, Suite 320
Baltimore, MD 21231
Telephone: 410-230-0660
Facsimile: 410-406-6067
Gary H. Leibowitz, Esq. (admitted *pro hac vice*)
Maryland Bar No. 24717
Email: GLeibowitz@coleschotz.com
Irving Walker, Esq. (admitted *pro hac vice*)
Maryland Bar No. 00179
Email: IWalker@coleschotz.com
H.C. Jones, III, Esq. (admitted *pro hac vice*)
Maryland Bar No. 20064
Email: HJones@coleschotz.com
Natalie Gibson (admitted *pro hac vice*)
Maryland Bar No. 31350
Email: Ngibson@coleschotz.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via

Notice of Electronic Filing by CM/ECF to all parties registered to receive such service in this case

on April 30, 2026.

*/s/ Bradley S. Shraiberg*
Bradley S. Shraiberg

70949/0001-52242284v7

# EXHIBIT A

70949/0001-52242284v7

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                    Chapter 11

SAILORMEN, INC.,                                          Case No. 26-10451-RAM

      Debtor.[1]

_____ /

## PROPOSED ORDER APPROVING KEY EMPLOYEE INCENTIVE PLAN

This matter came before the Court for hearing on ____, 2026 upon the *Motion to Approve Key Employee Incentive Plan* [ECF No. XXX] (the "Motion")[2] filed by the Debtor. For the reasons stated on the record, and with the Court being fully advised in the premises, it is **ORDERED** and **ADJUDGED:**

1.      The Motion [ECF No. XXX] is **GRANTED**.

---

[1]    The Debtor in this Chapter 11 case and the last four digits of its federal tax identification number are Sailormen, Inc. (5214). The location of the Debtor's corporate headquarters and the Debtor's service address in this chapter 11 case is Miami, Florida.

[2]    All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

2.	The KEIP is approved on the terms described in the Motion.

3.	The debtor is authorized to take all actions necessary to implement the KEIP and to pay the KEIP awards up to a maximum of $750,000 in accordance with the terms of the KEIP and the KEIP Milestones.

4.	All amounts earned and payable under the KEIP shall have administrative expense priority under sections 503(b) and 507(a)(2) of the Bankruptcy Code for all purposes in this Chapter 11 Case and in any other case under the Bankruptcy Code to which this case may be converted.

5.	The Court shall retain jurisdiction as to all matters arising from or related to the implementation of this Order.

# # #

Submitted by:

Bradley S. Shraiberg, Esq.
SHRAIBERG PAGE P.A.
*Counsel for the Debtor*
2385 NW Executive Center Dr., Suite 300
Boca Raton, FL 33401
Telephone: (561) 433-0800
bss@slp.law


*Bradley Shraiberg, Esq. is directed to serve copies of this Order upon all interested parties and to file a certificate of service with the Court.*

70949/0001-52242284v7

# EXHIBIT B

70949/0001-52242284v7

**Sailormen, Inc.**

**Proposed Language for KEIP Motion — Updated Structure**

**<u>Sales Milestone</u>**

The key employees shall be entitled to 50% ($375,000) of the KEIP Pool if the Debtor achieves average net weekly store level sales of at least $3.90 million through the closing of the auction of the Debtor's assets (the "Auction Close"). The Sales Milestone shall be measured across all locations actively operating at the time of measurement and shall not account for any rebates. The Sales Milestone may be adjusted for any store closures which occur prior to the Auction Close.

**<u>Prime Cost Milestone</u>**

The key employees shall be entitled to 50% ($375,000) of the KEIP Pool if the Debtor maintains a combined prime cost — defined as the sum of cost of goods sold and labor costs as a percentage of net sales — at or below 57.0% through the Auction Close (the "Prime Cost Milestone"). For the purposes of the Prime Cost Milestone, cost of goods sold shall include the cost of chicken, other food, vendor discounts, shortening, and paper, consistent with the Debtor's financial statements. Labor costs shall include all restaurant-level hourly and management labor costs. The Prime Cost Milestone shall be measured on a cumulative basis through the Auction Close.

**<u>Independence of Milestones</u>**

For the avoidance of doubt, the Sales Milestone and Prime Cost Milestone are independent of one another. The key employees shall be entitled to the amounts linked to each milestone upon achievement of that milestone, regardless of whether any other milestone has been achieved.

| Component | Metric | Run Rate | Threshold | Payout | % of Total KEIP |
|---|---|---|---|---|---|
| Sales | Average weekly sales across all operating locations | $3.80M – $3.86M | ≥ $3.90M avg. weekly sales through auction close | $375,000 | 50% |
| Prime Costs | Combined COGS + Labor as % of sales | ~57.5% | ≤ 57.0% combined prime cost through auction close | $375,000 | 50% |
| **Maximum Total Payout** | | | | **$750,000** | **100%** |

**Notes:**

- The shift from "gross profit" to "prime cost" requires updating the definition section. Prime cost adds labor to the existing COGS definition already in the motion — the food cost components (chicken, paper, shortening, etc.) can remain as defined.

**Sailormen, Inc.**
**KIEP Proposal**                                                      KEIP Pool  $        750,000

| Name | Position | | Allocation |
|---|---|---|---|
| David Damato | CEO | $ | 450,000 |
| Christine Borrack | CFO | $ | 75,000 |
| Helen Quinones | HR Director | $ | 45,000 |
| Glen Corrediera | Controller | $ | 30,000 |
| Leslie Arnold | Interim COO | $ | 45,000 |
| Alexander Comas | IT Director | $ | 30,000 |
| Brad Octave | Regional Manager | $ | 15,000 |
| Jai Miller | Regional Manager | $ | 15,000 |
| | | | |
| Nicholas Van Orden | Regional Manager | $ | 15,000 |
| Frank Centeno | Regional Manager | $ | 5,000 |
| Travis Ohler | Regional Training Manager | $ | 5,000 |
| Wanda Vargas | Regional Training Manager | $ | 5,000 |
| Raven Kirkland | Regional Training Manager | $ | 5,000 |
| Amanda Rich | Lease Administrator; Landlord Relations | $ | 5,000 |
| Erin Schwin | Facilities Manager | $ | 5,000 |
| | | **$** | **750,000** |

# Sailormen & Interfoods Support Center



Legend
Blue: In House
Orange: Outsourced

# Interfoods Support Center



**Legend**
Blue: In House
Orange: Outsourced

# Sailormen Operations

