**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

In re

SAILORMEN, INC.,                                          Case No. 26-10451-RAM
                                                          Chapter 11

        Debtor.

_____/

**LIMITED OBJECTION OF SVC ABS LLC TO NOTICE OF**
**POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE**

SVC ABS LLC (as successor in interest to Spirit Master Funding, LLC and Spirit Master Funding III, LLC) (the "Landlord") hereby files this limited objection (this "Limited Objection") to the *Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Sale* [Docket No. 543, Exhibit G] (the "Cure Notice"), served on May 18, 2026. Sailormen, Inc. (the "Debtor") and Landlord are party to a Master Lease comprising of nine locations. In its Cure Notice, however, the Debtor identifies only seven of the nine locations and lists each location individually as if under separate leases. The Debtor cannot sever individual locations from the Master Lease or separately assume and assign locations without the consent of the Landlord. In addition, the Landlord requests that any sale order expressly provide for the assignee's continued obligation to perform or pay lease obligations as and when they become due and payable, and the reimbursement of pecuniary losses incurred by the Landlord. Landlord is filing this Limited Objection to preserve its rights, claims and defenses with respect to the Master Lease. In further support of this Limited Objection, the Landlord states as follows:

**The Master Lease**

1. Debtor and Landlord (as successor in interest to Spirit Master Funding, LLC and Spirit Master Funding III, LLC) are parties to that certain Master Lease Agreement, dated January 31, 2014

(as may have been amended from time to time, the "Master Lease") covering nine locations (collectively, the "Leased Premises"):  (i) 5534 NW 7th Avenue, Miami, FL; (ii) 2490 NW 79th Street, North Miami, FL; (iii) 233 W. Hillsboro Boulevard, Deerfield Beach, FL; (iv) 3291 W. Broward Boulevard, Fort Lauderdale, FL; (v) 3411 N. Pace Boulevard, Pensacola, FL, (vi) 2877 Target Drive, St. Louis, MO, (vii) 9854 Halls Ferry Road, St. Louis, MO, (viii) 3499 W Oakland Park Boulevard, Lauderdale Lakes, FL, and (ix) 107 S. 25th Street, Ft. Pierce FL.

2.      The Master Lease is a triple-net lease (NNN).  The Debtor is responsible for paying real estate taxes, insurance and utilities for, and repairing and maintaining the buildings and improvements on, each of the properties comprising the Leased Premises.  *See id*. at Articles IV, VI and VII.

3.      Debtor's obligations under the Lease are guaranteed by non-Debtor Interfoods of America, Inc. ("Guarantor") pursuant to the terms of that certain Unconditional Guaranty of Payment and Performance dated as of January 31, 2014 (the "Guaranty").

## Limited Objection

4.      In the Cure Notice, the Debtor identifies seven of the nine locations comprising the Leased Premises under the Master Lease as if they were each under a separate "lease" that is eligible to be assumed and assigned as part of a sale.  That is not the case.  The Debtor does not even reference the two Missouri locations.  All nine locations are leased to the Debtor under a single Master Lease.

5.      The Cure Notice misstates the true nature and legal structure of the Master Lease. Individual locations under the Master Lease cannot be severed or assumed and assigned separately. The Master Lease is unambiguously an inseverable, indivisible agreement and therefore the Debtor is not free to assign some but not all of the locations covered thereunder without the Landlord's consent.

6.      The question of whether a lease is severable or not is one of state law.  *See, e.g.*, *In re United Air Lines*, 453 F.3d 463, 467 (7th Cir. 2006) ("Contract severability, as the bankruptcy and district courts correctly pointed out, is a question of state law"); *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 739 (5th Cir. 1996); *In re Payless Cashways*, 203 F.3d 1081, 1084-85 (8th Cir. 2000); *In re Gardinier, Inc.*, 831 F.2d 974, 975-76 (11th Cir. 1987).

7.      Under the laws of Florida and Missouri (the states in which the Leased Premises are located), the test for severability depends on the intent of the parties.  *See, e.g., National Millwork, Inc. v. ANF Group, Inc.*, 253 So.3d 1261 (2018) (although not a case construing a master lease, the court adopts a general rule of contract interpretation that the intent of the parties determines severability of a contract) (*citing*, *e.g.*, *Shotts v. OP Winter Haven, Inc.*, 86 So.3d 456, 475 (Fla. 2011)); *Swinney v. Continental Bldg. Co.*, 340 Mo. 611 (1937) (although there is no Missouri case construing a master lease, this case establishes that in Missouri the question of whether a contract is severable is primarily a question of the parties' intention).  *See also Don L. Tullis and Associates, Inc. v. Benge*, 473 So.2d 1384 (1985) (court looks to practical aspects of the contract in interpreting the severability of an agreement) (*citing Biltmore Systems, Inc. v. Mai Kai, Inc.*, 413 So.2d 458 (Fla. 4th DCA 1982)).

