**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

SAILORMEN, INC.,[1]                    Case No: 26-10451-RAM

Debtor.                                Chapter 11

_____ /

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE**
**OF UNSECURED CREDITORS TO DEBTOR'S MOTION FOR**
**ENTRY OF AN ORDER AUTHORIZING AND APPROVING**
**(I) THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTOR'S**
**ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES,**
**AND INTERESTS AND (II) THE ASSIGNMENT AND ASSUMPTION**
**OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the

chapter 11 case (the "Chapter 11 Case") of the above-captioned debtor and debtor-in-possession

(the "Debtor"), by and through its undersigned counsel, hereby submits this limited objection (the

"Limited Objection") to the *Motion of the Debtor and Debtor-in-Possession for Entry of an Order*

*Authorizing and Approving (I) The Sale of All or Substantially All the Debtor's Assets Free and*

*Clear of All Liens, Claims, Encumbrances, and Interests and (II) The Assignment and Assumption*

*of Certain Executory Contracts and Unexpired Leases* [Docket No. 396] (the "Sale Motion").  In

support of this Limited Objection, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**[2]

1.        The Committee does not seek to block or delay the sale of the Debtor's assets and

---

[1]    The Debtor in this chapter 11 case and the last four digits of its federal tax identification number are Sailormen, Inc. (5214).  The location of the Debtor's corporate headquarters and the Debtor's service address in this chapter 11 case is Miami, Florida.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them below or in the Motion, as applicable.

recognizes that a prompt sale is essential to maximizing value for all stakeholders.  But speed cannot come at the expense of preserving estate value that may be the only source of recovery for unsecured creditors.  The Challenge Stipulation between the Committee and BMO establishes that the Lender Parties do not hold perfected prepetition liens on specified categories of the Debtor's assets, including real property leases, commercial tort claims, and certain letter-of-credit rights (collectively, the "Unencumbered Assets").  Those assets—and the proceeds attributable to them—cannot be swept to BMO at closing without first determining how the sale proceeds should be allocated.

2.    However, that is precisely what the proposed sale order would permit (the "Proposed Order").  Although the Proposed Order contemplates that liens and interests will attach only to the "applicable allocated portion" of sale proceeds, the Sale Motion provides no process for determining that allocation before directing that all net sale proceeds "shall be paid to the Prepetition Agent."  *See* Sale Motion, Ex. A at ¶¶ 27, 36.  The result would be to give BMO immediate control over sale proceeds that are attributable to assets outside its prepetition lien package (i.e., real estate leases), leaving the estate (and, in particular, the Committee) to litigate allocation only after the money has already changed hands.

3.    Through this Limited Objection, the Committee requests that no sale proceeds be distributed to BMO until the parties agree, or the Court determines, what portion of the sale proceeds is allocable to the Unencumbered Assets as opposed to BMO's collateral.  In the interim, all sale proceeds should be held in escrow or otherwise segregated pending resolution of the allocation issue.

4.    The Committee's counsel discussed this issue with BMO's counsel during the

Auction, but the issue remains outstanding as of the filing of this Limited Objection.

5.       For the avoidance of doubt, the Committee is not asking the Court to decide the allocation at the Sale Hearing, nor is it seeking to interfere with the closing or impair any purchaser's rights.  Rather, the Committee requests appropriate protections to ensure that the Challenge Stipulation is not rendered meaningless by the mechanics of the sale closings.  This issue is especially important given that chief among the assets to be sold are almost 100 real property leases.

## BACKGROUND

### A.       The Chapter 11 Case

6.       On January 15, 2026 (the "Petition Date"), the Debtor commenced this Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Court").

7.       No trustee or examiner has been appointed in the Chapter 11 Case.  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor continues to operate its business as a debtor in possession.

8.       Information regarding the Debtor's history, business operations, capital structure, secured indebtedness, and the events leading up to the commencement of the Chapter 11 Case can be found in the *Declaration of David M.  Baker in Support of First-Day Motions* [Docket No.  9].

### B.       The Cash Collateral and the Challenge Stipulation

9.       On the Petition Date, the Debtor filed the Emergency Motion for Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to the Lenders, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief [Docket No. 4] (the "Cash Collateral Motion"), seeking authority to use the cash collateral of BMO Bank, N.A.

- 3 -

("BMO"), the Debtor's prepetition secured lender.  BMO asserts a claim of approximately $130 million secured by liens on substantially all of the Debtor's personal property.

10.    On March 13, 2026, the Court entered the Final Cash Collateral Order (I) Authorizing the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Modifying Automatic Stay; and (IV) Granting Related Relief [Docket No. 327] (the "Final Cash Collateral Order").

