**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

SAILORMEN,[1]                                      Case No. 26-10451 (RAM)

                        Debtor.                    Chapter 11

---

**ARC CAFEUSA001, LLC; CNL APF PARTNERS, LP; ARC DBPPROP001, LLC; CNL AMERICAN PROPERTIES FUND, INC.; REALTY INCOME CORPORATION D/B/A REALTY INCOME PROPERTIES, INC.; AND ARC CAFEHLD001, LLC'S OBJECTION TO DEBTOR'S NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE**

---

ARC CAFEUSA001, LLC; CNL APF Partners, LP; ARC DBPPROP001, LLC; CNL American Properties Fund, Inc.; Realty Income Corporation d/b/a Realty Income Properties, Inc.; and ARC CAFEHLD001, LLC (collectively "Realty Income" or "RIC"), by and through its undersigned attorneys, hereby make this objection (the "Objection") to Debtor's *Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Sale* (the "Cure Notice") [Doc. 543], and state as follows:

**PRELIMINARY STATEMENT**

1.      RIC's objection stems from the Cure Amounts set forth in the Cure Notice, which do not reflect all outstanding balances due and owing to RIC, and do not account for accruing but unbilled charges which may come due in the future. The Cure Amounts set forth by the Debtor must be modified to reflect additional charges owing, including outstanding taxes, as well as recognize the liability for accruing charges due under the Leases, as set forth herein.

---

[1] The Debtor in this Chapter 11 case and the last four digits of its federal tax identification number are Sailormen, Inc. (5214). The location of the Debtor's corporate headquarters and the Debtor's service address in this chapter 11 case is Miami, Florida.

2.	RIC has been in communication with Debtor's counsel in relation to the pending auction and will continue to work with Debtor's counsel in advance of the June 18, 2026 hearing to determine if some or all of the issues raised in this Objection can be resolved amicably. RIC files this Objection to reserve all of its rights to assert Cure Amounts that RIC would otherwise be entitled to, but for any potential amendments to the Leases.

## BACKGROUND

3.	On January 15, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor, as debtor-in-possession, continue to operate its businesses and manage its properties pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.[2]

4.	On February 12, 2026, the United States Trustee appointed an official committee of unsecured creditors (the "Committee").

5.	On March 13, 2026, the Debtor filed the Motion of the Debtor and Debtor-in Possession for Entry of an Order (I) Approving Bidding Procedures for the Sale of All or Substantially All the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Approving the Form of Asset Purchase Agreement; (III) Authorizing the Debtor to Enter Into Stalking Horse Agreements and Approving Bid Protections for Any Stalking Horse Bidders; (IV) Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases; (V) Scheduling an Auction for, and Hearing to Approve, the Sale of All or Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (VI) Approving the Form and Manner of Sale Notice; and (VII) Granting Related Relief (Doc. 330) (the "Bidding Procedures Motion").

6.	On March 20, 2026, the Court entered the Order (I) Approving Bidding Procedures for the Sale of All or Substantially All the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Approving the Form of Asset Purchase Agreement; (III)

---

[2] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

Authorizing the Debtor to Enter Into Stalking Horse Agreements and Approving Bid Protections for Stalking Horse Bidders; (IV) Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases; (V) Scheduling an Auction For, and Hearing to Approve, the Sale of All or Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (VI) Approving the Form and Manner of Sale Notice; and (VII) Granting Related Relief (Doc. 378) (the "Bidding Procedures Order").

7.    On May 19, 2026, Debtor filed its Certificate of Service with Exhibit G attached thereto, which included its cure notice, dated May 18, 2026 ("Cure Notice") [Doc. 543], which, amongst other things, sets out the proposed Cure Amounts for each Potential Assumed Contract.

8.    Pursuant to the Bidding Procedures Order the following was to have occurred:

i.    The Auction – June 15, 2026. On information and belief, the auction has not concluded. *See* Bidding Procedures Order at ¶ 11.

ii.    Notice of Successful Bidders – 11:59 p.m. on the date of the Auction (June 15, 2026). *See* Bidding Procedures Order at ¶ 14.

iii.    Adequate Assurance Deadline – by 11:59 p.m. June 15, 2026, Debtor is to provide counter parties "adequate assurance of future performance under Section 365." *See* Bidding Procedures Order at ¶ 23.

