**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

SAILORMEN,[1]                                              Case No. 26-10451 (RAM)

                                Debtor.                    Chapter 11

---

**STORE SPE CHANCELLOR 2021-3, LLC OBJECTION TO DEBTOR'S NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE**

STORE SPE Chancellor 2021-3, LLC ("STORE"), by and through its undersigned attorneys, hereby makes this objection (the "Objection") to Debtor's *Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Sale* (the "Cure Notice") [Doc. 543], and states as follows:

**PRELIMINARY STATEMENT**

1.      The Cure Amounts set forth in the Cure Notice do not reflect all outstanding balances due and owing to STORE under the Master Lease, and do not account for accruing but unbilled charges which may come due in the future. The Cure Costs set forth by the Debtor must be modified to reflect additional charges owing, including outstanding taxes, as well as recognize the liability for accruing charges due under the Master Lease, as set forth herein.

2.      STORE files this Objection to reserve all of their rights to assert cure amounts that STORE would otherwise be entitled to, but for any potential amendments to the Master Lease, and to preserve all of their objections to the assignment and/or severance of the Master Lease until such time as an agreement is reached thereupon.  Notwithstanding the filing of this Objection, however,

---

[1] The Debtor in this Chapter 11 case and the last four digits of its federal tax identification number are Sailormen, Inc. (5214). The location of the Debtor's corporate headquarters and the Debtor's service address in this chapter 11 case is Miami, Florida.

STORE remains willing to continue to work with the Debtor in relation to the potential assumption and assignment; and any order related thereto.

## BACKGROUND

3.      On January 15, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor, as debtor-in-possession, continue to operate its businesses and manage its properties pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.[2]

4.      On February 12, 2026, the United States Trustee appointed an official committee of unsecured creditors (the "Committee").

5.      On February 13, 2026, STORE filed its objection ("Omnibus Objection") [ECF No. 176] to the First Omnibus Motion of The Debtor And Debtor-In-Possession For Entry Of An Order (I) Authorizing Rejection of Unexpired Leases, and (II) Setting a Deadline for the Filing of Rejection Claims (the "Omnibus Rejection") [ECF No. 82].  This Omnibus Objection arose in response to Debtor's attempt to sever the Store Master Lease, an agreement that comprises a unitary and unexpired lease, which the Debtor must elect to either assume or reject in toto.

6.      On March 13, 2026, the Debtor filed the Motion of the Debtor and Debtor-in Possession for Entry of an Order (I) Approving Bidding Procedures for the Sale of All or Substantially All the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Approving the Form of Asset Purchase Agreement; (III) Authorizing the Debtor to Enter Into Stalking Horse Agreements and Approving Bid Protections for Any Stalking Horse Bidders; (IV) Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases; (V) Scheduling an Auction for, and Hearing to Approve, the Sale of All or Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (VI) Approving the Form and Manner of Sale Notice; and (VII) Granting Related Relief (Doc. 330) (the "Bidding Procedures Motion").

---

[2] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

2

7.     On March 20, 2026, the Court entered the Order (I) Approving Bidding Procedures for the Sale of All or Substantially All the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Approving the Form of Asset Purchase Agreement; (III) Authorizing the Debtor to Enter Into Stalking Horse Agreements and Approving Bid Protections for Stalking Horse Bidders; (IV) Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases; (V) Scheduling an Auction For, and Hearing to Approve, the Sale of All or Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (VI) Approving the Form and Manner of Sale Notice; and (VII) Granting Related Relief (Doc. 378) (the "Bidding Procedures Order").

8.     STORE is the Debtor's landlord pursuant to a unitary and indivisible master agreement (the "Master Lease Agreement"). STORE entered into the Third Amended and Restated Master Lease Agreement effective May 26, 2022 (the "Store Master Lease" or the "Master Lease"), whereby Sailormen, Inc., agreed to lease, from STORE, fourteen (14) commercial properties—two of which the Debtor sought to reject, (1) 1601 South U.S. Highway 1, Fort Pierce, Florida 34950 and (2) 5156 S. Dale Mabry, Tampa, Florida 33611. The issues related to whether the Debtor may reject two properties from the Master Lease Agreement have been reserved by the parties.

