UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                    Chapter 11

SAILORMEN, INC.,                                          Case No. 26-10451-RAM

          Debtor.[1]

                                                  /

**DECLARATION OF MATTHEW R. DOSSEY**
**IN SUPPORT OF SALE MOTION**

I, Matthew R. Dossey, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the contents of this Declaration in Support of Sale Motion are true and correct.

**BACKGROUND**

1.      I am over 21 years of age and am competent to testify to the matters set forth herein.  I am a Managing Director at Aurora Management Partners Inc., a Georgia Corporation ("Aurora"). Aurora is a financial consulting and advisory firm that specializes in providing crisis and turnaround management consulting to distressed companies.

2.      Aurora has extensive experience working with distressed restaurant franchisees, as evidenced by its recent work in the *In re: Premier Kings, et al.* (Case No. 23-02871) and *In re: Premier Cajun* (Case No. 23-00656) chapter 11 cases in the United States Bankruptcy Court for the Northern District of Alabama, which involved the same franchisor as this case.

3.      On or about December 12, 2025, Aurora was appointed as the Debtor's Chief Restructuring Officer ("CRO"). Since Aurora's engagement, I have been actively involved in

---

[1]     The Debtor in this Chapter 11 case and the last four digits of its federal tax identification number are Sailormen, Inc. (5214). The location of the Debtor's corporate headquarters and the Debtor's service address in this chapter 11 case is Miami, Florida.

evaluating the Debtor's liquidity, cash management system, financial reporting and forecasting, landlord communications, and contingency planning. In that capacity as CRO, I am intimately familiar with the day-to-day operations of the Debtor, its business and financial affairs, and books and records. I am a graduate of the University of Florida – Warrington College of Business with a Bachelor of Science in accounting and a Master's degree in accounting. I am a licensed Certified Public Accountant. I have over 16 years of diversified business experience in restructuring, financial management, and accounting. I have extensive experience in the development of reorganization plans, creditor negotiations, business plan preparation and long-term forecasting, developing and implementing cost reduction programs, and financial management of public and privately held companies. I have advised companies, boards, investors, and lender groups and served in interim management roles and led assignments in numerous districts.

4.      I submit this Declaration in support of the Debtor's Sale Motion (ECF No. 330) (the "Sale Motion"). Pre-petition, the Debtor did not have sufficient liquidity to meet its obligations to creditors, including its lenders, franchisor, and vendors critical to the Debtor's ability to operate its restaurants. Consequently, the Debtor fell behind in payments causing its lenders to file for a receivership in New York. Subsequent to the petition date, the Debtor was able to operate on cash collateral by (i) getting royalty and advertising deferrals from Popeyes, (ii) closing over a dozen stores, (iii) reducing SG&A, and (iv) terminating the payment of guarantees to landlords of stores the Debtor sold years before. These savings allowed the Debtor to fund the purchase of food, pay wages, and the administrative costs of the case.

5.      In light of the financial condition, Debtor's management decided that the assets should be sold, and that a sale as a going concern would be in the best interests of the creditors

2

and estate.  The sale of the assets was also consistent with the terms of the Final Cash Collateral Order (ECF No. 327) and the asset sale requirements contained therein.

6.      In order to market and sell the Debtor's assets, Peak Franchise Capital LLC ("Peak") was retained to work with the Debtor's management and Aurora to develop a list of parties believed to be interested in purchasing the Debtor's business.  Along with David Baker and Greg Baker, I personally participated in the marketing and sale efforts.

7.      Peak began soliciting interest by preparing and distributing a "teaser" in March 2026, describing the history of the Debtor's business, financial statements and key financial metrics to approximately 240 Potential Bidders, including approximately 186 "strategic" potential bidders, and approximately 54 "financial" potential bidders.  The Debtor's assets were marketed extensively. Peak prepared a confidential information memorandum ("CIM") providing a detailed overview of the Debtor's financial records and worked with the Debtor to establish a virtual data room for potential bidders, who executed Non-Disclosure Agreements ("NDAs"), to access during the process.  55 NDAs were executed between potential bidders and the Debtor and 55 potential bidders received the CIM along with access to the virtual data room.

8.      An auction was conducted starting on June 15, 2026 at the conference center of the JW Marriott Miami on Brickell.  Counting counsel and financial advisors for the Debtor, Popeyes, the BMO Lender Group, Committee and all the bidders, approximately 50 people attended.  After 3 days of bidding, negotiations, more bidding, more negotiations, and some very tense moments, the auction was concluded with 5 winning bidders.

9.      As described in the respective APAs, the following winning bidders were determined to be highest and best:

3

- SBH Foods, LLC for the Savannah region for $650,000.00;
- 61 Biscuits, LLC for the West Palm Beach region for $1,118,380.00;
- Popeyes Louisiana Kitchen, Inc. ("Popeyes") for the Miami region for $9,600,000.00;
- Baraka as backup bid for Miami region for $9,500,000.00;
- RFI Ventures for the Orlando region for $2,500,000.00;
- Pulse Restaurant Group, LLC ("Pulse") for the Tampa, Tallahassee, Pensacola and Jacksonville regions for $2,691,889.32

10.    In my judgment, the prices to be paid for the assets are fair and reasonable.  The market has spoken.

11.    The assets to be sold consist of the assets used by the Debtor to operate its Popeyes franchise.  The assets of the Debtor do not include ERTC funds, cash, and causes of action.

12.    Based on a review of bank records of the 5 purchasers, they each appear to be fully capable of performing all future obligations under executory contracts to be assumed and assigned under the respective APAs.

13.    Debtor's counsel negotiated the terms of APAs with buyers' respective counsel. Three (3) of the purchasers had no relation to the Debtor.  One of the purchasers is the franchisor, Popeyes.  Another purchaser, Pulse, is led by David Damato, the Debtor's CEO.  But they were not given any special treatment during the negotiations.  In fact, the negotiations were quite adversarial at times.  At all times, the purchasers were treated at arms'-length and conducted themselves in good faith through the negotiation process.  They are each entitled to the good-faith purchaser protections under the Bankruptcy Code.

14.    The sales process was a fair process, the prices paid are in the best interest of the creditors and the estate, and were the highest and best offers received.

15.     Approval of the Debtor's Sale Motion is in the best interest of the Debtor, creditors and estate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 17, 2026

/s/ Matthew Dossey
Matthew Dossey, Aurora Management
Partners as Deputy Chief Restructuring
Officer

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all parties registered to receive notices via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/  Luis Salazar*_____
Luis Salazar