UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                          Chapter 11

SAILORMEN, INC.,                                Case No. 26-10451-RAM

    Debtor.

_____ /

### DECLARATION OF MICHAEL ELLIOTT
### IN SUPPORT OF SALE MOTION

I, Michael Elliott, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the contents of this Declaration in Support of Sale Motion are true and correct.

### BACKGROUND

1.      I am the founder and the managing partner of Peak Franchise Capital, LLC ("Peak").  Peak is a boutique restaurant industry focused advisor and consulting firm.  I have worked with franchisors and franchisees in various senior level roles throughout my career. Peak has worked with many national, regional, and local brands and it has a unique experiential background across various transactional services with the restaurant industry.

2.      I have over forty years of investment banking, finance and operational experience which includes extensive work in acquisitions, divestitures, financial restructurings, bankruptcies, and financial management.  Peak's professionals have provided investment banking, financial advisory and other services in connection with significant Chapter 11 cases, including: Consolidated Burger Holdings, LLC; Miracle Restaurant Group, LLC; Meridian Restaurants Unlimited, LC; The Lost Cajun, LLC; SD Restaurant Group, LLC; TOMS King, LLC; Eat Fit Go Healthy Foods, LLC; and S.B. Restaurant Company.

3.      Peak was retained to commence a marketing process and solicit interest for the purchase of Sailormen's assets.  In working with the Debtor and its CRO, I became familiar with the day-to-day operations, financial condition, and business affairs of the Debtor, and I actively participated in the sale process, including helping to design the Bidding Procedures, receiving bids from potentially interested bidders, and negotiating the terms of any sale agreement.

4.      Peak began soliciting interest by preparing and distributing a "teaser" in March 2026, describing the history of the Debtor's business, financial statements and key financial metrics to approximately 240 Potential Bidders, including approximately 186 "strategic" potential bidders, and approximately 54 "financial" potential bidders.  The Debtor's assets were marketed extensively.   Peak prepared a confidential information memorandum ("CIM") providing a detailed overview of the Debtor's financial records and worked with the Debtor to establish a virtual data room for potential bidders, who executed Non-Disclosure Agreements ("NDAs"), to access during the process.  Fifty-five NDAs were executed between potential bidders and the Debtor and 55 potential bidders received the CIM along with access to the virtual data room.

5.      Based on the regional division and tracking of restaurant locations by Popeyes, Peak marketed the Debtor as a complete portfolio, or as any portion of seven (7) regions, consisting of Savannah, Miami, Orlando, Tallahassee, Pensacola, Tampa, and Jacksonville.

6.      Sixteen offers, some of which were submitted by a single potential bidder for separate regions, were received.  Of those potential bidders, 6 received approval from Popeyes and were deemed Qualified Bidders by the Debtor;

7.      Of the 7 Qualified Bidders, 5 APA's were received, negotiated and accepted by the Debtor for a total of 97 restaurants.

8. I believe that the Debtor's assets were sufficiently marketed in a manner in the best interests of the Debtor, creditors, and estate, and in accordance with the Bidding Procedures Order.

9. An auction was conducted over 3 days from June 15 thru June 17 at the conference center of the JW Marriott Miami on Brickell pursuant to the Order approving the Bid Procedures. Over 50 people between buyers and professionals were present and the auction which lasted over 24 total hours with multiple rounds of bidding.

10. Popeyes Louisiana Kitchen was determined to be the highest and best bidder for the Miami region of 16 stores, excluding the Cutler Bay location and 3 West Palm Beach locations for $9,600,000. The Backup Bidder was BARAKA at $9,500,000.

11. 61 Biscuits, LLC was determined to be the highest and best bidder for the three (3) West Palm Beach stores for $1,118,380.

12. RFI Ventures was determined to be the highest and best bidder for the Orlando region of 23 stores for $2,500,000 excluding stores 4261 and 12649.

13. SBH Foods, LLC was determined to be the highest and best bidder for $650,000 for the Savannah region of 5 stores, with designation rights on a sixth location, the Hinesville location.

14. Pulse Restaurant Group, LLC was determined to be the highest and best bidder for :

(a) Tampa region of 12 stores for $2,000,000 excluding the following store numbers: 14214, 14801, 2532;

(b) Tallahassee region of 11 stores for $258,518.59 excluding the following store numbers: 12677, 13739, 14080;

3

(c)    Pensacola region of 8 stores for $189,807.22 excluding the following store numbers:  2086, 13183, 13460; and

(d)    Jacksonville region of 19 stores for $243,563.51 excluding the following store numbers:  1097, 2078, 2465, 4214, 12641, 716, 13499, 13624, 13664.

15.    Gross proceeds from the above sales total $16,560,269.33.  Estimated net proceeds to Debtor are approximately $6.9 million after deducting the cure payments.

16.     Each of the purchasers appears to be fully capable of closing the respective transactions based on financial records submitted to become qualified bidders.

17.    The Debtor locked in BARAKA as the Miami backup bidder at the auction for $9,500,000.

18.    Other than Popeyes and Pulse, the purchasers have no relation to the Debtor. Popeyes is the Debtor's franchisor, and Pulse is led by the Debtor's current CEO, David Damato. But no purchasers were given any special treatment during the negotiations.  They were treated at arms'-length at all times, and the purchasers have at all times conducted themselves in good faith through the bidding and negotiation process.

19.    In my judgment, the prices to be paid for the assets are fair and reasonable.

20.    The sale process was a fair process and conducted in the best interest of the Debtor, creditors, and the estate.  The procedures used by the Debtor provided the most flexible process for the Debtor to solicit bids on a going-concern basis as a whole or in regions.  The process allowed the Debtor to maximize the value of the assets given the liquidity constraints, the capital investment required by Popeyes, and the accompanying time pressures the Debtor faced.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 18, 2026

/s/ Michael Elliott
Michael Elliott, Peak Franchise Capital LLC

5

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all parties registered to receive notices via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Luis Salazar*_____
Luis Salazar