UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                              Chapter 11

SAILORMEN, INC.,                                    Case No. 26-10451-RAM

       Debtor.[1]

_____/

**NOTICE OF FILING PROPOSED SALE ORDER**

Sailormen, Inc. (the "Debtor"), by and through their undersigned counsel, hereby files the attached Proposed Order in connection with the *Motion of the Debtor and Debtor-in-Possession for Entry of an Order Authorizing and Approving (I) the Sale of Substantially all of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests and (II) the Assignment and Assumption of Certain Executory Contracts and Unexpired Leases* [Dkt. No. 396], and a redlined.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing by CM/ECF to all parties registered to receive such service in this case on June 22, 2026.

Respectfully submitted,

**SHRAIBERG PAGE P.A.**
*Attorneys for the Debtor.*
2385 NW Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: bss@slp.law

By: */s/ Bradley S. Shraiberg*
     Bradley S. Shraiberg
     Florida Bar No. 121622

## SERVICE LIST

**Electronic Notice List**
**(VIA CM/ECF):**

- **Eric N Assouline**    ena@assoulineberlowe.com, ah@assoulineberlowe.com
- **Terence G Banich**    terence.banich@katten.com
- **Paul J. Battista**    pjbattista@venable.com, cascavone@venable.com;jnunez@venable.com;imalcolm@venable.com;heburke@venable.com;imalcolm@ecf.courtdrive.com
- **Seth N Benes**    seth@lwlawfla.com, claudia@lwlawfla.com;Pleadings@lwlawfla.com
- **Laura Boeckman**    lboeckman@coj.net
- **Stephen C Breuer**    stephen@breuer.law, genna@breuer.law,stephen@ecf.courtdrive.com,mia@breuer.law
- **Joseph P. Briggett**    jbriggett@bakerdonelson.com, jbowers@bakerdonelson.com
- **Jacqueline Calderin**    jc@agentislaw.com, bankruptcy@agentislaw.com;nsocorro@agentislaw.com
- **Helbert A. Canales-Rojas**    helbert@canalesrojaslaw.com, mymarks@bakerdonelson.com
- **Ronald S Canter**    rcanter@roncanterllc.com
- **Shawn M Christianson**    schristianson@buchalter.com, cmcintire@buchalter.com
- **Lisa Caryl Cohen**    lcohen@ruffcohen.com
- **Isabel V Colleran**    isabel.colleran@blaxgray.com
- **Matthew McDonnell Couch**    mcouch@moorheadlaw.com, heidi@moorheadlaw.com;kblackman@moorheadlaw.com
- **Alan R Crane**    acrane@furrcohen.com, yfernandez@furrcohen.com;ltitus@furrcohen.com;staff1@furrcohen.com;cranear84158@notify.bestcase.com;paralegal@furrcohen.com;paralegal2@furrcohen.com
- **Kathleen DiSanto**    kdisanto@bushross.com, bankruptcy.eservice@bushross.com;kdisanto@ecf.courtdrive.com
- **James M Donohue**    jdonohue@ausley.com, sshaffer@ausley.com
- **Michael P Dunn**    michael.dunn@dunnlawpa.com, rbasnueva@dunnlawpa.com;tudani@dunnlawpa.com;lrodriguez@dunnlawpa.com;mflores@dunnlawpa.com
- **Raye C Elliott**    raye.elliott@akerman.com, jennifer.meehan@akerman.com;ava.hill@akerman.com
- **Brian T FitzGerald**    fitzgeraldb@hillsboroughcounty.org, connorsa@hillsboroughcounty.org;stroupj@hillsboroughcounty.org
- **Kevin A Forsthoefel**    kforsthoefel@ausley.com, kreffitt@ausley.com
- **Patricia Francois**    patriciafrancois@demandthelimits.com
- **David L. Gay**    dgay@carltonfields.com, cguzman@carltonfields.com;efile@ecf.inforuptcy.com;miaecf@cfdom.net
- **Mark A Gilbert**    mark.gilbert@colemantalley.com
- **Joe M. Grant**    jgrant@loriumlaw.com, jenna-munsey-6083@ecf.pacerpro.com;jyoung@loriumlaw.com;acabello@loriumlaw.com
- **Jordi Guso**    jguso@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com;efile@ecf.courtdrive.com
- **Stephanie L Hauser**    slh@lklsg.com, ame@lklsg.com
- **Malinda L Hayes**    malinda@mlhlawoffices.com, hayes.malindab120631@notify.bestcase.com;hayes.malindab120631@notify-prod.bestcase.com;yamile@mlhlawoffices.com
- **Samuel W Hess**    shess@slp.law, dwoodall@slp.law;pmouton@slp.law;shess@ecf.courtdrive.com;mortman@slp.law
- **Michael S Hoffman**    mhoffman@lessnehoffman.law, mhoffman@ecf.courtdrive.com
- **Erin M Hoskins**    ehoskins@bergersingerman.com, efile@bergersingerman.com;efile@ecf.courtdrive.com
- **Jason Ward Johnson**    jjohnson@gunster.com, dmowery@gunster.com
- **Jason Z. Jones**    jjones@joneslawpa.com
- **Joshua R. C. Justus**    jjustus@gentrylocke.com

- **Amrit S Kapai**    akapai@dunnlawpa.com, rbasnueva@dunnlawpa.com;tudani@dunnlawpa.com;lrodriguez@dunnlawpa.com;mflores@dunnlawpa.com
- **Matthew S Kish**    mkish@sbwh.law, mlarhzal@sbwh.law;r65072@notify.bestcase.com
- **Harris J. Koroglu**    hkoroglu@shutts.com, mcabo@shutts.com;bvelapoldi@shutts.com;fsantelices@shutts.com
- **Brett D Lieberman**    brett@elrolaw.com, eservice@elrolaw.com;tisha@elbizlaw.com;virginia@elbizlaw.com;denissis@elbizlaw.com
- **Jesus Lozano**    jlozano@nardellalaw.com, klynch@nardellalaw.com;msayne@nardellalaw.com;ibennett@nardellalaw.com
- **William J Maguire**    william@maguire-law.com, assistant@maguire-law.com
- **Paul N Mascia**    pmascia@nardellalaw.com, klynch@nardellalaw.com;msayne@nardellalaw.com;ibennett@nardellalaw.com
- **Kenneth Mather**    kmather@gunster.com, jcowzer@gunster.com;mweaver@gunster.com
- **Brian K. McMahon**    briankmcmahon@gmail.com
- **Glenn D Moses**    gmoses@venable.com, cascavone@venable.com;ipmalcolm@venable.com;jnunez@venable.com;imalcolm@ecf.courtdrive.com;btraina@venable.com
- **Joel F. Newell**    newellj@ballardspahr.com, phxlsateam@ballardspahr.com
- **Office of the US Trustee**    USTPRegion21.MM.ECF@usdoj.gov
- **Gregory Ohl**    gregory.ohl@colemantalley.com, janet.valdes@colemantalley.com
- **Thomas S Onder**    tonder@stark-stark.com
- **Chad S Paiva**    trustee.paiva@gmail.com, michaelbollingpa@gmail.com,simone@fenderbollingpaiva.com
- **Eric S Pendergraft**    ependergraft@slp.law, dwoodall@slp.law;mortman@slp.law;bshraibergecfmail@gmail.com;pmouton@slp.law
- **L William Porter III**    bporter@lathamluna.com
- **Stephen B Porterfield**    stephen.porterfield@dentons.com, jan.pack@dentons.com;candice.stanford@dentons.com
- **Robert J. Powell**    rpowell@moorheadlaw.com, heidi@moorheadlaw.com;kblackman@moorheadlaw.com
- **Timothy R Qualls**    stalevich@yvlaw.net, tqualls@yvlaw.net
- **Jordan L Rappaport**    office@rorlawfirm.com, 1678370420@filings.docketbird.com
- **David A Ray**    dar@trippscott.com, draycmecf@gmail.com;dar@trippscott.com;aaa@trippscott.com;bankruptcy@trippscott.com
- **Alexis S Read**    asr@alexisreadlaw.com, asr@readlawpllc.com
- **Olivia Retenauer**    oretenauer@tobinreyes.com, eservice@tobinreyes.com;mrea@tobinreyes.com
- **Ricardo A Reyes**    rar@tobinreyes.com, rreid@tobinreyes.com;eservice@tobinreyes.com;mhorton@tobinreyes.com
- **Dana Lee Robbins-Boehner**    drobbins@burr.com, mguerra@burr.com;kkearney@burr.com
- **Richard R Robles**    rrobles@roblespa.com, paralegal@roblespa.com;lawclerk@roblespa.com;assistant@roblespa.com;r49546@notify.bestcase.com
- **Emilio Eduardo Rodriguez**    eer@assoulineberlowe.com, sh@assoulineberlowe.com
- **Eric A Rosen**    erosen@fowler-white.com, CAfilings@fowler-white.com
- **Gail M. Ruiz**    gailruiz@att.net
- **Ariel Sagre**    law@sagrelawfirm.com
- **Luis Salazar**    lsalazar@coleschotz.com, luis-salazar-4791@ecf.pacerpro.com;JCeide@coleschotz.com;LLorenzo@coleschotz.com;Aleesin@coleschotz.com;DFernandez@coleschotz.com;EVazquez@coleschotz.com
- **Jeffrey N Schatzman**    notices@schatzmanlaw.com, g2251@notify.cincompass.com;schatzman.jeffreyn.b105574@notify.bestcase.com
- **Steven D Schneiderman**    Steven.D.Schneiderman@usdoj.gov
- **David B Shemano**    dshemano@shemanolaw.com, mkolcun@robinskaplan.com;cweiner@robinskaplan.com

- **Bradley S Shraiberg**    bss@slp.law, dwoodall@slp.law;dwoodall@ecf.courtdrive.com;pmouton@slp.law;mortman@slp.law
- **R Scott Shuker**    rshuker@shukerdorris.com, atillman@shukerdorris.com;mfranklin@shukerdorris.com;lstricker@shukerdorris.com;wtownsend@shukerdorris.com
- **Eric J Silver**    esilver@stearnsweaver.com, jless@stearnsweaver.com;fsanchez@stearnsweaver.com;cgraver@stearnsweaver.com;mfernandez@stearnsweaver.com
- **Paul Steven Singerman**    singerman@bergersingerman.com, hmoreno@bergersingerman.com;efile@bergersingerman.com;efile@ecf.courtdrive.com
- **Jason Slatkin**    jslatkin@loriumlaw.com, ecf.jslatkin@loriumlaw.com
- **David R Softness**    david@softnesslaw.com
- **Nicolaos Soulellis**    nsoulellis@gunster.com, jcowzer@gunster.com;mweaver@gunster.com
- **Gavin N Stewart**    bk@stewartlegalgroup.com
- **Lauren Stricker**    lstricker@shukerdorris.com, atillman@shukerdorris.com;mdorris@shukerdorris.com;mfranklin@shukerdorris.com;rshuker@shukerdorris.com;wtownsend@shukerdorris.com
- **James S Telepman**    jst@cohennorris.com
- **Richard R Thames**    rrt@thamesmarkey.law, srb@thamesmarkey.law;brm@thamesmarkey.law;rjs@thamesmarkey.law;keh@thamesmarkey.law
- **Seth P Traub**    straub@shumaker.com, dmccabe@shumaker.com
- **Barry Seth Turner**    bt@bstpa.com, bstpalaw@gmail.com;paralegal@bstpa.com
- **John J Wiles**    bankruptcy@evict.net

# EXHIBIT A

# PROPOSED SALE ORDER

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| SAILORMEN, INC., | Case No. 26-10451-RAM |
| Debtor.[1] | |
| _____ / | |

**ORDER AUTHORIZING AND APPROVING (I) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS AND (II) THE ASSIGNMENT AND ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND GRANTING RELATED RELIEF**

**THIS CAUSE** came before the Court on June 18, 2026 at 9:30 a.m. and on June 23, 2026 at 9:30 a.m. (the "**Sale Hearing**") upon the *Motion of the Debtor and Debtor-in-Possession for Entry of an Order Authorizing and Approving (I) the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests and (II) the Assignment and Assumption of Certain Executory Contracts and Unexpired Leases* [ECF No. 396] (the "**Sale Motion**") filed on March 25, 2026 by the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "**Debtor**"), seeking entry of one or more Orders (each an "**Order**") (i)

---

[1] The Debtor in this Chapter 11 case and the last four digits of its federal tax identification number are Sailormen, Inc. (5214). The location of the Debtor's corporate headquarters and the Debtor's service address in this chapter 11 case is Miami, Florida.