8.      Here, the language of the Master Lease clearly states that the parties intended for the Master Lease to be a non-severable agreement:

> Lessor and Lessee intend that:  (i) this Lease constitutes an unseverable, unitary and single lease of all, but not less than all, of the Properties, and, if at any time this Lease covers other real property in addition to the Properties, neither this Lease, nor Lessee's obligations or rights hereunder may be allocated or otherwise divided among such properties by Lessee . . . .

Master Lease at §16.04(a) (a copy of the Master Lease is available upon request).  Furthermore, Debtor waived the right to assert any claim or defense that the Master Lease is anything other than

a single agreement and agreed not to challenge the enforceability of the Master Lease as unseverable instruments, stating:

> Lessee waives any claim or defense based upon the characterization of this Lease as anything other than a true lease and as a master lease of all of the Properties.  Lessee stipulates and agrees:  (i) not to challenge the validity, enforceability or characterization of the lease of the Properties as a true lease and/or as a single, unitary, unseverable instrument pertaining to the lease of all, but not less than all, of the Properties; and (ii) not to assert or take or omit to take any action inconsistent with the agreements and understandings as set forth in this Section 16.04.

Master Lease at §16.04(b).

9. Furthermore, the Master Lease provides for a single aggregate annual base rent amount and a single lease expiration date for all nine locations comprising the Leased Premises. *See* Master Lease at §§ 1.02, 1.05.

10. The intention of the parties as set forth explicitly in the Master Lease is controlling and clear that the Master Lease is not a severable agreement.  As a result, the Debtor must assume, assume and assign or reject the Master Lease, comprising nine locations, as a single unexpired real property lease absent the Landlord's consent.

### Cure Objection

11. The Landlord does not object to the aggregate amount of the cure costs listed in the Cure Notice, as of June 17, 2026, with respect to the monetary defaults under the Master Lease. The Landlord reserves the right to amend this Limited Objection to add any defaults in the payment or performance of the Debtor's lease obligations that become due or payable under the Master Lease, or arise, from and after June 17, 2026.

12. The Landlord further requests reimbursement of its actual pecuniary losses resulting from the Debtor's defaults under the Master Lease.  The Landlord is entitled under section 365(b)(1)(B) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy

4

Code") and the Master Lease, including under Sections 10.01 (Indemnification), 12.02 (Remedies), 16.07 (Attorney's Fees), to be reimbursed for its actual pecuniary losses, including, but not limited to, attorneys' fees and costs incurred in response to and directly resulting from the Debtor's defaults and as part of the Debtor's contemplated sale process and chapter 11 case. *See*, *e.g.*, *Travelers Cas. & Su. Co. of Am. v. Pacific Gas and El. Co.*, 127 S. Ct. 1199, 1203 (2007) (holding that a party is entitled to be reimbursed for its attorneys' fees when there exists an "enforceable contract allocating attorneys' fees"); *In re Beltway Medical, Inc.*, 358 B.R. 448, 453 (Bankr. S.D. Fla. 2006) ("Where the trustee or debtor-in-possession fails to perform the primary obligation under the lease (i.e. to pay rent), and the landlord incurs legal fees seeking to obtain payment, it follows that the attorney's fees, if authorized under the lease and linked to enforcement of the payment obligation, are entitled to the same administrative priority as the rent obligation"); *In re Entertainment, Inc.*, 223 B.R. 141, 152- 154 (Bankr. E.D. Ill. 1998) (interest and attorneys' fees must be paid as provided for in the assumed lease); *In re MS Freight Distribution, Inc.*, 172 B.R. 976, 978 (Bankr. W.D. Wash. 1994) ("the legislative history of [section 365(d)(3)] and the language of the section itself mandate that a lessor be paid interest, late fees, and legal fees incurred in the first 60 days of the bankruptcy case").

13.    As of June 12, 2026, the Landlord has incurred attorneys' fees and costs in an amount of at least $87,240, which amount should be added to and included in the Landlord's allowed cure claim to the extent not resolved by agreement of the parties.

**Adequate Assurance Objection**

14.    Pursuant to sections 365(b)(1) and (f)(2)(B) of the Bankruptcy Code, if there has been a default, a debtor may assume and assign a lease only if "adequate assurance of future performance by the assignee of such . . . lease is provided . . . ." It is Landlord's understanding that any successful purchaser will continue using the Leased Premises to operate Popeyes

restaurants.  Adequate assurance also includes assurance of an assignee's ability to continue to perform monetary and non-monetary obligations under the Master Lease.  *See*, *e.g.*, *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996) (section 365(b) is designed to ensure that parties receive the benefit bargained for if a lease or contact is assumed).  In this case, the Landlord is focused on obtaining adequate assurance that any assignee will not hide behind any language in a sale order to avoid having to pay real estate taxes, utilities, insurance and other NNN obligations related to the occupancy of the Leased Premises, or to avoid having to perform non-monetary repair and maintenance obligations, based on an argument that such obligations may have arisen prior to the closing of the assumption and assignment of the Master Lease, although they become due for payment or performance after the closing.