11.    On April 15, 2026, the Court entered an order approving the stipulation between the Committee and BMO resolving the Committee's lien challenges [Docket Nos. 421, 422] (the "Challenge Stipulation").  The Challenge Stipulation established that the Lender Parties do not hold any perfected prepetition liens on the Debtor's interest in: (i) real property, including leases or rents thereunder, created under the Debtor's real property leases under which the Debtor is the lessee; (ii) commercial tort claims; or (iii) certain letters of credit under which the Debtor is a beneficiary and corresponding letter-of-credit rights to the extent perfection must be effected through control under the UCC.  *See* Challenge Stipulation at ¶ 1.

**C.    The Proposed Sale**

12.    On March 20, 2026, the Court entered the Bidding Procedures Order [Docket No. 378], which established, among other things, a bid deadline of June 11, 2026, an auction date of June 15, 2026, and a sale hearing date of June 18, 2026 (the "Sale Hearing").

13.    On March 25, 2026, the Debtor filed the Sale Motion, seeking approval of the sale of all or substantially all of the Debtor's assets free and clear of all liens, claims, encumbrances, and interests.

14.    The Proposed Order contemplates that, following closing and payment of closing costs, cure amounts, disputed cure amount reserves, and accrued administrative expenses, the "net sale proceeds shall be paid to the Prepetition Agent"—*i.e.*, BMO.  *See* Sale Motion, Ex. A at ¶ 36.

- 4 -

The Sale Motion provides no mechanism to allocate sale proceeds between encumbered and Unencumbered Assets before that cash distribution occurs.

## LIMITED OBJECTION

15.     The Committee submits that no sale proceeds should be distributed to BMO until the parties have agreed, or the Court has determined, what portion of the sale proceeds is allocable to the Unencumbered Assets as opposed to BMO's collateral.  In the interim, proceeds should be held in escrow or otherwise segregated.  This is particularly relevant here given that the Lender Parties do not have a perfected prepetition lien on real estate leases and among the key assets that will be sold are the Debtor's real estate leases.[3]

16.     The Challenge Stipulation established, as between the Committee and BMO, that the Lender Parties do not hold any perfected prepetition liens on the Unencumbered Assets.  *See* Challenge Stipulation at ¶ 1.  The Proposed Order, however, provides no mechanism to allocate the sale proceeds between the Lender Parties' collateral and the Unencumbered Assets.  Instead, it directs that *all* net sale proceeds "shall be paid to the Prepetition Agent."  *See* Sale Motion, Ex. A at ¶ 36.  Distribution of sale proceeds to BMO before the allocation of proceeds as between Collateral and Unencumbered Assets has been resolved would effectively nullify the Challenge Stipulation.

17.     Moreover, the value of the Unencumbered Assets sold here may be a material source of recovery for the estate and, in the Committee's estimation, is meaningful as the Debtor is seeking to sell approximately 119 restaurants operating under real property leases in several desirable Florida markets, including Miami.  If *all* sale proceeds are paid out to BMO at closing without any mechanism to preserve the value attributable to the Unencumbered Assets sold, the

---

[3] It is worth noting here that no causes of action are being sold.

estate will likely be left with nothing—notwithstanding that certain of these estate assets are beyond BMO's collateral reach.  *See* Challenge Stipulation.

18.    Accordingly, the Committee respectfully requests that the Court require—as a condition to approval of the sale—that no sale proceeds be distributed to BMO until the parties agree, or the Court determines, what portion of the sale proceeds is allocable to the Unencumbered Assets.  In the interim, proceeds should be held in escrow or otherwise segregated at closing.

## CONCLUSION

For the foregoing reasons, the Committee respectfully requests that the Court: (i) condition approval of the Sale Motion on the requirement that no sale proceeds be distributed to BMO until the parties agree, or the Court determines, the allocation of proceeds between encumbered and Unencumbered Assets; (ii) require that, in the interim, proceeds be held in escrow or otherwise segregated at closing; and (iii) grant such other and further relief as the Court deems just and proper.

[*Remainder of page is intentionally left blank*]

Dated: June 17, 2026

Respectfully submitted,

**STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.**
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 789-3200
Facsimile:   (305) 789-3395

By: */s/  Eric J. Silver*
Eric J. Silver, Esq.
Florida Bar No. 057262
esilver@stearnsweaver.com

-and-

**LOWENSTEIN SANDLER LLP**

David Posner, Esq. (admitted *pro hac vice*)
Daniel Besikof, Esq. (admitted *pro hac vice*)
Gianfranco Finizio, Esq. (admitted *pro hac vice*)
Colleen Restel, Esq. (admitted *pro hac vice*)
Brittany Clark, Esq. (admitted *pro hac vice*)
1251 Avenue of the Americas, 17th Floor
New York, New York 10020
Telephone: (212) 262-6700
Facsimile:  (212) 262-7402
Email:  DPosner@lowenstein.com
        DBesikof@lowenstein.com
        GFinizio@lowenstein.com
        CRestel@lowenstein.com
        BClark@lowenstein.com

*Counsel to the Official Committee of Unsecured
Creditors*

7

#14819199 v1