9.    On June 15, 2026, Debtor filed a Notice of Debtor's Extension of Deadlines to Provide Adequate Assurance Information and Successful Bidder(s) (Doc. 616), stating that the Adequate Assurance Information and Notice of Successful Bidder(s) would be provided by 11:59 p.m. June 16, 2026. Per this notice, the extension was due to the auction having not concluded. Again, on June 16, 2026, the Debtor filed a Notice of Debtor's Second Extension of Deadlines to Provide Adequate Assurance Information and Successful Bidder(s) (Doc. 643), further stating the auction had not concluded and asserting that the Adequate Assurance Information and Notice of Successful Bidder(s) would be provided by 11:59 p.m. June 17, 2026.

10.    Therefore, depending on how the continued auction progresses on June 17, 2026, Realty Income (and other landlords or counter parties) could be forced to evaluate adequate

assurance information "through the night" considering the outside time for Debtor to provide this information is approximately 9.5 hours prior to the hearing on June 18, 2026.

## THE LEASES

11. Realty Income is the Debtor's landlord pursuant to certain unexpired nonresidential leases related to approximately fourteen (14) properties in Georgia and Florida (the "Leases"). Additionally, five of the fourteen properties are pursuant to a unitary and indivisible master agreement ("Master Lease Agreement"), which are as follows: 2216 East Fletcher Avenue, Tampa, FL (Store Number 5321), 108 South Kings Avenue, Brandon FL (Store Number 2153), 2550 North US Highway 98, Lakeland, FL (Store Number 4904), 5760 South Orange Blossom Trail, Orlando, FL (Store Number 8981), and 1509 University Blvd., Jacksonville, FL (Store Number 2078). The Cure Notice indicates that the five properties under the Master Lease Agreement are included for each Potential Assumed Contract. *See* Doc. 543.

## OBJECTION

**A.     The Debtor's Proposed Cure Amounts Must Provide for Payment of all Obligations under the Leases.**

12. To assume and assign the Master Lease, the Debtor must comply with Section 365(b)(1) of the Bankruptcy Code which provides that:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A)     cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph. . .

4

U.S.C. § 365(b)(1). RIC's Cure Amounts for the payments owed are summarized below[3]:

| RI Prop # | Debtor's Store No. | Address | Debtor's Cure Amount | RIC's Cure Amounts |
|---|---|---|---|---|
| 10954[4] | 2078 | 1509 University Blvd. Jacksonville, FL | $47,015.42 | $53,094.24 |
| 10955[5] | 4904 | 2550 N US Hwy 98 Lakeland, FL | $32,664.21 | $44,559.68 |
| 10932 | 2198 | 3285 NW 183rd Street Carol City, FL | $62,446.99 | $85,404.31 |
| 10944 | 4806 | 25 6th St SW Winter Haven, FL | $30,163.27 | $42,769.11 |

13. The Debtor must cure or provide adequate assurance that they will promptly cure all defaults. This requirement is essential for the assumption of an unexpired lease. *See In re Uniq Shoes Corp.*, 316 B.R. 748, 750-53 (Bankr. S.D. Fla. 2004); *In re Senior Care Ctrs., LLC*, 607 B.R. 580, 588 (Bankr. N.D. Tex. 2019); *In re IYS Ventures, LLC*, 659 B.R. 308, 322 (Bankr. N.D. Ill. 2024). Thus, if the Debtor determines to assume and assign the Leases, the assumption and assignment must include the obligations under the Leases and Master Lease. In addition to the outstanding accrued amounts due under the Leases, in determining what must be paid as cure pursuant to Section 365(b), the charges referenced below must also be taken into consideration, either as cure or when properly billed under the Leases and Master Lease.

---

[3] RIC's Cure Amounts, as set forth in Schedule 1, do not include any charges that are billed or will come due after the filing of this Objection or charges that are billed directly to the Debtor, including, real estate taxes. To the extent RIC is later billed for any amount due to the Debtor's failure to pay, RIC reserves the right to amend the Objection to include such amounts. The Debtor must timely pay all rent and other Lease obligations as they come due under the Leases, and RIC reserves the right to payment (and to amend this Objection to the extent necessary) for any amounts that come due under the Leases through the date of any assumption and assignment and cure payment.

[4] This premises, as well as Store Numbers 5321, 2153, and 4904, fall under the Master Lease Agreement. For the avoidance of doubt, RIC is clarifying the proper cure amount for this premises for informational purposes only and does not concede the severability of the Master Lease Agreement.

[5] This premises, as well as Store Numbers 5321, 2153, and 2078, fall under the Master Lease Agreement. For the avoidance of doubt, RIC is clarifying the proper cure amount for this premises for informational purposes only and does not concede the severability of the Master Lease Agreement.