9.     On May 19, 2026, Debtor filed its Certificate of Service with Exhibit G attached thereto, which included its cure notice, dated May 18, 2026 ("Cure Notice") [Doc. 543], which, amongst other things, sets out the proposed Cure Amounts for each Potential Assumed Contract.

10.     The Cure Notice, as stated therein, fails to "include potential interest or late fees on real property taxes." [Doc. 543, Sched. 1 n.1].

11.     Pursuant to the Bidding Procedures Order the following was to have occurred:

  *i.*  The Auction – June 15, 2026. On information and belief, the auction has not concluded. *See* Bidding Procedures Order at ¶ 11.

  *ii.*  Notice of Successful Bidders – 11:59 p.m. on the date of the Auction (June 15, 2026). *See* Bidding Procedures Order at ¶ 14.

3

iii. Adequate Assurance Deadline – by 11:59 p.m. June 15, 2026, Debtor is to provide counter parties "adequate assurance of future performance under Section 365." *See* Bidding Procedures Order at ¶ 23.

12. On June 15, 2026 Debtor filed a Notice of Debtor's Extension of Deadlines to Provide Adequate Assurance Information and Successful Bidder(s) (Doc. 616), stating that the Adequate Assurance Information and Notice of Successful Bidder(s) would be provided by 11:59 p.m. June 16, 2026. Per this notice, the basis was due to the auction not concluded. Again, on June 16, 2026, the Debtor filed a Notice of Debtor's Second Extension of Deadlines to Provide Adequate Assurance Information and Successful Bidder(s) (Doc. 643). Further stating the auction has not concluded and asserting that the Adequate Assurance Information and Notice of Successful Bidder(s) would be provided by 11:59 p.m. June 17, 2026.

13. Therefore, depending on how the continued auction progresses on June 17, 2026, STORE (and other landlords or counter parties) could be forced to evaluate adequate assurance information "through the night" considering the outside time for Debtor to provide this information is approximately 9.5 hours prior to the hearing on June 18, 2026.

## THE MASTER LEASE

14. The subject Master Lease is a unitary non-severable lease, wherein in addition to the Base Monthly Rent, the Debtor Tenant is responsible for all sums of money required to be paid thereby under the Master Lease which are not specifically referred to as Rental. Master Lease Secs. 4.01 and 4.03. A copy of the Master Lease is available through undersigned counsel.

15. The Master Lease provides:

**Section 6.01. Taxes**.
(a) *Payment*. Subject to the provisions of Section 6.01(c) below, Lessee shall pay, prior to the earlier of delinquency or the accrual of interest on the unpaid balance, all taxes and assessments of every type or nature assessed against or imposed upon the Properties, Lessee or Lessor during the Lease Term related to or arising out of this Lease and the activities of the parties hereunder, including without limitation, (i) all taxes or assessments upon the Properties or any part thereof and upon any personal property, trade fixtures and improvements located on the Properties, whether belonging to Lessor or Lessee, or any tax or charge levied in lieu of such taxes and assessments; (ii) all taxes, charges, license fees and or similar fees imposed by reason

4

of the use of the Properties by Lessee; (iii) all excise, franchise, transaction, privilege, license, sales, use and other taxes upon the Rental or other Monetary Obligations hereunder, the leasehold estate of either party or the activities of either party pursuant to this Lease; and (iv) all franchise, privilege, or similar taxes of Lessor calculated on the value of the Properties or on the amount of capital apportioned to the Properties. Notwithstanding anything in clauses (i) through (iv) above to the contrary, Lessee shall not be obligated to pay or reimburse Lessor for any taxes based on the net income of Lessor.

…

**Section 17.07. Attorneys' Fees**. In the event of any judicial or other adversarial proceeding concerning this Lease, to the extent permitted by Law, the prevailing party shall be entitled to recover all of its reasonable attorneys' fees and other Costs in addition to any other relief to which it may be entitled. In addition, the prevailing party shall, upon demand, be entitled to all attorneys' fees and all other Costs incurred in the preparation and service of any notice or demand hereunder, whether or not a legal action is subsequently commenced.

## OBJECTION

### A.    The Debtor's Proposed Cure Amounts Must Provide for Payment of all Obligations under the Master Lease.

16.    To assume and assign the Master Lease, the Debtor must comply with Section 365(b)(1) of the Bankruptcy Code which provides that:

If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –

(A)    cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph. . .

U.S.C. § 365(b)(1).