1

approving the applicable Bidder Purchase Agreement(s) (as modified or supplemented by this Order or as otherwise modified with the consent of each of the Prepetition Agent, Committee, Popeyes and the Debtor) (the "**Purchase Agreements**"), providing for the Sale of certain assets of the Debtor, designated as the Assets in the applicable Purchase Agreement under 11 U.S.C. §§ 363(b) and (m) (the "**Assets**"), free and clear of all liens, claims, encumbrances, and other interests under 11 U.S.C. § 363(f); (ii) approving the assumption and assignment of certain unexpired leases of real property and/or executory contracts as set forth in the applicable Purchase Agreement (hereinafter referred to as the "**Assumed Contracts**"); and granting related relief.[2]

The Court previously entered its *Order (I) Approving Bidding Procedures for the Sale of All or Substantially All the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Approving the Form of Asset Purchase Agreement; (III) Authorizing the Debtor to Enter Into Stalking Horse Agreements and Approving Bid Protections for Stalking Horse Bidders; (IV) Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases; (V) Scheduling an Auction For, and Hearing to Approve, the Sale of All or Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (VI) Approving the Form and Manner of Sale Notice; and (VII) Granting Related Relief* [ECF No. 378] (the "**Bidding Procedures Order**") on March 20, 2026, wherein the Court: (i) approved certain bidding and sale procedures (the "**Bidding Procedures**") in regard to the auction (the "**Auction**") and sale of substantially all of the Debtor's Assets; (ii) authorized the Debtor to enter into Stalking Horse Agreement(s) and approved certain bid protections (the "**Bid Protections**") for the Stalking Horse Bidder(s); (iii) approved procedures for assumption and assignment of the Assumed

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Sale Motion or Purchase Agreement, as applicable.

Contracts; (iv) scheduled the Auction and Sale Hearing; and (v) approved the form and manner of the Sale Notice and the Cure Notice. Pursuant to the Bidding Procedures Order, the Auction was held on June 15, 2026.

Following the Auction, to the extent applicable and in accordance with the Bidding Procedures Order, the Debtor filed multiple notices (the "Sale Notices") with the Court attaching each of the Purchase Agreements referenced above, identifying (i) the assets being sold, (ii) the identities of the Successful Bidder(s) for each group of assets, and (iii) the consideration for the proposed Sale.

The Debtor, after consultation with the Prepetition Agent, the Committee, and Popeyes, has determined that the sale of the Assets to the respective Buyer pursuant to the Purchase Agreements are the highest or otherwise best offers for the Purchased Assets.

All parties-in-interest were heard or had the opportunity to be heard at the Sale Hearing regarding the Sale Motion, the approval of the Sale of the Assets to the respective Buyer pursuant to the applicable Purchase Agreement (the "**Sale**") and the transactions contemplated thereby (collectively, the "**Transactions**").

This Order applies to the Transaction set forth in the Asset Purchase Agreement, dated June ___, 2026, by and between the Debtor and **[Popeyes Louisiana Kitchen, Inc. (the "Buyer") for sixteen (16) restaurants located in the Miami market for a gross purchase price of $9,600,000 (the "Popeyes Purchase Agreement"), which Popeyes Purchase Agreement is attached as Exhibit 3 to the Sale Notice filed with the Court on June 19, 2026 at ECF No. ___. All**

3

**references to Purchased Assets herein shall mean the Purchased Assets as defined in the Popeyes Purchase Agreement].**[3]

The Court having reviewed the Sale Motion, the Popeyes Purchase Agreement and the bases for the relief requested therein, and any responses or objections[4] to the Sale Motion, and having considered the evidence and arguments proffered and/or presented in connection therewith at the Sale Hearing, **[including the proffer of evidence by the representative of Popeyes concerning being a good faith purchaser under Section 363(m) of the Bankruptcy Code in connection with the Popeyes Purchase Agreement]**; and having determined that the legal and factual bases set forth in the Sale Motion and presented at the Sale Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY FOUND AND DETERMINED THAT**:

**Findings of Fact and Conclusions of Law**

A. The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such. The findings of fact and conclusions of law set forth herein are augmented by any additional findings of fact or conclusions

---

[3]  This exemplar form of Order is tailored to the Popeyes Purchase Agreement. As such, certain language that does not apply to the other Asset Purchase Agreements is shown herein **[bracketed and in bold]**. Each remaining Order will not include such bracketed language, or will include a modified version of such language, and certain definitions (such as "Popeyes Purchase Agreement") will be changed in each such Order to apply to the relevant Asset Purchase Agreement.

[4]  Objections were filed at ECF Nos. 477, 566, 567, 588, 591, 592, 597, 601, 613, 629, 630, 613, 624, 629, 630, 633, 634, 635, 638, 639, 640, 642, 647, 651, 652, 653, 654, 655, 656, 657, 658, 659, 660, 672, 678, and 681. Any Cure Objections that are not consensually resolved by the parties will be heard at a subsequent hearing.

of law made on the record at the Sale Hearing, which oral findings and conclusions are incorporated herein by this reference.

## Jurisdiction, Venue and Core Proceeding

B. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

## Statutory Predicates

C. The statutory bases for the relief requested in the Sale Motion are sections 105, 363, 365 and 1107 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "**Bankruptcy Code**") and Bankruptcy Rules 2002, 6004 and 9014. The consummation of the Transaction contemplated by the Sale Motion in respect of the Popeyes Purchase Agreement and this Order are legal, valid and properly authorized under all such provisions of the Bankruptcy Code and the Bankruptcy Rules, and all of the applicable requirements of such sections and rules have been complied with in all respects or waived by this Court pursuant to this Order.

## Notice; Opportunity to Object

D. As evidenced by the certificates of service filed with the Court, proper, timely, adequate and sufficient notice of the Auction, Sale Motion, Sale Hearing, the Popeyes Purchase Agreement, and all Transactions contemplated therein or in connection therewith, and all deadlines related thereto, was given and no further notice was required or need be provided. A reasonable opportunity to object or be heard regarding the relief requested in the Sale Motion and granted by this Order has been afforded to those parties entitled to notice pursuant to the Bankruptcy Code and the Bankruptcy Rules.

70949/0002-53449628v3

**Notice**

E.      Actual written notice of the matters described in paragraph D above was given to all interested persons as required by the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of this Court, including without limitation: (a) all known creditors of the Debtor, (b) all equity holders of the Debtor, (c) entities known to have expressed an interest in a transaction with respect to some or all of the Purchased Assets; (d) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon any of the Purchased Assets; (e) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon the furniture, fixtures and equipment located in the Stores; (f) the Internal Revenue Service and all state and local taxing authorities in the states in which the Debtor has or may have any tax liability; (g) the Securities and Exchange Commission; (h) counsel to the Prepetition Agent; (i) counsel to Popeyes; (j) counsel to the Committee; (k) the Office of the Attorney General for the State of Florida; (l) the Office of the United States Trustee for Region 21; (m) those parties who have filed the appropriate notice requesting notice of all pleadings filed in this chapter 11 case, and (n) as it pertains the Assumed Contracts and Cure Notice, all counterparties to the Assumed Contracts. The foregoing constitutes proper, timely, adequate and sufficient notice under the particular circumstances of this chapter 11 case, and no further notice was required or need be provided.

**Adequate Marketing; Highest or Best Offer**

F.      Subject to the terms of this Order, the Debtor is authorized to implement the sale of the Purchased Assets to the Buyer pursuant to and as defined in the **[Popeyes Purchase Agreement]** pursuant to sections 363(b)(1) and 363(f) of the Bankruptcy Code and Bankruptcy Rule 6004(f). As demonstrated by (a) the evidence proffered or adduced at the Sale Hearing, and (b) the representations of counsel made on the record at the Sale Hearing, the Debtor marketed the

6

70949/0002-53449628v3

Purchased Assets and conducted all aspects of the Sale process in good faith. The marketing process undertaken by the Debtor and its advisors was adequate and appropriate under the circumstances of this case. The Transaction embodied in the Popeyes Purchase Agreement constitutes an offer within the range of reasonableness for the Purchased Assets and has been approved by David Baker of Aurora Management Partners Inc., as the Chief Restructuring Officer ("**CRO**") for the Debtor.

**Corporate Authority**

G.      The Debtor, through the CRO, and in accordance with this Court's Order approving the Debtor's retention of the CRO, entered March 17, 2026 [ECF No. 345] has full corporate power and authority to execute the **[Popeyes Purchase Agreement]**, and the Sale to the Buyer has been duly and validly authorized by all necessary corporate or similar actions, (b) has all of the corporate power and authority necessary to consummate the Sale and all Transactions contemplated by the **[Popeyes Purchase Agreement]** and this Order, (c) has taken all corporate action necessary to authorize and approve the **[Popeyes Purchase Agreement]** and the consummation of the Sale and all Transactions contemplated thereby, and (d) requires no consents or approvals, other than those expressly provided for in this Order and the **[Popeyes Purchase Agreement]**, to consummate the Sale and all Transactions contemplated thereby.

**Property of the Estate**

H.      The Purchased Assets of the Debtor are property of the Debtor's estate and title in such Purchased Assets is vested in the Debtor's estate and/or are subject to sale by the Debtor pursuant to section 363 of the Bankruptcy Code.

70949/0002-53449628v3

**Sale in Best Interests**

I.      Approval of the **[Popeyes Purchase Agreement]** and consummation of the Sale of the Purchased Assets pursuant to the Popeyes Purchase Agreement and this Order are in the best interests of the Debtor's estate, its creditors, and other parties in interest.

**Business Justification**

J.      The Debtor has demonstrated good, sufficient, and sound business purposes and justifications and compelling circumstances for this Court to approve the **[Popeyes Purchase Agreement]** and consummation of the Sale pursuant to section 363(b) of the Bankruptcy Code prior to and outside of a plan of reorganization.

**Opportunity to Object**

K.      Based on the Debtor's representations, the Court finds that a reasonable opportunity to object or be heard with respect to the Sale Motion, the Sale (and the Transactions contemplated thereby), the **[Popeyes Purchase Agreement]**, the Sale Hearing, and any asserted rights or interests under any contract has been afforded to all known parties.

**Good faith, Arm's-Length Sale**

L.      The **[Popeyes Purchase Agreement]** was negotiated, proposed, and entered into by the Debtor and the Buyer without collusion, in good faith, and on an arm's-length basis. The Buyer is not an insider or affiliate of the Debtor. The Debtor and the Buyer have not engaged in any conduct that would cause or permit the **[Popeyes Purchase Agreement]** to be avoided under section 363(n) of the Bankruptcy Code.

**Good Faith Purchasers**

M.      The Buyer is a good faith purchaser of the Purchased Assets within the meaning of section 363(m) of the Bankruptcy Code and is entitled to all the protections afforded thereby. The

8

Buyer proceeded in good faith in all respects in connection with the Sale, in that (a) the Buyer in no way induced or caused the chapter 11 filing of the Debtor; (b) the Buyer recognized that the Debtor was free to deal with any other party interested in acquiring the Purchased Assets; and (c) all payments to be made by the Buyer pursuant to the **[Popeyes Purchase Agreement]** in connection with the Sale have been disclosed.

**Effect of Closing**

N.      As of the closing of the Transaction under the **[Popeyes Purchase Agreement]** (as defined therein, the "**Closing**"), the transfer of the Purchased Assets, pursuant and subject to the terms of the **[Popeyes Purchase Agreement]**, will effect a legal, valid, enforceable, and effective transfer of the Purchased Assets and will vest the Buyer with all of the Debtor's rights, title, and interests in and to the Purchased Assets, including operatorship thereof, free and clear of all liens, claims, and encumbrances pursuant to Section 363(f) of the Bankruptcy Code, other than as expressly set forth in the Popeyes Purchase Agreement.