15.    The order of the Court approving the assumption and assignment of the Master Lease should expressly state that any assignee of the Master Lease shall continue to be liable for the payment and performance of all obligations under the Master Lease that become due or payable from and after the date of the closing of the sale, including, without limitation, any real estate taxes, utilities, insurance and repair and maintenance obligations, regardless of whether such obligations arose or are attributable to the period prior to the closing of the sale (the "Accrued Obligations").  It is up to the Debtor and the successful purchaser to make whatever adjustments are needed to reflect the allocation as between them of these responsibilities for payment and performance of Accrued Obligations.

16.    Similarly, Sections 8.04(e) and 10.01 of the Master Lease provide that the Debtor must indemnify and hold harmless the Landlord from and against any losses arising out of or related to, *inter alia*, environmental laws, remediation claims and personal injury claims.  The Court's order approving the assumption and assignment of the Master Lease should expressly state that the assignee will remain liable to pay any and all indemnification obligations as, and when,

they become due and payable under the Master Leases, regardless of whether they arose or are attributable to the period prior to the closing of the sale.

17.    Furthermore, pursuant to its own terms, the Guaranty expressly states that it is a "continuing guaranty" and:

> [T]he obligations, undertakings and conditions to be performed or observed by Guarantor under this Guaranty shall not be affected or impaired by reason of the happening from time to time of the following with respect to the Documents, all without notice to, or the further consent of, Guarantor: . . . (f) the assignment to or assumption by any third party of any or all of the rights or obligations of Lessee under all or any of the Documents; (g) the release or discharge of Lessee from the performance or observance of any obligation, undertaking or condition to be performed by Lessee under any of the Documents by operation of law, including any rejection or disaffirmance of any of the Documents in any bankruptcy or similar proceedings . . . .

*See* Guaranty at § 3.

### Reservation of Rights

18.    The Landlord reserves its rights to supplement this Limited Objection with additional obligations and costs (including without limitation attorneys' fees and expenses and any unpaid post-petition rent and charges) that may arise under the Master Lease prior to the effective date of any assumption of the Master Lease.  Further, the Landlord reserves its right to object to an assignment of the Master Lease based on adequate assurance of future performance grounds if a successful purchaser is announced.  As of the time of filing, the Debtor has not provided any information regarding the proposed assignee and has left the Landlord with no time to assess the assignee's ability to demonstrate adequate assurance of future performance.

19.    Nothing herein shall be interpreted as consent by the Landlord to the assumption or assignment of the Master Lease or to the severability of the Master Lease.  All of Landlord's objections and defenses to any request by the Debtor to assume or assume and assign the Master Lease are expressly preserved.

7

## **Joinder**

20.    In addition to the foregoing, Landlord further joins in the other objections filed by parties in interest to the Cure Notice (or *Motion of the Debtor and Debtor-in-Possession for Entry of an Order Authorizing and Approving (I) the Sale of Substantially all of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests and (II) the Assignment and Assumption of Certain Executory Contracts and Unexpired Leases* [Docket No. 396]) to the extent that such objections are not inconsistent with the relief requested in this Limited Objection (or any subsequent resolution of the foregoing).

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Landlord respectfully requests that the Court (i) find that the Master Lease is not severable as implied by the Debtor in its Cure Notice absent agreement of the Landlord to amend the Master Lease, (ii) direct the payment to Landlord of at least $87,240 (as of June 12, 2026) in attorney's fees and costs as pecuniary losses reimbursable under the terms of the Master Lease to the extent not resolved by agreement, (iii) require that all Accrued Obligations be paid or performed as, and when, they become due or payable under the Master Lease, regardless of when they arose, (iv) require that all indemnification claims of the Landlord be preserved and paid as, and when, they become due and payable under the Master Lease, regardless of when they arose, (v) require that any assignee demonstrate adequate assurance of future performance as required under the Bankruptcy Code, and (vii) grant to the Landlord such other and further relief as the Court deems just and proper.

Dated: June 17, 2026

Respectfully Submitted,

/s/ *Harris J. Koroglu*

Harris J. Koroglu
Florida Bar No. 32597
**SHUTTS & BOWEN LLP**
200 South Biscayne Blvd., Suite 4100
Miami, FL 33131
Telephone: (305) 347-7314
E-mail: hkoroglu@shutts.com

- and-

Douglas B. Rosner (admitted *pro hac vice*)
**GOULSTON & STORRS PC**
One Post Office Square
Boston, MA 02109
Telephone: (617) 482-1776
E-mail: drosner@goulstonstorrs.com

*Counsel for SVC ABS, LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via served

via ECF on all parties receiving electronic notice in this case on June 17, 2026.

*/s/ Harris J. Koroglu*
Harris J. Koroglu