        *i.*        *Assumption and Assignment Must be Com Onere*

14.     The Master Lease Agreement is an enforceable, unexpired lease that must be assumed or rejected *in toto*. A debtor cannot simply assume the benefits and reject the unfavorable aspects of the same contract. *See Stewart Title Guar. Co. v. Old Republic Nat. Title Ins. Co*., 83 F.3d 735, 741 (5th Cir. 1996); *In re Buffets Holdings, Inc*., 387 B.R. 115, 121-23 (Bankr. D. Del. 2008). As the court made clear in *Buffets*:

> [T]here is "no federal policy which requires severance of a lease condition solely because it makes a debtor's reorganization more feasible." . . . Rather, the determination of whether a specific contract or lease is an indivisible agreement or is several agreements in one, which should properly be severable, depends on the application of state law.

*Buffets*, 387 B.R. at 124 (*quoting Bistrain v. E. Hampton Sand & Gravel Co*., 25 B.R. 193, 199 (Bankr. E.D.N.Y. 1982)). A debtor must ordinarily cure both monetary and non-monetary defaults in an executory contract. *In re Patriot Place, Ltd.*, 486 B.R. 773, 795 (Bankr. W.D. Tex. 2013). Defaults need not be present at the time of assumption. *Id*. See also *In re Hawkeye Entm't, LLC*, 49 F. 4th 1232, 1237 (9th Cir. 2022); *In re Old Mkt. Grp. Holdings Corp.*, 647 B.R. 104 (Bankr. S.D.N.Y. 2022); *In re Wingspread Corp.*, 116 B.R. 915, 928 (Bankr. S.D.N.Y. 1990). *See*, e.g., *In the Matter of Thornhill Bros. Fitness, L.L.C.*, 85 F.4th 321 (5th Cir. 2023) (reinforcing "cum onere" principle and holding that "when a trustee relies on § 365(f) to assign an executory contract in bankruptcy, it must assign the contract in whole, not in part."). The Debtor cannot "keep the wheat and not the chaff." *Id*.

15.     The Debtor cannot selectively assume the Master Lease Agreement as a portion of the properties while rejecting others. These unitary provisions reflect the clear intent of the parties at the time of contracting and are enforceable under applicable state law.

        *ii.*      *Attorneys' Fees, Costs, and Interest*

16.     RIC estimates that it has incurred pecuniary losses of at least $64,258.99 in attorneys' fees and costs and $4,066.50 in attorneys' fees that continue to accrue for having to defend its rights

under the Leases. To the extent that the Leases contain a provision for recovery of attorneys' fees, costs, and interest in the event RIC is required to take legal action to protect its interests—RIC reserves its rights to argue that attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are proper components of a cure claim, and the Debtor must satisfy these lease charges as part of the assumption of the Leases. *See Senior Care Ctrs.,* 607 B.R. at 593; *In re Entm't, Inc.*, 223 B.R. 141, 152 (Bankr. N.D. Ill. 1998).

17.     The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude the recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay). *In re Entm't, Inc.*, 223 B.R. at 154; *see also In re Crown Books Corp.*, 269 B.R. 12, 16 (Bankr. D. Del. 2001) (landlord's fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); *Urban Retail Props. v. Loews Cineplex Entm't Corp.*, 2002 WL 5355479, at *9 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition . . . ."); *Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Incorporated)*, 167 F.3d 843, 850 (4th Cir. 1999). The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law. *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec.*, 549 U.S. 443, 452–53 (2007). RIC reserves its rights to argue that there is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. *In re Entm't, Inc.*, 223 B.R. at 154.

### iii.     *Year-End Adjustments and Reconciliation*

18.     In addition to rent and related monthly charges, attorneys' fees, costs and interest, some charges for which the Debtor bears responsibility under the respective leases have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods.  The Debtor pays fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance,

common area maintenance ("CAM") fees, annual percentage rent, and the like. Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end. The reconciliation compares the amounts estimated and paid against actual charges incurred at the Premises. In some instances, year-end reconciliations and adjustments for previous years for the Property may not yet be complete (i.e., year-end reconciliations and adjustments that accrue through 2025 may not yet have been billed). Since these accrued, but unbilled, charges are not yet due under the respective lease, they do not create a current default that gives rise to a requirement of cure by the Debtor currently.