5

17. STORE reserves its rights in relation to the Cure Amounts set forth in the Cure Notice.[3]

18. The Debtor must cure or provide adequate assurance that they will promptly cure all monetary and most non-monetary defaults. This requirement is essential for the assumption of an unexpired lease. *See In re Uniq Shoes Corp.*, 316 B.R. 748, 750-53 (Bankr. S.D. Fla. 2004); *In re Senior Care Ctrs., LLC*, 607 B.R. 580, 588 (Bankr. N.D. Tex. 2019); *In re IYS Ventures, LLC*, 659 B.R. 308, 322 (Bankr. N.D. Ill. 2024). Thus, if the Debtor determines to assume and assign the Master Lease, the assumption and assignment must include the obligations under the Master Lease.

19. In addition to the outstanding accrued taxes due under the Master Lease, in determining what must be paid as cure pursuant to Section 365(b), the charges referenced below must also be considered and paid by the Debtor, either as cure or when properly billed under the Master Lease.

### i. *Assumption and Assignment Must be Cum Onere*

20. The Master Lease Agreement is an enforceable, unexpired lease that must be assumed or rejected *in toto*. A debtor cannot simply assume the benefits and reject the unfavorable aspects of the same contract. *See Stewart Title Guar. Co. v. Old Republic Nat. Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996); *In re Buffets Holdings, Inc.*, 387 B.R. 115, 121-23 (Bankr. D. Del. 2008). As the court made clear in *Buffets*:

> [T]here is "no federal policy which requires severance of a lease condition solely because it makes a debtor's reorganization more feasible." . . . Rather, the determination of whether a specific contract or lease is an indivisible agreement or is several agreements in one, which should properly be severable, depends on the application of state law.

---

[3] STORE's Cure Amounts, as set forth in Schedule 1, do not include any charges that are billed or will come due after the filing of this Objection or charges that are billed directly to the Debtor, including, real estate taxes. To the extent STORE is later billed for any amount due to the Debtor's failure to pay, STORE reserves the right to amend the Objection to include such amounts. The Debtor must timely pay all rent and other Master Lease obligations as they come due under the Master Lease, and STORE reserves the right to payment (and to amend this Objection to the extent necessary) for any amounts that come due under the Master Lease through the date of any assumption and assignment and cure payment.

*Buffets*, 387 B.R. at 124 (*quoting Bistrain v. E. Hampton Sand & Gravel Co.*, 25 B.R. 193, 199 (Bankr. E.D.N.Y. 1982)). A debtor must ordinarily cure both monetary and non-monetary defaults in an executory contract. *In re Patriot Place, Ltd.*, 486 B.R. 773, 795 (Bankr. W.D. Tex. 2013). Defaults need not be present at the time of assumption. *Id*. See also *In re Hawkeye Entm't, LLC*, 49 F. 4th 1232, 1237 (9th Cir. 2022); *In re Old Mkt. Grp. Holdings Corp.*, 647 B.R. 104 (Bankr. S.D.N.Y. 2022); *In re Wingspread Corp.*, 116 B.R. 915, 928 (Bankr. S.D.N.Y. 1990). *See*, e.g., *In the Matter of Thornhill Bros. Fitness, L.L.C.*, 85 F.4th 321 (5th Cir. 2023) (reinforcing "cum onere" principle and holding that "when a trustee relies on § 365(f) to assign an executory contract in bankruptcy, it must assign the contract in whole, not in part."). The Debtor cannot "keep the wheat and not the chaff." *Id*.

21.     The Debtor cannot selectively assume the Master Lease Agreement as a portion of the properties while rejecting others. These unitary provisions reflect the clear intent of the parties at the time of contracting and are enforceable under applicable state law.

22.     In addition to any monetary amounts that must be cured, Debtor must also cure the non-monetary defaults. Landlord has received notices of the following code violations (collectively, the "Notices of Violation") at the leased premises occupied by the Debtors:

> On or about January 9, 2026, the City of Fort Pierce sent a formal notice of violation to Landlord [via entity Chancellor Income Holdings LLC], in relation to 1601 S US Highway 1, Fort Pierce, FL 34950 (the "Fort Pierce Violation"), citing incorrect signage, potholes and curbing repair, peeling and rusting, and improperly marked parking spaces.