**Substitution**

O.      As of the Closing, the Buyer is hereby substituted for all purposes as the party to each applicable Assumed Contract in the place of the Debtor, as designated in the **[Popeyes Purchase Agreement]**. The Buyer shall have any and all rights, benefits, and obligations of the Debtor under all such Assumed Contracts in the place of such Debtor, without interruption or termination of any kind, and all terms applicable to the Debtor shall apply to the Buyer as if such Assumed Contracts were amended to replace the Debtor with the Buyer.

**Free and Clear**

P.      The Buyer would not have entered into the **[Popeyes Purchase Agreement]** and would not consummate the Transaction therein, thus adversely affecting the Debtor, the Debtor's

9

estate and its creditors, if (a) the Purchased Assets, and (b) the assumption and assignment of the Assumed Contracts were not free and clear of all liens, claims, and encumbrances, other than as expressly set forth in the **[Popeyes Purchase Agreement]**, to the greatest extent permitted by the Bankruptcy Code and applicable, non-bankruptcy law. A sale of the Purchased Assets other than one that is free and clear of all liens, claims and encumbrances, other than as set forth in the Popeyes Purchase Agreement, would yield substantially less value for the Debtor, with less certainty, than the Transaction as contemplated. The Debtor may sell the Purchased Assets free and clear of all liens, claims, or encumbrances, other as expressly set forth in the **[Popeyes Purchase Agreement]**, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. All parties in interest, including without limitation, holders of liens, claims, and encumbrances and any counterparties to the Assumed Contracts, that did not object or who withdrew their objection to the Sale, Sale Motion, the **[Popeyes Purchase Agreement]**, the assumption and assignment of the Assumed Contracts or the associated Cure Amount in connection therewith have either: (a) consented to the relief granted herein pursuant to section 363(f)(2) of the Bankruptcy Code, (b) such interest is a lien and the Purchase Price is greater than the aggregate value of all liens, pursuant to section 363(f)(3) of the Bankruptcy Code; or (c) such lien, claim, or encumbrance is in bona fide dispute pursuant to section 363(f)(4) of the Bankruptcy Code. Any (a) holders of liens, claims, and encumbrances and (b) non-Debtor counterparties to Assumed Contracts who did not object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their liens, claims, and encumbrances, if any, attach to the portion of the Purchase Price attributable to the Purchased Assets against or in which they assert a lien or claim, in the order of their priority, with the same validity, force and effect that they now have as against such property, subject to any rights, claims, and defenses the Debtor may possess

10

with respect thereto; *provided, however*, that, for the avoidance of doubt, the Prepetition Agent's liens on the net Sale proceeds shall attach as set forth in the operative provisions of this Order and shall not be diminished or impaired by this paragraph.

### No Successor Liability

Q.      Neither the Buyer nor any of its affiliates is a successor to the Debtor or the Debtor's estate by reason of any theory of law or equity, including the Buyer is not a mere continuation of the Debtor and there is no continuity of enterprise between the Debtor and the Buyer.  Neither the Buyer nor any of its affiliates are assuming or shall assume or in any way be responsible for any claims, debts, liabilities, liens of other obligations of the Debtor and/or its estate, except to the extent expressly set forth in the **[Popeyes Purchase Agreement]**.  The Transaction set forth in the **[Popeyes Purchase Agreement]** does not constitute a consolidation, merger, or de facto merger of the Buyer and the Debtor or the Debtor's estate.

### No Sub Rosa Plan

R.      The Sale of the Purchased Assets outside of a chapter 11 plan pursuant to the Popeyes Purchase Agreement does not impermissibly restructure the rights of the Debtor's creditors or impermissibly dictate the terms of a chapter 11 plan for the Debtor. The Sale does not constitute a *sub rosa* chapter 11 plan.

### Prompt Consummation

S.      Time is of the essence in consummating the Sale. To maximize the value of the Purchased Assets, it is essential that the Sale occur within the time constraints set forth in the Popeyes Purchase Agreement. Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004(h) and 6006(d).

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

11

70949/0002-53449628v3

1.      The Sale Motion as to the **[Popeyes Purchase Agreement]** and the Transaction set forth therein is **GRANTED** as set forth herein.

2.      Subject to the rights of the Prepetition Agent, Debtor and Committee to object to the consummation of any Negative Proceed Sale (as defined below), all objections to the relief sought in the Sale Motion that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled on the merits.

3.      The Court finds that notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court and the Bidding Procedures Order.

**Approval of the [Popeyes Purchase Agreement]**

4.      The **[Popeyes Purchase Agreement]**, including all the terms and conditions thereof, are hereby approved.

5.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtor is authorized and directed to perform its obligations under and to comply with the terms of the **[Popeyes Purchase Agreement]**, and to consummate the Sale contemplated therein, pursuant to and in accordance with the terms and conditions of the **[Popeyes Purchase Agreement]**.

6.      Notwithstanding the approval of the Sale transaction provided herein, the Debtor is not authorized to consummate, and shall not consummate, any Sale transaction that would not generate sufficient net sale proceeds at closing to fully pay all cure claims and other closing costs required to consummate such Sale transaction (i.e., any Sale transaction that would require the estate to contribute cash or other value at closing to consummate such Sale transaction) (each a "**Negative Proceed Sale**"), without (i) the prior written consent of Prepetition Agent and the Committee, or (ii) further Order of this Court after notice and a hearing. For the avoidance of doubt,

12

70949/0002-53449628v3

(a) absent further Order of the Court, the Sale of the following numbered markets shall be treated as separate Sale transactions for purposes of the immediately preceding sentence: (i) Orlando, (ii) Miami, (iii) West Palm Beach, (iv) Tallahassee, Jacksonville, Tampa, Pensacola, and (b) no findings or other provisions in this Order shall in any way limit the rights of the Prepetition Agent, the Committee and/or the Debtor with respect to not seeking, or challenging, as applicable, consummation of any Negative Proceed Sale on any basis. Notwithstanding anything to the contrary herein, nothing in this Order shall amend, modify or otherwise alter any provisions of the *Final Order (I) Authorizing The Use of Cash Collateral; (II) Granting Adequate Protection;(III) Modifying Automatic Stay; and (IV) Granting Related Relief* [Dkt. No. 327] (the "**Final Cash Collateral Order**"), including Paragraphs 15(f) and (g) thereof, which shall remain in full force and effect.

7.    In the event that, for any reason, the Buyer should fail to close on the Transactions contemplated by the **[Popeyes Purchase Agreement]** following an Auction at which the Debtor has designated one or more Back-Up Bidders in accordance with the Bidding Procedures Order, then the Debtor is authorized to consummate the Sale as contemplated by the Bidder Purchase Agreement submitted by any such applicable Back-Up Bidder(s) and accepted by the Debtor at the Auction, and the provisions of this Order shall apply to any such transaction contemplated thereby with full force and effect. In such an event, the term "Purchase Agreement," as used herein, shall be construed to include any Bidder Purchase Agreement(s) to which the Back-Up Bidder(s) are bound, and the term "Buyer," as used herein, shall be construed to include each such Back-Up Bidder.

8.    The Debtor is further authorized and directed to pay, without further order of this Court, whether before, at or after the Closing, any expenses or costs that are required to be paid by

13

them in order to consummate the transactions contemplated by the Popeyes Purchase Agreement or perform its obligations under the Popeyes Purchase Agreement.

9.    The Debtor and the Buyer, and each of their respective officers, employees, and agents, are authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtor or the Buyer deem necessary or appropriate to implement and effectuate the terms of the Popeyes Purchase Agreement and this Order.

10.    This Order and the Popeyes Purchase Agreement shall be binding in all respects upon all creditors of and equity holders in the Debtor and any and all other parties in interest in this chapter 11 case, including without limitation, any and all holders of liens, claims (including holders of any rights or claims based on any putative successor or transferee liability), and encumbrances in and to the Purchased Assets, all counterparties to the Assumed Contracts, the Buyer, the Debtor, all successors and assigns of the Buyer, and any trustee, liquidating or litigation trustee, wind-down administrator or similar person, or any successors to any of the foregoing, appointed in this chapter 11 case by the Court or the Debtor, including pursuant to a chapter 11 plan, or upon conversion to chapter 7 under the Bankruptcy Code.

11.    The Popeyes Purchase Agreement, this Order and the Debtor's obligations therein and herein shall not be altered, impaired, or otherwise affected by any chapter 11 plan proposed or confirmed in this chapter 11 case, any order confirming any chapter 11 plan or any subsequent order of this Court, without the prior written consent of the Buyer. Nothing contained in any chapter 11 plan confirmed in this chapter 11 case or the confirmation order confirming any such chapter 11 plan, or any subsequent order of this Court, shall conflict with the provisions of the Popeyes Purchase Agreement or this Order.

14

70949/0002-53449628v3

12.     The Popeyes Purchase Agreement and any related agreements, documents, or instruments may be modified, amended, or supplemented by the parties thereto in a writing signed by the parties, and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement does not have a materially adverse effect on the Debtor's estate and does not adversely affect the rights or interests of the Prepetition Agent without the Prepetition Agent's prior written consent.

**<u>Transfer of the Assets Free and Clear</u>**

13.     The Buyer shall assume and be liable solely for the Assumed Liabilities as defined in the Popeyes Purchase Agreement and any other liabilities expressly agreed to by the Buyer under the Popeyes Purchase Agreement. Except as expressly permitted or otherwise specifically provided for in the Popeyes Purchase Agreement or this Order, pursuant to sections 105, 363, and 365 of the Bankruptcy Code and/or any other applicable section of the Bankruptcy Code, upon Closing, the Purchased Assets shall be transferred to the Buyer free and clear of all liens, claims, and encumbrances to the greatest extent permitted by the Bankruptcy Code and applicable, non-bankruptcy law, other than as expressly set forth in the Purchase Agreement.

14.     Except as permitted by Paragraph 6 hereof, all persons are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtor to transfer the Purchased Assets to the Buyer in accordance with the Popeyes Purchase Agreement and this Order or the right of the Debtor to consent to and implement the Sale of the Purchased Assets to the Buyer pursuant to the Popeyes Purchase Agreement and this Order. Following Closing, except for persons entitled to enforce Assumed Liabilities as expressly set forth in the Popeyes Purchase Agreement, all persons and entities (including but not limited to (i) the Debtor and/or its respective successors (including any trustee), (ii) creditors, (iii) current and former employees and shareholders, (iv)

15

administrative agencies, (v) governmental units, (vi) federal, state and local officials, including those maintaining any authority relating to any environmental, health and safety laws, and (vii) the successors and assigns of each of the foregoing) holding liens, claims, and encumbrances in the Purchased Assets or against the Debtor in respect of the Purchased Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any liens, claims, and encumbrances against the Buyer or any affiliate of the Buyer or any of their respective property, successors and assigns, or the Purchased Assets, as an alleged successor or on any other grounds. No person shall assert, and the Buyer and the Purchased Assets shall not be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or otherwise, including without limitation, any right of recoupment), liabilities, claims, and interests or basis of any kind or nature whatsoever to delay, defer, or impair any right of the Buyer or the Debtor, or any obligation of any other person, under or with respect to, any of the Purchased Assets, with respect to any act or omission that occurred prior to the Closing or with respect to any other agreement or any obligation of the Debtor that is not an Assumed Liability as expressly set forth in the Popeyes Purchase Agreement.

15.     Upon the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets and the Debtor's rights, title, and interests therein, and a bill of sale transferring good and marketable title in the Purchased Assets to the respective Buyer free and clear of all liens, claims, and encumbrances to the greatest extent permitted by the Bankruptcy Code and applicable, non-bankruptcy law, except for as expressly set forth in the Popeyes Purchase Agreement. Each and every federal, state, and local governmental agency, quasi-agency, or department is hereby

16

authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale.