19.     Nevertheless, Debtor remains responsible for all accrued or accruing charges under the respective lease and must pay such charges when they come due. The Debtor (or prospective successful bidder(s) assume the lease subject to their terms and must assume and assign all obligations owing under the lease, including obligations that have accrued but may not yet have been billed under the lease. Any final assumption or sale order should clearly state that the Debtor (or any successful bidders) will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, a prospective closing date or effective date.

        iv.     *Preservation of Indemnification*

20.     In addition, to the extent the Leases require the Debtor (or any successful bidder) to indemnify and hold RIC harmless, RIC reserves its rights to object and require that any assumption and assignment of the Leases be subject to the terms thereof, including the continuation of any indemnification obligations, regardless of when they arose.[6] In the alternative, RIC reserves its right to require Debtor to provide (by insurance or otherwise) that it can satisfy any indemnification obligations under the Leases for any claims that relate to the period prior to assumption or assumption and assignment of the Leases. Nothing in any assumption or sale order should preclude RIC from pursuing the Debtor, its insurance, or any other party that may be liable under the Leases, and RIC requests that any order specifically preserve its right to pursue such rights irrespective of

---

[6] Any ability to assume and assign the Leases are subject to the protections provided by Section 365(b) and (f). Therefore, any assumption must be in accordance with all provisions of the Leases.

any resolution of cure amounts herein.

### B.    The RIC Cure Amounts Only Serve as Estimates

21.    RIC can only provide the information presently available regarding amounts that the Debtor owes, while reserving the right to amend this Objection as necessary to include any additional or unknown charges that arise, including but not limited to, subsequent rent defaults, attorneys' fees, costs, interest, taxes, and year-end adjustments and reconciliations. There is no basis to impose upon the RIC the equivalent of an administrative bar date, limiting its recourse to recover charges to which it is entitled under the Leases.

### C.    Adequate Assurance of Future Performance

22.    Here, RIC has not received any adequate assurance information, nor from any bidders, as may eventually be deemed to be the successful bidder. RIC reserves its right to raise any objections if and when it receives such information as to adequate assurance on or before the Sale Hearing.

### D.    Assumption and Amendment Agreement

23.    RIC also requests that, as a condition to any order approving assumption and assignment of the Leases, the assignee shall be required to enter into a short form Assumption and Amendment Agreement whereby the assignee shall become directly obligated to RIC and the provisions of the Leases regarding notice addresses will be modified. Until such time as the Debtor and the proposed assignee have established adequate assurance of future performance under the Leases by providing the necessary financial information and clarity regarding the capitalization structure of the proposed assignee or the ultimate assignee of the Leases, including the identity of the assignee(s), and the parties have reconciled and reached an agreement with respect to RIC's asserted Cure Amounts, RIC reserves all of its rights to seek additional information to evaluate the proposed assumption and assignment of the Leases to any proposed assignee.

### JOINDER

13.    RIC hereby joins in the objections filed by the Debtor's other landlords and creditors to the extent that such objections are not inconsistent with the provisions hereof.

9

**RESERVATION OF RIGHTS**

14.     RIC reserves all rights to (i) raise further or other objections as may be necessary to the assumption or assumption and assignment of the Leases, and to the final form of order approving the sale and any assumption and assignment of the Leases and/or to the final transaction documents once such final documents are filed of record with the Court; (ii) to require payment of all lease charges and compliance with all lease terms; and (iii) to require any assignment on a form acceptable to RIC.

**CONCLUSION**

15.     WHEREFORE, RIC respectfully requests that the Bankruptcy Court grant relief consistent with the foregoing Objection and Joinder.

DATED: June 17, 2026.                    Respectfully submitted,

_/s/ Joel F. Newell_

Craig Solomon Ganz (Admitted *Pro Hac Vice*)
Joel F. Newell (Admitted *Pro Hac Vice*)
**Ballard Spahr LLP**
1 East Washington Street, Suite 2300
Phoenix, AZ 85004
Telephone: 602-798-5400
Facsimile: 602-798-5595
ganzc@ballardspahr.com
newellj@ballardspahr.com
*Counsel to ARC CAFEUSA001, LLC; CNL APF Partners, LP; ARC DBPPROP001, LLC; CNL American Properties Fund, Inc.; Realty Income Corporation d/b/a Realty Income Properties, Inc.; and ARC CAFEHLD001, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 17, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that the foregoing document is being served this day on all counsel of record and interested parties identified on the attached Service List via CM/ECF, to those registered to receive Notices of Electronic Filing generated by CM/ECF.

_/s/ *Joel F. Newell*_____
Joel F. Newell

11