> On or about February 25, 2026, the Miami-Dade Fire Prevention Bureau sent a formal notice of violation to Landlord [via entity Chancellor Income Holdings LLC], in relation to 20690 NW 2 Ave., FL 33169 (the "Miami-Dade Violation"), citing a failure to provide proper cleaning certificate in violation of the Florida Fire Prevention Code and/or Miami-Dade County Code.

> On or about March 3, 2026, the City of Kissimmee sent a formal notice of violation to Landlord [via entity Chancellor Income Holdings LLC], in relation to 324 W Vine St., Kissimmee, FL 34741 (the "Kissimmee Violation"), citing deterioration of the parking lot surface with large holes.

> *ii.     Attorneys' Fees*

23. STORE estimates it has incurred pecuniary losses of at least $95,199.50 in attorneys' fees and costs and $4,066.50 in attorneys' fees that continue to accrue for having to defend its rights under the Master Lease, including asserting its Omnibus Objection. The Master Lease contains a provision for recovery of attorneys' fees, costs, and interest in the event STORE is required to take legal action to protect its interests. Master Lease at § 17.07.

24. Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are proper components of a cure claim here, and the Debtor must satisfy these lease charges as part of the assumption of the Master Lease. *See Senior Care Ctrs.,* 607 B.R. at 593; *In re Entm't, Inc.*, 223 B.R. 141, 152 (Bankr. N.D. Ill. 1998). For example, in the *Senior Care Centers* case, the court held that, even assuming that attorney fee provisions in master agreements governing the commercial leases that chapter 11 debtors sought to assume were in the nature of "prevailing party" attorney fee provisions, the debtors' success in persuading the bankruptcy court to allow them to assume leases did not preclude the award of attorney fees as part of the "cure" amounts that debtors would have to pay as a prerequisite to assuming leases, given that landlords were successful in compelling debtors to decide whether to assume leases, raising significant issues with regard to debtors' ability to promptly cure defaults, and in generally ensuring that their interests were adequately protected. *Senior Care Ctrs.*, 607 B.R. at 593.

25. The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude the recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay). *In re Entm't, Inc.*, 223 B.R. at 154; *see also In re Crown Books Corp.*, 269 B.R. 12, 16 (Bankr. D. Del. 2001) (landlord's fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); *Urban Retail Props. v. Loews Cineplex Entm't Corp.*, 2002 WL 5355479, at *9 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition . . . ."); *Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Incorporated)*, 167 F.3d 843, 850 (4th Cir. 1999).

The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law. *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec.*, 549 U.S. 443, 452–53 (2007). STORE reserves its rights to argue that there is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. *In re Entm't, Inc.*, 223 B.R. at 154.

iii.    *Year-End Adjustments and Reconciliation*

26.    In addition to rent and related monthly charges, attorneys' fees, costs and interest, some charges for which the Debtor bears responsibility under the respective leases have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods.  The Debtor pays fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, annual percentage rent, and the like.  Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end.  The reconciliation compares the amounts estimated and paid against actual charges incurred at the Premises.  In some instances, year-end reconciliations and adjustments for previous years for the Property may not yet be complete (i.e., year-end reconciliations and adjustments that accrue through 2025 may not yet have been billed). Since these accrued, but unbilled, charges are not yet due under the respective lease, they do not create a current default that gives rise to a requirement of cure by the Debtor currently.

27.    Nevertheless, Debtor remains responsible for all accrued or accruing charges under the respective lease and must pay such charges when they come due.  The Debtor (or prospective successful bidder(s) assume the lease subject to their terms and must assume and assign all obligations owing under the lease, including obligations that have accrued but may not yet have been billed under the lease.  Any final assumption or sale order should clearly state that the Debtor (or any successful bidders) will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, a prospective closing date or effective date.

9

*iv.    Preservation of Indemnification*

28.    In addition, Sec. 10.01 of the Master Lease requires the Debtor (or any successful buyer) to indemnify and hold STORE harmless, and STORE contends that any assumption and assignment of the Master Lease must be subject to the terms thereof.[4]  In the alternative, STORE requires that the Debtor provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Master Lease for any claims that relate to the period prior to assumption or assumption and assignment of the Master Lease.  Nothing in any assumption or sale order should preclude STORE from pursuing the Debtor, their insurance, or any other party that may be liable under the Master Lease, and STORE requests that any order specifically preserve their right to pursue such rights irrespective of any resolution of cure amounts herein.