16. The transfer of the Purchased Assets to the Buyer pursuant to the Popeyes Purchase Agreement and this Order shall constitute legal, valid, and effective transfers of the Purchased Assets at the Closing and shall vest the Buyer with all of the Debtor's rights, title, and interests in such Purchased Assets, including operatorship thereof, if applicable, free and clear of all liens, claims, and encumbrances to the greatest extent permitted by the Bankruptcy Code and applicable, non-bankruptcy law, other than as expressly set forth in the Purchase Agreement.

17. If any person that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents, instruments or agreements evidencing liens, claims, and encumbrances in the assets has not delivered to the Debtor, prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all liens, claims and encumbrances which the person has with respect to the Assets or otherwise, then (a) the Debtor and the Buyer, collectively and individually, are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person with respect to the Purchased Assets and (b) the Debtor and the Buyer are hereby authorized to file, register, or otherwise record a certified copy of this Order with any governmental authority and all governmental authorities are authorized and directed to accept the same, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims, and encumbrances in the Purchased Assets.

18. Nothing in this Order or the Popeyes Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any police power by, or any regulatory liability to, any governmental authority. To the greatest extent provided by the Bankruptcy Code, no governmental

17

authority may deny, revoke, suspend, or refuse to renew any permit, governmental authority, or grant relating to the Purchased Assets or the operation of the business represented thereby on account of the filing or pendency of this chapter 11 case or the consummation of the transactions contemplated by the Purchased Purchase Agreement, including without limitation, the Sale and the assumption and assignment of the Assumed Contracts.

<u>**Assumption and Assignment of Assumed Contracts**</u>

19.     Pursuant to section 365 of the Bankruptcy Code, the Debtor is authorized to assume and assign the Assumed Contracts to the Buyer pursuant to and in accordance with the Purchase Agreement.  For avoidance of doubt, (i) the assumption and assignment of the Franchise Agreements is based on the approval and consent of Popeyes as the franchisor thereunder and (ii) notwithstanding anything to the contrary in this Order or the **[Popeyes Purchase Agreement]**, a master lease will not be deemed to be an "Assumed Contract" that the Debtor is authorized to assume and assign under the terms of this Order absent consent of the applicable landlord.

20.     The Assumed Contracts set forth in the Popeyes Purchase Agreement shall be deemed to be assumed by the Debtor and assigned to the Buyer effective as of Closing, [**except as the Popeyes Purchase Agreement may provide otherwise, including in respect of Popeyes' rights to exclude one or more of the Existing Leases for the Options Stores (each as defined in the Popeyes Purchase Agreement) as set forth therein, subject to the rights of the landlord counterparties to such Existing Leases**].

21.     In accordance with section 365 of the Bankruptcy Code, effective upon the Closing and upon transfer of the Assumed Contracts to the Buyer, (a) the Buyer shall have all of the rights of the Debtor thereunder and each provision of such Assumed Contracts shall remain in full force and effect for the benefit of the Buyer notwithstanding any provision in any such contract, lease, or

18

in applicable law that prohibits, restricts or limits in any way such assignment or transfer and (b) none of the Assumed Contracts may be terminated, or the rights of any party modified in any respect, including pursuant to any "change of control" clause, by any other party thereto as a result of the Buyer' purchase of the Purchased Assets and the assumption of the Assumed Contracts.

22.    All options to renew the Assumed Contracts that have not expired and can be exercised as of the date of this Order are hereby assigned by the Debtor to the Buyer and can be validly exercised by the Buyer.

23.    The assignment by the Debtor of the Assumed Contracts to the Buyer shall not constitute a default under any of the Assumed Contracts. Any provisions in any Assumed Contracts that prohibit or condition the assignment of such Assumed Contract or allows the party to such Assumed Contract to terminate, recapture, impose any penalty, condition, on renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract constitute unenforceable anti-assignment provisions that are void and of no force and effect for the purposes of this Order only. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Buyer of the Assumed Contracts have been satisfied.

24.    There shall be no assignment fees, increases, rent-acceleration, or any other fees or amounts charged to the Buyer or the Debtor as a result of the assumption and assignment of the Assumed Contracts.

25.    Notwithstanding anything herein to the contrary, the Debtor shall comply with the applicable terms of the Franchise Agreements in connection with the transfer and assignment of the Franchise Agreements to the Buyer, including without limitation, any applicable release provisions provided in the Franchise Agreements (the "**Franchise Agreement Requirements**"); *provided,*

19

*however,* that nothing herein shall constitute a release of any claims the Debtor may have against Popeyes Louisiana Kitchen, Inc. and its parent companies, subsidiaries and affiliates for non-compliance with this Order or the Popeyes Purchase Agreement.

26. On or as promptly after the Closing as is practical, the Cure Amounts or portions thereof to which no objections have been filed, or to which the Debtor and an applicable non-Debtor contract counterparty have agreed as to the allowed Cure Amount (collectively, the "**Undisputed Cure Amounts**"), shall be paid by the Debtor from the Purchase Price. On or as promptly as reasonably practical after a determination by the Court that any disputed Cure Amounts (collectively, the "**Disputed Cure Amounts**") are due and owing, such Disputed Cure Amounts shall be paid by the Debtor from the proceeds of the Purchase Price. If there is an objection by a counterparty to any Assumed Contract that is not resolved prior to the Closing Date, the Debtor, in accordance with the applicable Purchase Agreement and this Order, may elect to (a) not assume and assign to the respective Buyer the Assumed Contract, (b) postpone the assumption and assignment of such Assumed Contract until resolution of such objection without delaying the closing of the Sale, (c) subject to the rights of the Prepetition Agent and the Committee in Paragraph 6 hereof, if the objection relates solely to the Cure Amount, pay the undisputed portion of the applicable Cure Amount to the counterparty at the Closing, reserve from the Purchase Price the disputed portion of the applicable Cure Amount, and assume and assign such Assumed Contract at the Closing, or (d) proceed with the assumption and assignment on such terms as are otherwise mutually agreeable to the applicable counterparty, the Debtor and the respective Buyer. If the parties choose (c), so long as the Disputed Cure Amount is reserved from the Purchase Price and there are no other unresolved objections to the assumption and assignment of the applicable Assumed Contract, the Debtor can, without further delay, assume and assign the applicable

20

Assumed Contract. The Debtor shall pay or otherwise satisfy all undisputed monetary obligations that arise and accrue from the Petition Date through and including the Closing Date under the Assumed Contracts (the "**Post-Petition Amounts**"). Under such circumstances, the recourse of the counterparty to the applicable Assumed Contract is limited to payment of the undisputed portion of the Cure Amount as of the closing, payment of any portion of the Disputed Cure Amount to which the counterparty is entitled following resolution of the dispute regarding the Cure Amount and payment of Post-Petition Amounts.

27. The payment of the Undisputed Cure Amounts, the Disputed Cure Amounts, the Post-Petition Amounts and the compliance with the Franchise Agreement Requirements with respect to the Franchise Agreements (a) shall be deemed to discharge the Debtor's obligation to cure any defaults under the applicable Assumed Contracts under section 365 of the Bankruptcy Code; (b) shall effect a cure of all defaults existing as of the date that such applicable Assumed Contracts are assumed as required by section 365 of the Bankruptcy Code; and (c) compensate, or provide adequate assurance of prompt compensation to, any counterparty to any of the applicable Assumed Contracts for any actual pecuniary loss resulting from any default under any of the Assumed Contracts.

28. All counterparties to the Assumed Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Buyer and without any cost or expense to the Buyer for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection therewith.

21

**Additional Provisions**

29.     As of and after the Closing, all persons are hereby authorized and directed to execute such documents and take all other actions as may be necessary to release their liens, claims, and encumbrances in, to, or against the Purchased Assets, as such liens, claims, and encumbrances may have been recorded or may otherwise exist, and such liens, claims, and encumbrances shall attach to the applicable allocated portion (if any) of the Sale proceeds in the same priority they currently enjoy with respect to the applicable Assets prior to the Closing.

30.     Notwithstanding anything to the contrary herein, the Prepetition Agent's liens, claims, and encumbrances in and to the Purchased Assets shall attach to the net proceeds of the Sale Transaction under the Popeyes Purchase Agreement with the same validity, priority, force, and effect as such liens, claims, and encumbrances had with respect to the Purchased Assets immediately prior to the Closing, without the need for any further action by the Prepetition Agent. Such lien attachment to net Sale proceeds shall not be subject to any claims, defenses, setoffs, or other challenges that could be asserted against the Prepetition Agent with respect to the Purchased Assets sold, other than as previously adjudicated or resolved by order of this Court, including the Challenge Stipulation (defined below).

31.     This Order (a) shall be effective as a determination that, upon the Closing, all liens, claims, and encumbrances existing as to the Purchased Assets prior to the Closing, other than as expressly set forth in the Popeyes Purchase Agreement, have been unconditionally released, discharged and terminated and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all persons, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, federal, state, and local

22

officials and all other persons who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Purchased Assets.

32.    Except as expressly permitted or otherwise specifically provided for in the Popeyes Purchase Agreement or this Order, the Buyer and their affiliates and their respective successors and assigns shall have no liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Purchased Assets or otherwise. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the Popeyes Purchase Agreement, the Buyer and their affiliates shall not be liable for any liens, claims, and encumbrances against the Debtor or any of its predecessors, other than as expressly set forth in the Popeyes Purchase Agreement, and the Buyer and their affiliates and their respective successors and assigns shall have no successor or vicarious liabilities of any kind or character, including but not limited to, any theory of antitrust, warranty, product liability, environmental, successor or transferee liability, labor law, ERISA, de facto merger or substantial continuity, whether known or unknown, as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtor or any obligations of the Debtor, including but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with or in any way relating to the operation of the Debtor's business prior to the Closing or any claims under the WARN Act or any claims related to wages, benefits, severance, or vacation pay owed to employees or former employees of the Debtor other than any such liabilities that are expressly set forth in the Purchase Agreement.

23

33.    Neither the Buyer nor any of their affiliates nor any of their respective successors or assignees shall assume or in any way be responsible for any liability or obligation of the Debtor or the Debtor's estate, except as otherwise expressly provided in the Purchase Agreement.

34.    Following the Closing, no holder of any liens, claims, or encumbrances in or against the Purchased Assets shall interfere with the Buyer' title to or use and enjoyment of such Purchased Assets based on or related to such liens, claims, or encumbrances, or any actions that the Debtor may take in this chapter 11 case or any successor cases.

35.    All persons that are in possession of some or all of the Purchased Assets are hereby directed at their sole cost and expense to surrender possession of such Purchased Assets to the respective Buyer on the Closing Date, unless the Buyer otherwise agrees.

36.    The consideration provided by the Buyer for the Purchased Assets under the Popeyes Purchase Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. The sale of the Purchased Assets to the Buyer is not subject to avoidance under any statutory or common law fraudulent conveyance or fraudulent transfer theory, whether under the Bankruptcy Code (including, without limitation, section 363(n)) or under the laws of the United States, any state, territory, or possession thereof, the District of Columbia, or any other applicable jurisdiction. The Court's approval of the Sale Motion and the Popeyes Purchase Agreement are in the best interests of the Debtor, the Debtor's estate and creditors, and all other parties in interest in this chapter 11 case.

37.    This Court retains jurisdiction to enforce and implement the terms and provisions of the Popeyes Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements and other documents executed and/or delivered in connection therewith

24

in all respects as the same relate to the Debtor, including but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets or performance of any other obligations owed to the Buyer; (b) compel delivery of the Purchase Price or performance of other obligations owed to the Debtor; (c) resolve any disputes arising under or related to the Popeyes Purchase Agreement; (d) interpret, implement, and enforce the provisions of this Order; and (e) protect the Buyer and their affiliates and their respective successors and assigns from and against (a) any liens, claims, or encumbrances in, to, or against the Purchased Assets and (b) any creditors or other parties in interest regarding the turnover of the Assets that may be in their possession.