**B.    The STORE Cure Amounts Only Serve as Estimates**

29.    STORE can only provide the information presently available regarding amounts that the Debtor owes, while reserving the right to amend this Objection as necessary to include any additional or unknown charges that arise, including but not limited to, subsequent rent defaults, attorneys' fees, costs, interest, taxes, and year-end adjustments and reconciliations. There is no basis to impose upon STORE the equivalent of an administrative bar date, limiting its recourse to recover charges to which it is entitled under the Master Lease.

**C.    Adequate Assurance of Future Performance**

30.    While STORE reserves all rights to object to the adequacy of the Debtor's, or any buyer's, proposed adequate assurance of future performance under Section 365(b)(1)(C) of the Bankruptcy Code, STORE stands on the position, as detailed below, that the Master Lease cannot be assumed as severed—the Master Lease is a unitary, unseverable instrument that must be assumed or rejected in its entirety.

---

[4]  Any ability to assume and assign the Master Lease is subject to the protections provided by Section 365(b) and (f). Therefore, any assumption must be in accordance with all provisions of the Lease.

**D.**    **Assumption and Amendment Agreement**

31.    STORE also requests that, as a condition of any order approving assumption and assignment of the Master Lease, the assignee shall be required to enter into a short form Assumption and Amendment Agreement whereby the assignee shall become directly obligated to STORE and the provisions of the Master Lease regarding notice addresses will be modified.  Until such time as the Debtor and the proposed assignee have established adequate assurance of future performance under the Master Lease by providing the necessary financial information and clarity regarding the capitalization structure of the proposed assignee or the ultimate assignee of the Master Lease, including the identity of the assignee(s), and the parties have reconciled and reached an agreement with respect to the STORE's asserted cure amounts, STORE reserves all of its rights to seek additional information to evaluate the proposed assumption and assignment of the Master Lease to any proposed assignee.

**E.**    **The Debtor Cannot Sever the Master Lease**

32.    For certainty, STORE incorporates the arguments and facts in its Omnibus Objection as if fully stated herein.  As detailed in its Omnibus Objection, and for the reasons stated therein, STORE reiterates the Master Lease is as an indivisible instrument, under the terms of which Debtor may not sever the Master Lease and is precluded from rejecting the purported unfavorable properties included therein. *Turley v. Beus*, 2020 Ariz. Super. LEXIS 316, at *22-23; *Mkul, Inc. v. Aura Smart Air, Ltd. (In re Mkul, Inc.)*, Nos. 23-18094-EPK, 24-01004-EPK, 2024 LX 283759, at *13-14 (Bankr. S.D. Fla. Aug. 22, 2024). STORE maintains its preservation and reservation of rights as to Debtor's attempted severance of the Master Lease.

**JOINDER**

33.    STORE hereby joins in the objections filed by the Debtor's other landlords and creditors to the extent that such objections are not inconsistent with the provisions hereof.

**RESERVATION OF RIGHTS**

11

34.     STORE reserves all rights to (i) raise further or other objections as may be necessary to the assumption or assumption and assignment of the Master Lease, and to the final form of order approving the sale and any assumption and assignment of the Master Leases and/or to the final transaction documents once such final documents are filed of record with the Court; (ii) to require payment of all lease charges and compliance with all lease terms; and (iii) to require any assignment on a form acceptable to STORE.

## CONCLUSION

WHEREFORE, STORE respectfully requests that the Bankruptcy Court grant relief consistent with the foregoing Objection and Joinder.

DATED: June 17, 2026.                     Respectfully submitted,

 */s/ Joel F. Newell*
Craig Solomon Ganz (Admitted *Pro Hac Vice*)
Joel F. Newell (Admitted *Pro Hac Vice*)
**Ballard Spahr LLP**
1 East Washington Street, Suite 2300
Phoenix, AZ 85004
Telephone: 602-798-5400
Facsimile: 602-798-5595
ganzc@ballardspahr.com
newellj@ballardspahr.com
Counsel to STORE SPE Chancellor 2021-3, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 17, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that the foregoing document is being served this day on all counsel of record and interested parties identified on the attached Service List via CM/ECF, to those registered to receive Notices of Electronic Filing generated by CM/ECF.

_/s/ *Joel F. Newell*_____
Joel F. Newell