38.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person obtaining a stay pending appeal, the Debtor and the Buyer, at the Buyer' option, are free to close the Sale under the Popeyes Purchase Agreement at any time prior to this Order becoming a Final Order. The Sale is undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Buyer (including the assumption and assignment of the Assumed Contracts), unless such authorization is duly stayed pending such appeal. The Buyer is a purchaser in good faith of the Purchased Assets and are entitled to all the protections afforded by section 363(m) of the Bankruptcy Code. For the avoidance of doubt, the provisions of this Order relating to the attachment, validity, priority, and enforcement of the Prepetition Agent's liens on net Sale proceeds, and the segregation and allocation of such proceeds, shall survive any reversal or modification on appeal and shall not be affected by any mootness determination under section 363(m) of the Bankruptcy Code.

25

**Payments From Closing**

39.     After Closing of the Sale, the Debtor is authorized to use the sale proceeds as follows:

(1)     all closing costs for the Sale and Transactions as set forth on a settlement statement, consistent with the terms of the Popeyes Purchase Agreement(s);

(2)     Seller Cure Amounts;

(3)     if there is a timely objection by a counterparty to an Assumed Contract related to the Seller Cure Amount, cash reserves equal to the Disputed Cure Amount;

(4)     payment of the fees and expenses of the escrow agent for the Sale, and other professionals whose fees have been authorized and approved by the Court to be paid at closing; and

(5)     subject to the provisions of this Order governing the segregation and allocation of net Sale proceeds, the net sale proceeds shall be paid to the Prepetition Agent for application to amounts owed to the Prepetition Agent and Prepetition Lenders under the Final Cash Collateral Order and the prepetition loan documents.

40.     In addition to the above, the Debtor shall continue to pay all post-petition services and food vendor invoices in the ordinary course of business, including the administrative claim of Kelly's Foods, Inc. for unpaid amounts incurred post-petition through the date of the closing of the Sale for food supplied to the Debtor from the Debtor's Cash Collateral (as defined in the Final Cash Collateral Order).

41.     The Debtor shall continue to pay United States Trustee fees, including for all periods from and after June 30, 2026, from the Debtor's Cash Collateral in accordance with a wind-down budget agreed to by the Debtor and the Prepetition Lenders.

26

70949/0002-53449628v3

42.    Notwithstanding anything in this Order or the Purchase Agreement stating otherwise, the Buyer shall be liable for the payment and performance of obligations under Existing Leases that are Assumed Contracts as and to the extent they become due or payable from and after the date of Closing, including, without limitation, any real estate taxes, utilities, insurance, common area maintenance and other repair and maintenance obligations, environmental obligations and indemnification obligations, regardless of whether such obligations arose or are attributable to the period prior to the Closing.

43.    Notwithstanding anything to the contrary herein, no sale proceeds shall be distributed to the Prepetition Agent or Prepetition Lenders unless and until either (i) the Committee, the Debtor and the Prepetition Agent each agree in writing to such distribution based on an agreed upon allocation of such proceeds between the Collateral (as defined in the Final Cash Collateral Order) and Unencumbered Assets (as defined in the stipulation between the Committee and the Prepetition Agent resolving the Committee's lien challenges [Docket Nos. 421, 422], the ("**Challenge Stipulation**"), or (ii) further Order of this Court after notice and a hearing. Pending such agreement or further Court Order, all net Sale proceeds received by the Debtor shall be segregated, and not spent by, the Debtor pending resolution of such allocation issue.

**Miscellaneous**

44.    The terms and provisions of the Popeyes Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, the Debtor's estate and creditors, the Buyer and their affiliates and their respective, successor and assigns, and all affected third parties, including but not limited to, all persons asserting liens, claims, and encumbrances in, to, or against the Debtor and/or Purchased Assets, notwithstanding any subsequent appointment of any trustee, liquidating or litigation trustee, wind-down administrator or similar person, or any

27

70949/0002-53449628v3

successors to any of the foregoing, appointed in this chapter 11 case by the Court or the Debtor, including pursuant to a chapter 11 plan, or upon conversion to chapter 7 under the Bankruptcy Code, as to which such person such terms and provisions likewise shall be binding.

45.     To the extent of any conflict between the Popeyes Purchase Agreement and this Order, the terms and provisions of this Order shall govern.

46.     The failure to specifically reference any particular provision of the Popeyes Purchase Agreement or other related documents in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Popeyes Purchase Agreement and other related documents be authorized and approved in their entirety.

###

28

Submitted by:

Luis Salazar, Esq.
COLE SCHOTZ P.C.
2121 SW 3rd Ave., Suite 200
Miami, Florida 33129
Telephone: 305-374-4848
Email: lsalazar@coleschotz.com

-and-

Gary H. Leibowitz, Esq. (admitted *pro hac vice*)
Irving Walker, Esq. (admitted *pro hac vice*)
H.C. Jones, III, Esq. (admitted *pro hac vice*)
Natalie Gibson, Esq. (admitted *pro hac vice*)
COLE SCHOTZ P.C.
1201 Wills Street, Suite 320
Baltimore, MD 21231
Telephone: 410-230-0660
Facsimile: 410-406-6067

*Luis Salazar. is directed to serve copies of this Order upon all interested parties and to file a certificate of service with the Court*

29

# EXHIBIT B

# REDLINED PROPOSED SALE ORDER

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                        Chapter 11

SAILORMEN, INC.,                              Case No. 26-10451-RAM

    Debtor.[1]

_____ /

**ORDER AUTHORIZING AND APPROVING (I) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS AND (II) THE ASSIGNMENT AND ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND GRANTING RELATED RELIEF**

    **THIS CAUSE** came before the Court on June 18, 2026 at 9:30 a.m. and on June 23, 2026 at 9:30 a.m. (the "**Sale Hearing**") upon the *Motion of the Debtor and Debtor-in-Possession for Entry of an Order Authorizing and Approving (I) the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests and (II) the Assignment and Assumption of Certain Executory Contracts and Unexpired Leases* [ECF No. 396] (the "**Sale Motion**") filed on March 25, 2026 by the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "**Debtor**"), seeking entry of one or more Orders (each an "**Order**") (i)

---

[1] The Debtor in this Chapter 11 case and the last four digits of its federal tax identification number are Sailormen, Inc. (5214). The location of the Debtor's corporate headquarters and the Debtor's service address in this chapter 11 case is Miami, Florida.

1

approving the applicable Bidder Purchase Agreement(s) (as modified or supplemented by this Order or as otherwise modified with the consent of each of the Prepetition Agent, Committee, Popeyes and the Debtor) (the "**Purchase Agreements**"), providing for the Sale of certain assets of the Debtor, designated as the Assets in the applicable Purchase Agreement under 11 U.S.C. §§ 363(b) and (m) (the "**Assets**"), free and clear of all liens, claims, encumbrances, and other interests under 11 U.S.C. § 363(f); (ii) approving the assumption and assignment of certain unexpired leases of real property and/or executory contracts as set forth in the applicable Purchase Agreement (hereinafter referred to as the "**Assumed Contracts**"); and granting related relief.[2]

The Court previously entered its *Order (I) Approving Bidding Procedures for the Sale of All or Substantially All the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Approving the Form of Asset Purchase Agreement; (III) Authorizing the Debtor to Enter Into Stalking Horse Agreements and Approving Bid Protections for Stalking Horse Bidders; (IV) Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases; (V) Scheduling an Auction For, and Hearing to Approve, the Sale of All or Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (VI) Approving the Form and Manner of Sale Notice; and (VII) Granting Related Relief* [ECF No. 378] (the "**Bidding Procedures Order**") on March 20, 2026, wherein the Court: (i) approved certain bidding and sale procedures (the "**Bidding Procedures**") in regard to the auction (the "**Auction**") and sale of substantially all of the Debtor's Assets; (ii) authorized the Debtor to enter into Stalking Horse Agreement(s) and approved certain bid protections (the "**Bid Protections**") for the Stalking Horse Bidder(s); (iii) approved procedures for assumption and assignment of the Assumed

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Sale Motion or Purchase Agreement, as applicable.

2

Contracts; (iv) scheduled the Auction and Sale Hearing; and (v) approved the form and manner of the Sale Notice and the Cure Notice. Pursuant to the Bidding Procedures Order, the Auction was held on June 15, 2026.

Following the Auction, to the extent applicable and in accordance with the Bidding Procedures Order, the Debtor filed multiple notices (the "Sale Notices") with the Court attaching each of the Purchase Agreements referenced above, identifying (i) the assets being sold, (ii) the identities of the Successful Bidder(s) for each group of assets, and (iii) the consideration for the proposed Sale.

The Debtor, after consultation with the Prepetition Agent, the Committee, and Popeyes, has determined that the sale of the Assets to the respective Buyer pursuant to the Purchase Agreements are the highest or otherwise best offers for the Purchased Assets.

All parties-in-interest were heard or had the opportunity to be heard at the Sale Hearing regarding the Sale Motion, the approval of the Sale of the Assets to the respective Buyer pursuant to the applicable Purchase Agreement (the "**Sale**") and the transactions contemplated thereby (collectively, the "**Transactions**").

This Order applies to the Transaction set forth in the Asset Purchase Agreement, dated June ___, 2026, by and between the Debtor and **[Popeyes Louisiana Kitchen, Inc. (the "Buyer") for sixteen (16) restaurants located in the Miami market for a gross purchase price of $9,600,000 (the "Popeyes Purchase Agreement"), which Popeyes Purchase Agreement is attached as Exhibit 3 to the Sale Notice filed with the Court on June 19, 2026 at ECF No. ___. All**

3

70949/0002-53449628v3

references to Purchased Assets herein shall mean the Purchased Assets as defined in the Popeyes Purchase Agreement].[3]

The Court having reviewed the Sale Motion, the Popeyes Purchase Agreement and the bases for the relief requested therein, and any responses or objections[4] to the Sale Motion, and having considered the evidence and arguments proffered and/or presented in connection therewith at the Sale Hearing, [including the proffer of evidence by the representative of Popeyes concerning being a good faith purchaser under Section 363(m) of the Bankruptcy Code in connection with the Popeyes Purchase Agreement]; and having determined that the legal and factual bases set forth in the Sale Motion and presented at the Sale Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY FOUND AND DETERMINED THAT**:

**Findings of Fact and Conclusions of Law**

A.      The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such. The findings of fact and conclusions of law set forth herein are augmented by any additional findings of fact or conclusions

---

[3]     This exemplar form of Order is tailored to the Popeyes Purchase Agreement. As such, certain language that does not apply to the other Asset Purchase Agreements is shown herein **[bracketed and in bold]**. Each remaining Order will not include such bracketed language, or will include a modified version of such language, and certain definitions (such as "Popeyes Purchase Agreement") will be changed in each such Order to apply to the relevant Asset Purchase Agreement.

[4]     Objections were filed at ECF Nos. 477, 566, 567, 588, 591, 592, 597, 601, 613, 629, 630, 613, 624, 629, 630, 633, 634, 635, 638, 639, 640, 642, 647, 651, 652, 653, 654, 655, 656, 657, 658, 659, 660, 672, 678, and 681. Any Cure Objections that are not consensually resolved by the parties will be heard at a subsequent hearing.

70949/0002-53449628v3

of law made on the record at the Sale Hearing, which oral findings and conclusions are incorporated herein by this reference.

### Jurisdiction, Venue and Core Proceeding

B.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

### Statutory Predicates

C.       The statutory bases for the relief requested in the Sale Motion are sections 105, 363, 365 and 1107 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "**Bankruptcy Code**") and Bankruptcy Rules 2002, 6004 and 9014. The consummation of the Transaction contemplated by the Sale Motion in respect of the Popeyes Purchase Agreement and this Order are legal, valid and properly authorized under all such provisions of the Bankruptcy Code and the Bankruptcy Rules, and all of the applicable requirements of such sections and rules have been complied with in all respects or waived by this Court pursuant to this Order.

### Notice; Opportunity to Object

D.       As evidenced by the certificates of service filed with the Court, proper, timely, adequate and sufficient notice of the Auction, Sale Motion, Sale Hearing, the Popeyes Purchase Agreement, and all Transactions contemplated therein or in connection therewith, and all deadlines related thereto, was given and no further notice was required or need be provided. A reasonable opportunity to object or be heard regarding the relief requested in the Sale Motion and granted by this Order has been afforded to those parties entitled to notice pursuant to the Bankruptcy Code and the Bankruptcy Rules.

70949/0002-53449628v3

**Notice**

E.       Actual written notice of the matters described in paragraph D above was given to all interested persons as required by the Bankruptcy Code, the Bankruptcy Rules and the Local RilesRules of this Court, including without limitation: (a) all known creditors of the Debtor, (b) all equity holders of the Debtor, (c) entities known to have expressed an interest in a transaction with respect to some or all of the Purchased Assets; (d) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon any of the Purchased Assets; (e) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon the furniture, fixtures and equipment located in the Stores; (f) the Internal Revenue Service and all state and local taxing authorities in the states in which the Debtor has or may have any tax liability; (g) the Securities and Exchange Commission; (h) counsel to the Prepetition Agent; (i) counsel to Popeyes; (j) proposed counsel to the Committee; (k) the Office of the Attorney General for the State of Florida; (l) the Office of the United States Trustee for Region 21; (m) those parties who have filed the appropriate notice requesting notice of all pleadings filed in this chapter 11 case, and (n) as it pertains the Assumed Contracts and Cure Notice, all counterparties to the Assumed Contracts. The foregoing constitutes proper, timely, adequate and sufficient notice under the particular circumstances of this chapter 11 case, and no further notice was required or need be provided.

**Adequate Marketing; Highest or Best Offer**

F.       Subject to the terms of this Order, the Debtor is authorized to implement the sale of the Purchased Assets to the Buyer pursuant to and as defined in the **[Popeyes Purchase Agreement]** pursuant to sections 363(b)(1) and 363(f) of the Bankruptcy Code and Bankruptcy Rule 6004(f). As demonstrated by (a) the evidence proffered or adduced at the Sale Hearing, and (b) the representations of counsel made on the record at the Sale Hearing, the Debtor marketed the

6

Purchased Assets and conducted all aspects of the Sale process in good faith. The marketing process undertaken by the Debtor and its ~~advisers~~advisors was adequate and appropriate under the circumstances of this case. The Transaction embodied in the Popeyes Purchase Agreement constitutes an offer within the range of reasonableness for the Purchased Assets and has been approved by David Baker of Aurora Management Partners Inc., as the Chief Restructuring Officer ("**CRO**") for the Debtor.

### Corporate Authority

G.    The Debtor, through the CRO, and in accordance with this Court's Order approving the Debtor's retention of the CRO, entered March 17, 2026 [ECF No. 345] has full corporate power and authority to execute the **[Popeyes Purchase Agreement~~.~~].** and the Sale to the Buyer has been duly and validly authorized by all necessary corporate or similar actions, (b) has all of the corporate power and authority necessary to consummate the Sale and all Transactions contemplated by the **[Popeyes Purchase Agreement]** and this Order, (c) has taken all corporate action necessary to authorize and approve the **[Popeyes Purchase Agreement]** and the consummation of the Sale and all Transactions contemplated thereby, and (d) requires no consents or approvals, other than those expressly provided for in this Order and the **[Popeyes Purchase Agreement~~.~~].** to consummate the Sale and all Transactions contemplated thereby.

### Property of the Estate

H.    The Purchased Assets of the Debtor are property of the Debtor's estate and title in such Purchased Assets is vested in the Debtor's estate and/or are subject to sale by the Debtor pursuant to section 363 of the Bankruptcy Code.

7

**Formatted:** Font: Bold

**Formatted:** Font: Bold

**Formatted:** Font: Bold

**Formatted:** Font: Bold

**Sale in Best Interests**

I.      Approval of the **[Popeyes Purchase Agreement]** and consummation of the Sale of the Purchased Assets pursuant to the Popeyes Purchase Agreement and this Order are in the best interests of the Debtor's estate, its creditors, and other parties in interest.

**Business Justification**

J.      The Debtor has demonstrated good, sufficient, and sound business purposes and justifications and compelling circumstances for this Court to approve the **[Popeyes Purchase Agreement]** and consummation of the Sale pursuant to section 363(b) of the Bankruptcy Code prior to and outside of a plan of reorganization.

**Opportunity to Object**

K.      Based on the Debtor's representations, the Court finds that a reasonable opportunity to object or be heard with respect to the Sale Motion, the Sale (and the Transactions contemplated thereby), the **[Popeyes Purchase Agreement]**, the Sale Hearing, and any asserted rights or interests under any contract has been afforded to all known parties.

**Good faith, Arm's-Length Sale**

L.      The **[Popeyes Purchase Agreement]** was negotiated, proposed, and entered into by the Debtor and the Buyer without collusion, in good faith, and on an arm's-length basis. The Buyer is not an insider or affiliate of the Debtor. The Debtor and the Buyer have not engaged in any conduct that would cause or permit the **[Popeyes Purchase Agreement]** to be avoided under section 363(n) of the Bankruptcy Code.

**Good Faith Purchasers**

M.      The Buyer is a good faith purchaser of the Purchased Assets within the meaning of section 363(m) of the Bankruptcy Code and is entitled to all the protections afforded thereby. The

8

70949/0002-53449628v3

Buyer proceeded in good faith in all respects in connection with the Sale, in that (a) the Buyer in no way induced or caused the chapter 11 filing of the Debtor; (b) the Buyer recognized that the Debtor was free to deal with any other party interested in acquiring the Purchased Assets; and (c) all payments to be made by the Buyer pursuant to the **[Popeyes Purchase Agreement]** in connection with the Sale have been disclosed.

**Effect of Closing**

N.    As of the ~~Closing~~closing of the Transaction under the **[Popeyes Purchase Agreement]** (as defined therein, the "**Closing**"), the transfer of the Purchased Assets, pursuant and subject to the terms of the **[Popeyes Purchase Agreement~~.~~]**, will effect a legal, valid, enforceable, and effective transfer of the Purchased Assets and will vest the Buyer with all of the Debtor's rights, title, and interests in and to the Purchased Assets, including operatorship thereof, free and clear of all liens, claims, and encumbrances pursuant to Section 363(f) of the Bankruptcy Code, other than as expressly set forth in the Popeyes Purchase Agreement.

**Substitution**

O.    As of the Closing, the Buyer is hereby substituted for all purposes as the party to each applicable Assumed Contract in the place of the Debtor, as designated in the **[Popeyes Purchase Agreement~~.~~]**. The Buyer shall have any and all rights, benefits, and obligations of the Debtor under all such Assumed Contracts in the place of such Debtor, without interruption or termination of any kind, and all terms applicable to the Debtor shall apply to the Buyer as if such Assumed Contracts were amended to replace the Debtor with the Buyer.

**Free and Clear**

P.    The Buyer would not have entered into the **[Popeyes Purchase Agreement]** and would not consummate the Transaction therein, thus adversely affecting the Debtor, the Debtor's

70949/0002-53449628v3

estate and its creditors, if (a) the Purchased Assets, and (b) the assumption and assignment of the Assumed Contracts were not free and clear of all liens, claims, and encumbrances, other than as expressly set forth in the **[Popeyes Purchase Agreement.].** to the greatest extent permitted by the Bankruptcy Code and applicable, non-bankruptcy law. A sale of the Purchased Assets other than one that is free and clear of all liens, claims and encumbrances, other than as set forth in the Popeyes Purchase Agreement, would yield substantially less value for the Debtor, with less certainty, than the Transaction as contemplated. The Debtor may sell the Purchased Assets free and clear of all liens, claims, or encumbrances, other as expressly set forth in the **[Popeyes Purchase Agreement.].** because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. All parties in interest, including without limitation, holders of liens, claims, and encumbrances and any counterparties to the Assumed Contracts, that did not object or who withdrew their objection to the Sale, Sale Motion, the **[Popeyes Purchase Agreement.].** the assumption and assignment of the Assumed Contracts or the associated Cure Amount in connection therewith have either: (a) consented to the relief granted herein pursuant to section 363(f)(2) of the Bankruptcy Code, (b) such interest is a lien and the Purchase Price is greater than the aggregate value of all liens, pursuant to section 363(f)(3) of the Bankruptcy Code; or (c) such lien, claim, or encumbrance is in bona fide dispute pursuant to section 363(f)(4) of the Bankruptcy Code. Any (a) holders of liens, claims, and encumbrances and (b) non-Debtor counterparties to Assumed Contracts who did not object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their liens, claims, and encumbrances, if any, attach to the portion of the Purchase Price attributable to the Purchased Assets against or in which they assert a lien or claim, in the order of their priority, with the same validity, force and effect that they now have as against such property, subject to any rights, claims, and defenses the Debtor may possess

10

70949/0002-53449628v3

with respect thereto; *provided, however*, that, for the avoidance of doubt, the Prepetition Agent's liens on the net Sale proceeds shall attach as set forth in the operative provisions of this Order and shall not be diminished or impaired by this paragraph.

**No Successor Liability**

Q.    Neither the Buyer nor any of its affiliates is a successor to the Debtor or the Debtor's estate by reason of any theory of law or equity, including the Buyer is not a mere continuation of the Debtor and there is no continuity of enterprise between the Debtor and the Buyer.  Neither the Buyer nor any of its affiliates are assuming or shall assume or in any way be responsible for any claims, debts, liabilities, liens of other obligations of the Debtor and/or its estate, except to the extent expressly set forth in the **[Popeyes Purchase Agreement.]**.  The Transaction set forth in the **[Popeyes Purchase Agreement]** does not constitute a consolidation, merger, or de facto merger of the Buyer and the Debtor or the Debtor's estate.

**No Sub Rosa Plan**

R.    The Sale of the Purchased Assets outside of a chapter 11 plan pursuant to the Popeyes Purchase Agreement does not impermissibly restructure the rights of the Debtor's creditors or impermissibly dictate the terms of a chapter 11 plan for the Debtor. The Sale does not constitute a *sub rosa* chapter 11 plan.

**Prompt Consummation**

S.    Time is of the essence in consummating the Sale. To maximize the value of the Purchased Assets, it is essential that the Sale occur within the time constraints set forth in the Popeyes Purchase Agreement. Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004(h) and 6006(d).

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

11

70949/0002-53449628v3

1. The Sale Motion as to the **[Popeyes Purchase Agreement]** and the Transaction set forth therein is **GRANTED** as set forth herein.

2. Subject to the rights of the Prepetition Agent, Debtor and Committee to object to the consummation of any Negative Proceed Sale (as defined below), all objections to the relief sought in the Sale Motion that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled on the merits.

3. The Court finds that notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court and the Bidding Procedures Order.

**Approval of the [Popeyes Purchase Agreement]**

4. The **[Popeyes Purchase Agreement~~,~~].** including all the terms and conditions thereof, are hereby approved.

5. Pursuant to section 363(b) of the Bankruptcy Code, the Debtor is authorized and directed to perform its obligations under and to comply with the terms of the **[Popeyes Purchase Agreement~~,~~].** and to consummate the Sale contemplated therein, pursuant to and in accordance with the terms and conditions of the **[Popeyes Purchase Agreement~~.~~].**

6. Notwithstanding the approval of the Sale ~~Transaction~~transaction provided herein, the Debtor is not authorized to consummate, and shall not consummate, any Sale transaction that would not generate sufficient net sale proceeds at closing to fully pay all cure claims and other closing costs required to consummate such Sale transaction (i.e., any Sale transaction that would require the estate to contribute cash or other value at closing to consummate such Sale transaction) (each a "**Negative Proceed Sale**"), without (i) the prior written consent of Prepetition Agent and the Committee, or (ii) further Order of this Court after notice and a hearing. For the avoidance of

12

70949/0002-53449628v3

doubt, (a) absent further Order of the Court, the Sale of the following numbered markets shall be treated as separate Sale transactions for purposes of the immediately preceding sentence: (i) Orlando,

(ii) Miami, (iii) West Palm Beach, (iv) Tallahassee, Jacksonville, Tampa, Pensacola, and (b) no findings or other provisions in this Order shall in any way limit the rights of the Prepetition Agent, the Committee and/or the Debtor with respect to not seeking, or challenging, as applicable, consummation of any Negative Proceed Sale on any basis.  Notwithstanding anything to the contrary herein, nothing in this Order shall amend, modify or otherwise alter any provisions of the *Final Order (I) Authorizing The Use of Cash Collateral; (II) Granting Adequate Protection;(III) Modifying Automatic Stay; and (IV) Granting Related Relief* [Dkt. No. 327] (the "**Final Cash Collateral Order**"), including Paragraphs 15(f) and (g) thereof, which shall remain in full force and effect.

7.      In the event that, for any reason, the Buyer should fail to close on the Transactions contemplated by the **[Popeyes Purchase Agreement]** following an Auction at which the Debtor has designated one or more Back-Up Bidders in accordance with the Bidding Procedures Order, then the Debtor is authorized to consummate the Sale as contemplated by the Bidder Purchase Agreement submitted by any such applicable Back-Up Bidder(s) and accepted by the Debtor at the Auction, and the provisions of this Order shall apply to any such transaction contemplated thereby with full force and effect. In such an event, the term "Purchase Agreement," as used herein, shall be construed to include any Bidder Purchase Agreement(s) to which the Back-Up Bidder(s) are bound, and the term "Buyer," as used herein, shall be construed to include each such Back-Up Bidder.

13

8.      The Debtor is further authorized and directed to pay, without further order of this Court, whether before, at or after the Closing, any expenses or costs that are required to be paid by them in order to consummate the transactions contemplated by the Popeyes Purchase Agreement or perform its obligations under the Popeyes Purchase Agreement.

9.      The Debtor and the Buyer, and each of their respective officers, employees, and agents, are authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtor or the Buyer deem necessary or appropriate to implement and effectuate the terms of the Popeyes Purchase Agreement and this Order.

10.     This Order and the Popeyes Purchase Agreement shall be binding in all respects upon all creditors of and equity holders in the Debtor and any and all other parties in interest in this chapter 11 case, including without limitation, any and all holders of liens, claims (including holders of any rights or claims based on any putative successor or transferee liability), and encumbrances in and to the Purchased Assets, all counterparties to the Assumed Contracts, the Buyer, the Debtor, all successors and assigns of the Buyer, and any trustee, liquidating or litigation trustee, wind-down administrator or similar person, or any successors to any of the foregoing, appointed in this chapter 11 case by the Court or the Debtor, including pursuant to a chapter 11 plan, or upon conversion to chapter 7 under the Bankruptcy Code.

11.     The Popeyes Purchase Agreement, this Order and the Debtor's obligations therein and herein shall not be altered, impaired, or otherwise affected by any chapter 11 plan proposed or confirmed in this chapter 11 case, any order confirming any chapter 11 plan or any subsequent order of this Court, without the prior written consent of the Buyer. Nothing contained in any chapter 11 plan confirmed in this chapter 11 case or the confirmation order confirming any such chapter 11

14

plan, or any subsequent order of this Court, shall conflict with the provisions of the Popeyes Purchase Agreement or this Order.

12.     The Popeyes Purchase Agreement and any related agreements, documents, or instruments may be modified, amended, or supplemented by the parties thereto in a writing signed by the parties, and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement does not have a materially adverse effect on the Debtor's estate and does not adversely affect the rights or interests of the Prepetition Agent without the Prepetition Agent's prior written consent.

**Transfer of the Assets Free and Clear**

13.     The Buyer shall assume and be liable solely for the Assumed Liabilities as defined in the Popeyes Purchase Agreement and any other liabilities expressly agreed to by the Buyer under the Popeyes Purchase Agreement. Except as expressly permitted or otherwise specifically provided for in the Popeyes Purchase Agreement or this Order, pursuant to sections 105, 363, and 365 of the Bankruptcy Code and/or any other applicable section of the Bankruptcy Code, upon Closing, the Purchased Assets shall be transferred to the Buyer free and clear of all liens, claims, and encumbrances to the greatest extent permitted by the Bankruptcy Code and applicable, non-bankruptcy law, other than as expressly set forth in the Purchase Agreement.

14.     Except as permitted by Paragraph 6 hereof, all persons are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtor to transfer the Purchased Assets to the Buyer in accordance with the Popeyes Purchase Agreement and this Order or the right of the Debtor to consent to and implement the Sale of the Purchased Assets to the Buyer pursuant to the Popeyes Purchase Agreement and this Order. Following Closing, except for persons entitled to enforce Assumed Liabilities as expressly set forth in the Popeyes Purchase Agreement,

15

all persons and entities (including but not limited to (i) the Debtor and/or its respective successors (including any trustee), (ii) creditors, (iii) current and former employees and shareholders, (iv) administrative agencies, (v) governmental units, (vi) federal, state and local officials, including those maintaining any authority relating to any environmental, health and safety laws, and (vii) the successors and assigns of each of the foregoing) holding liens, claims, and encumbrances in the Purchased Assets or against the Debtor in respect of the Purchased Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any liens, claims, and encumbrances against the Buyer or any affiliate of the Buyer or any of their respective property, successors and assigns, or the Purchased Assets, as an alleged successor or on any other grounds. No person shall assert, and the Buyer and the Purchased Assets shall not be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or otherwise, including without limitation, any right of recoupment), liabilities, claims, and interests or basis of any kind or nature whatsoever to delay, defer, or impair any right of the Buyer or the Debtor, or any obligation of any other person, under or with respect to, any of the Purchased Assets, with respect to any act or omission that occurred prior to the Closing or with respect to any other agreement or any obligation of the Debtor that is not an Assumed Liability as expressly set forth in the Popeyes Purchase Agreement.

15.     Upon the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets and the Debtor's rights, title, and interests therein, and a bill of sale transferring good and marketable title in the Purchased Assets to the respective Buyer free and clear of all liens, claims, and encumbrances to the greatest extent permitted by the Bankruptcy Code and applicable, non-bankruptcy law, except for as expressly set forth in the Popeyes Purchase Agreement. Each and

16

every federal, state, and local governmental agency, quasi-agency, or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale.

16. The transfer of the Purchased Assets to the Buyer pursuant to the Popeyes Purchase Agreement and this Order shall constitute legal, valid, and effective transfers of the Purchased Assets at the Closing and shall vest the Buyer with all of the Debtor's rights, title, and interests in such Purchased Assets, including operatorship thereof, if applicable, free and clear of all liens, claims, and encumbrances to the greatest extent permitted by the Bankruptcy Code and applicable, non-bankruptcy law, other than as expressly set forth in the Purchase Agreement.

17. If any person that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents, instruments or agreements evidencing liens, claims, and encumbrances in the assets has not delivered to the Debtor, prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all liens, claims and encumbrances which the person has with respect to the Assets or otherwise, then (a) the Debtor and the Buyer, collectively and individually, are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person with respect to the Purchased Assets and (b) the Debtor and the Buyer are hereby authorized to file, register, or otherwise record a certified copy of this Order with any governmental authority and all governmental authorities are authorized and directed to accept the same, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims, and encumbrances in the Purchased Assets.

18. Nothing in this Order or the Popeyes Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any police power by, or any regulatory liability to, any

17

70949/0002-53449628v3

governmental authority. To the greatest extent provided by the Bankruptcy Code, no governmental authority may deny, revoke, suspend, or refuse to renew any permit, governmental authority, or grant relating to the Purchased Assets or the operation of the business represented thereby on account of the filing or pendency of this chapter 11 case or the consummation of the transactions contemplated by the Purchased Purchase Agreement, including without limitation, the Sale and the assumption and assignment of the Assumed Contracts.

<u>**Assumption and Assignment of Assumed Contracts**</u>

19.     Pursuant to section 365 of the Bankruptcy Code, the Debtor is authorized to assume and assign the Assumed Contracts to the Buyer pursuant to and in accordance with the Purchase Agreement.  For avoidance of doubt, <u>(i)</u> the assumption and assignment of the Franchise Agreements is based on the approval and consent of Popeyes as the franchisor thereunder <u>and (ii)</u> <u>notwithstanding anything to the contrary in this Order or the</u> <u>**[Popeyes Purchase Agreement]**</u><u>, a master lease will not be deemed to be an "Assumed Contract" that the Debtor is authorized to assume and assign under the terms of this Order absent consent of the applicable landlord</u>.

20.     The Assumed Contracts set forth in the Popeyes Purchase Agreement shall be deemed to be assumed by the Debtor and assigned to the Buyer effective as of Closing, [**except as the Popeyes Purchase Agreement may provide otherwise, including in respect of Popeyes' rights to exclude one or more of the Existing Leases for the Options Stores (each as defined in the Popeyes Purchase Agreement) as set forth therein, subject to the rights of the landlord counterparties to such Existing Leases**].

21.     In accordance with section 365 of the Bankruptcy Code, effective upon the Closing and upon transfer of the Assumed Contracts to the Buyer, (a) the Buyer shall have all of the rights of the Debtor thereunder and each provision of such Assumed Contracts shall remain in full force

18

70949/0002-53449628v3

and effect for the benefit of the Buyer notwithstanding any provision in any such contract, lease, or in applicable law that prohibits, restricts or limits in any way such assignment or transfer and (b) none of the Assumed Contracts may be terminated, or the rights of any party modified in any respect, including pursuant to any "change of control" clause, by any other party thereto as a result of the Buyer' purchase of the Purchased Assets and the assumption of the Assumed Contracts.

22.      All options to renew the Assumed Contracts that have not expired and can be exercised as of the date of this Order are hereby assigned by the Debtor to the Buyer and can be validly exercised by the Buyer.

23.      The assignment by the Debtor of the Assumed Contracts to the Buyer shall not constitute a default under any of the Assumed Contracts. Any provisions in any Assumed Contracts that prohibit or condition the assignment of such Assumed Contract or allows the party to such Assumed Contract to terminate, recapture, impose any penalty, condition, on renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract constitute unenforceable anti-assignment provisions that are void and of no force and effect for the purposes of this Order only. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Buyer of the Assumed Contracts have been satisfied.

24.      There shall be no assignment fees, increases, rent-acceleration, or any other fees or amounts charged to the Buyer or the Debtor as a result of the assumption and assignment of the Assumed Contracts.

25.      [Notwithstanding anything herein to the contrary, the Debtor shall comply with the applicable terms of the Franchise Agreements in connection with the transfer and assignment of the Franchise Agreements to the Buyer, including without limitation, any applicable release provisions

19

70949/0002-53449628v3

provided in the Franchise Agreements, (the "**Franchise Agreement Requirements**"); *provided, however,* that nothing herein shall constitute a release of any claims the Debtor may have against Popeyes Louisiana Kitchen, Inc. and its parent companies, subsidiaries and affiliates for non-compliance with this Order or the Popeyes Purchase Agreement.

> **Formatted:** Font: Not Bold
>
> **Formatted:** Font: Not Bold

26. On or as promptly after the Closing as is practical, the Cure Amounts or portions thereof to which no objections have been filed, or to which the Debtor and an applicable non-Debtor contract counterparty have agreed as to the allowed Cure Amount (collectively, the "**Undisputed Cure Amounts**"), shall be paid by the Debtor from the Purchase Price. On or as promptly as reasonably practical after a determination by the Court that any disputed Cure Amounts (collectively, the "**Disputed Cure Amounts**") are due and owing, such Disputed Cure Amounts shall be paid by the Debtor from the proceeds of the Purchase Price.  If there is an objection by a counterparty to any Assumed Contract that is not resolved prior to the Closing Date, the Debtor, in accordance with the applicable Purchase Agreement and this Order, may elect to (a) not assume and assign to the respective Buyer the Assumed Contract, (b) postpone the assumption and assignment of such Assumed Contract until resolution of such objection without delaying the closing of the Sale, (c) subject to the rights of the Prepetition Agent and the Committee in Paragraph 6 hereof, if the objection relates solely to the Cure Amount, pay the undisputed portion of the applicable Cure Amount to the counterparty at the Closing, reserve from the Purchase Price the disputed portion of the applicable Cure Amount, and assume and assign such Assumed Contract at the Closing, or (d) proceed with the assumption and assignment on such terms as are otherwise mutually agreeable to the applicable counterparty, the Debtor and the respective Buyer. If the parties choose (c), so long as the Disputed Cure Amount is reserved from the Purchase Price and there are no other unresolved objections to the assumption and assignment of the applicable

20

70949/0002-53449628v3

Assumed Contract, the Debtor can, without further delay, assume and assign the applicable Assumed Contract.  The Debtor shall pay or otherwise satisfy all undisputed monetary obligations that arise and accrue from the Petition Date through and including the Closing Date under the Assumed Contracts (the "**Post-Petition Amounts**"). Under such circumstances, the recourse of the counterparty to the applicable Assumed Contract is limited to payment of the undisputed portion of the Cure Amount as of the closing, payment of any portion of the Disputed Cure Amount to which the counterparty is entitled following resolution of the dispute regarding the Cure Amount and payment of Post-Petition Amounts.

27.     The payment of the Undisputed Cure Amounts, the Disputed Cure Amounts, the Post-Petition Amounts [and the compliance with the Franchise Agreement Requirements with respect to the Franchise Agreements] (a) shall be deemed to discharge the Debtor's obligation to cure any defaults under the applicable Assumed Contracts under section 365 of the Bankruptcy Code; (b) shall effect a cure of all defaults existing as of the date that such applicable Assumed Contracts are assumed as required by section 365 of the Bankruptcy Code; and (c) compensate, or provide adequate assurance of prompt compensation to, any counterparty to any of the applicable Assumed Contracts for any actual pecuniary loss resulting from any default under any of the Assumed Contracts.

28.     All counterparties to the Assumed Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Buyer and without any cost or expense to the Buyer for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection therewith.

21

70949/0002-53449628v3

**Formatted:** Font: Not Bold

**Additional Provisions**

29.    As of and after the Closing, all persons are hereby authorized and directed to execute such documents and take all other actions as may be necessary to release their liens, claims, and encumbrances in, to, or against the Purchased Assets, as such liens, claims, and encumbrances may have been recorded or may otherwise exist, and such liens, claims, and encumbrances shall attach to the applicable allocated portion (if any) of the Sale proceeds in the same priority they currently enjoy with respect to the applicable Assets prior to the Closing.

30.    Notwithstanding anything to the contrary herein, the Prepetition Agent's liens, claims, and encumbrances in and to the Purchased Assets shall attach to the net proceeds of the Sale Transaction under the Popeyes Purchase Agreement with the same validity, priority, force, and effect as such liens, claims, and encumbrances had with respect to the Purchased Assets immediately prior to the Closing, without the need for any further action by the Prepetition Agent. Such lien attachment to net Sale proceeds shall not be subject to any claims, defenses, setoffs, or other challenges that could be asserted against the Prepetition Agent with respect to the Purchased Assets sold, other than as previously adjudicated or resolved by order of this Court, including the Challenge Stipulation (defined below).

31.    This Order (a) shall be effective as a determination that, upon the Closing, all liens, claims, and encumbrances existing as to the Purchased Assets prior to the Closing, other than as expressly set forth in the Popeyes Purchase Agreement, have been unconditionally released, discharged and terminated and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all persons, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, federal, state, and local

22

officials and all other persons who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Purchased Assets.

32.    Except as expressly permitted or otherwise specifically provided for in the Popeyes Purchase Agreement or this Order, the Buyer and their affiliates and their respective successors and assigns shall have no liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Purchased Assets or otherwise. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the Popeyes Purchase Agreement, the Buyer and their affiliates shall not be liable for any liens, claims, and encumbrances against the Debtor or any of its predecessors, other than as expressly set forth in the Popeyes Purchase Agreement, and the Buyer and their affiliates and their respective successors and assigns shall have no successor or vicarious liabilities of any kind or character, including but not limited to, any theory of antitrust, warranty, product liability, environmental, successor or transferee liability, labor law, ERISA, de facto merger or substantial continuity, whether known or unknown, as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtor or any obligations of the Debtor, including but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with or in any way relating to the operation of the Debtor's business prior to the Closing or any claims under the WARN Act or any claims related to wages, benefits, severance, or vacation pay owed to employees or former employees of the Debtor other than any such liabilities that are expressly set forth in the Purchase Agreement.

23

70949/0002-53449628v3

33.     Neither the Buyer nor any of their affiliates nor any of their respective successors or assignees shall assume or in any way be responsible for any liability or obligation of the Debtor or the Debtor's estate, except as otherwise expressly provided in the Purchase Agreement.

34.     Following the Closing, no holder of any liens, claims, or encumbrances in or against the Purchased Assets shall interfere with the Buyer' title to or use and enjoyment of such Purchased Assets based on or related to such liens, claims, or encumbrances, or any actions that the Debtor may take in this chapter 11 case or any successor cases.

35.     All persons that are in possession of some or all of the Purchased Assets are hereby directed at their sole cost and expense to surrender possession of such Purchased Assets to the respective Buyer on the Closing Date, unless the Buyer otherwise agrees.

36.     The consideration provided by the Buyer for the Purchased Assets under the Popeyes Purchase Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. The sale of the Purchased Assets to the Buyer is not subject to avoidance under any statutory or common law fraudulent conveyance or fraudulent transfer theory, whether under the Bankruptcy Code (including, without limitation, section 363(n)) or under the laws of the United States, any state, territory, or possession thereof, the District of Columbia, or any other applicable jurisdiction. The Court's approval of the Sale Motion and the Popeyes Purchase Agreement are in the best interests of the Debtor, the Debtor's estate and creditors, and all other parties in interest in this chapter 11 case.

37.     This Court retains jurisdiction to enforce and implement the terms and provisions of the Popeyes Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements and other documents executed and/or delivered in connection therewith

24

70949/0002-53449628v3

in all respects as the same relate to the Debtor, including but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets or performance of any other obligations owed to the Buyer; (b) compel delivery of the Purchase Price or performance of other obligations owed to the Debtor; (c) resolve any disputes arising under or related to the Popeyes Purchase Agreement; (d) interpret, implement, and enforce the provisions of this Order; and (e) protect the Buyer and their affiliates and their respective successors and assigns from and against (a) any liens, claims, or encumbrances in, to, or against the Purchased Assets and (b) any creditors or other parties in interest regarding the turnover of the Assets that may be in their possession.

38. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person obtaining a stay pending appeal, the Debtor and the Buyer, at the Buyer' option, are free to close the Sale under the Popeyes Purchase Agreement at any time prior to this Order becoming a Final Order. The Sale is undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Buyer (including the assumption and assignment of the Assumed Contracts), unless such authorization is duly stayed pending such appeal. The Buyer is a purchaser in good faith of the Purchased Assets and are entitled to all the protections afforded by section 363(m) of the Bankruptcy Code. For the avoidance of doubt, the provisions of this Order relating to the attachment, validity, priority, and enforcement of the Prepetition Agent's liens on net Sale proceeds, and the segregation and allocation of such proceeds, shall survive any reversal or modification on appeal and shall not be affected by any mootness determination under section 363(m) of the Bankruptcy Code.

25

70949/0002-53449628v3

**Payments From Closing**

39.    After Closing of the Sale, the Debtor is authorized to use the sale proceeds as follows:

(1)    all closing costs for the Sale and Transactions as set forth on a settlement statement, consistent with the terms of the Popeyes Purchase Agreement(s);

(2)    Seller Cure Amounts;

(3)    if there is a timely objection by a counterparty to an Assumed Contract related to the Seller Cure Amount, cash reserves equal to the Disputed Cure Amount;

(4)    payment of the fees and expenses of the escrow agent for the Sale, and other professionals whose fees have been authorized and approved by the Court to be paid at closing; and

(5)    payment of the administrative claim of Kelly's Foods, Inc. for unpaid amounts incurred post-petition through the date of the closing of the Sale for food supplied to the Debtor, unless otherwise paid at contemporaneously at the closing from the Debtor's operating cash on hand; and

(6)(5) subject to the provisions of this Order governing the segregation and allocation of net Sale proceeds, the net sale proceeds shall be paid to the Prepetition Agent for application to amounts owed to the Prepetition Agent and Prepetition Lenders under the Final Cash Collateral Order and the prepetition loan documents.

40.    In addition to the above, the Debtor shall paycontinue to pay all post-petition services and food vendor invoices in the ordinary course of business, including the administrative claim of Kelly's Foods, Inc. for unpaid amounts incurred post-petition through the date of the closing of the Sale for food supplied to the Debtor from the Debtor's Cash Collateral (as defined in the Final Cash Collateral Order).

26

**Formatted:** Font: Italic

41.    The Debtor shall continue to pay United States Trustee fees, including for all periods from and after June 30, 2026, from the Debtor's Cash Collateral in accordance with a wind-down budget agreed to by the Debtor and the Prepetition Lenders.

42.    Notwithstanding anything in this Order or the Purchase Agreement stating otherwise, the Buyer shall be liable for the payment and performance of obligations under Existing Leases that are Assumed Contracts as and to the extent they become due or payable from and after the date of Closing, including, without limitation, any real estate taxes, utilities, insurance, common area maintenance and other repair and maintenance obligations, environmental obligations and indemnification obligations, regardless of whether such obligations arose or are attributable to the period prior to the Closing.

43.    Notwithstanding anything to the contrary herein, no sale proceeds shall be distributed to the Prepetition Agent or Prepetition Lenders unless and until either (i) the Committee, the Debtor and the Prepetition Agent each agree in writing to such distribution based on an agreed upon allocation of such proceeds between the Collateral (as defined in the Final Cash Collateral Order) and Unencumbered Assets (as defined in the stipulation between the Committee and the Prepetition Agent resolving the Committee's lien challenges [Docket Nos. 421, 422], the (“**Challenge Stipulation**”), or (ii) further Order of this Court after notice and a hearing. Pending such agreement or further Court Order, all net Sale proceeds received by the Debtor shall be segregated, and not spent by, the Debtor pending resolution of such allocation issue.

**Miscellaneous**

44.    The terms and provisions of the Popeyes Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, the Debtor's estate and creditors, the Buyer and their affiliates and their respective, successor and assigns, and all affected

27

70949/0002-53449628v3

third parties, including but not limited to, all persons asserting liens, claims, and encumbrances in, to, or against the Debtor and/or Purchased Assets, notwithstanding any subsequent appointment of any trustee, liquidating or litigation trustee, wind-down administrator or similar person, or any successors to any of the foregoing, appointed in this chapter 11 case by the Court or the Debtor, including pursuant to a chapter 11 plan, or upon conversion to chapter 7 under the Bankruptcy Code, as to which such person such terms and provisions likewise shall be binding.

43.45.  To the extent of any conflict between the Popeyes Purchase Agreement and this Order, the terms and provisions of this Order shall govern.

44.46.  The failure to specifically reference any particular provision of the Popeyes Purchase Agreement or other related documents in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Popeyes Purchase Agreement and other related documents be authorized and approved in their entirety.

###

28

70949/0002-53449628v3

Submitted by:

Luis Salazar, Esq.
COLE SCHOTZ P.C.
2121 SW 3rd Ave., Suite 200
Miami, Florida 33129
Telephone: 305-374-4848
Email: lsalazar@coleschotz.com

-and-

Gary H. Leibowitz, Esq. (admitted *pro hac vice*)
Irving Walker, Esq. (admitted *pro hac vice*)
H.C. Jones, III, Esq. (admitted *pro hac vice*)
Natalie Gibson, Esq. (admitted *pro hac vice*)
COLE SCHOTZ P.C.
1201 Wills Street, Suite 320
Baltimore, MD 21231
Telephone: 410-230-0660
Facsimile: 410-406-6067

*Luis Salazar. is directed to serve copies of this Order upon all interested parties and to file a certificate of service with the Court*

29

70949/0002-53449628v3